Case 1:00-cv-00131   Document 21   Filed in TXSD on 08/31/2001   Page 1 of 194

Z.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

AUG 3 1 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| BLANCA PERALES, Individually and | § | |
| As Next Friend of ANN DELIA | § | |
| PERALES, a Minor, and ALMA DELIA | § | |
| PERALES, a Minor, and As | § | |
| Representative of the Estate of MARCO | § | |
| ANTONIO PERALES, Deceased, and | § | CIVIL ACTION NO. B-00-131 |
| SARA MARTINEZ PERALES | § | |
| | § | |
| VS. | § | |
| | § | |
| BRIDGESTONE/FIRESTONE, INC. | § | |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES

TO THE HONORABLE JUDGE OD SAID COURT:

COMES NOW, **BLANCA PERALES, Individually and As Next Friend of**

**ANNA DELIA PERALES, a Minor, and ALMA DELIA PERALES, a Minor, and**

**As Representative of the Estate of MARCO ANTONIO PERALES, Deceased, and,**

**SARA MARTINEZ PERALES** hereinafter referred to as the Plaintiffs in the above-

styled and numbered cause, and respectfully files this Motion to Compel complaining of

**BRIDGESTONE/FIRESTONE, INC.**, hereinafter referred to as the Defendant, and in

support hereof, would respectfully present unto this Honorable Court as follows:

I.

Plaintiffs propounded written discovery upon Defendant to which inadequate

responses were provided.  Plaintiff attaches hereto identified as Exhibit "A," Defendant's

Responses to Plaintiff Blanca Perales' First Set of Discovery, and as Exhibit "B"

Defendant's Responses to Plaintiff Sara Martinez' First Set of Discovery, both of which are incorporated by reference as if fully set forth at length herein.

## II.
## Legal Authority

2.01    Before asking the court to resolve claims of privilege or objections, or filing a motion . . . to compel, the parties must in good faith confer or attempt to confer in an effort to resolve the dispute.  The conferencing requirement is meant to encourage the parties to communicate on discovery disputes and to conserve judicial resources. *Taylor v. Florida Atl. Univ., 132 F.R.D. 304, 305 (S.D. Fla. 1990).*  The parties have conferred in an attempt to resolve these issues without success.  In support hereof, please see attached correspondence identified as Exhibits "C" and "D" respectively, which are further incorporated by reference as if fully set forth at length herein.

2.02    A party may move for an order compelling answers to interrogatories after the answering party has objected to them.  *FRCP 33(b)(5); Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 995 (8th Cir. 1975).*  A motion to compel is the proper method to attack objections to interrogatories. *Pan-Islamic Trade Corp. v. Exxon Corp., 632 F.2d 539, 552 (5th Cir. 1980).*  A party may move for an order compelling production after the responding party has objected.  *FRCP 34(b); see Peat, Marwick, & Co. v. West, 748 F.2d 540, 541-42 (10th Cir. 1984).*  For the purposes of a motion to compel, an evasive or incomplete disclosure, answer or response is treated as a failure to disclose, answer or respond. *FRCP 37(a)(3); see Beard v. Braunstein, 914 F.2d 434, 446 (3d Cir. 1990); Continental Ins. Co. v. McGraw, 110 F.R.D. 679, 681-82 (D.Colo. 1986).*

2

## III.
## Defendant's Prefatory Objections

3.01     In paragraph one of Section 1 of Defendant's Introductory Statement and

Prefatory Objections to both sets of discovery responses, Defendant objected that

Plaintiff's discovery *"is overly broad, and is not limited to the tire in question, its*

*particular specifications, and the manufacturing facility and period of issue,"* thus, any

discovery requests that seek information beyond these limitations would be *"irrelevant*

*and not reasonably calculated to lead to the discovery of admissible evidence."*

***Plaintiffs' Rebuttal:***   Defendant's attempt to limit the scope of Plaintiffs' discovery is

improper.  Clearly, it would be advantageous for Firestone to limit Plaintiff's discovery

into issues concerning the defective design and manufacture of only the particular tire in

question.  However, in view of the widespread problem that Firestone has had with

tread/belt separation of model tires other than the LR78-15 Firestone 721 tire, therefore

any inquiries about other tires manufactured at other facilities and to other specifications

is relevant.  On August 14, 2000 Defendant announced a voluntary recall of P235/75 r15

Radial ATX and Radial ATX II tires made in North America and the P235/75 R15

Wilderness AT tires made in Decatur, Illinois.   See Firestone Statement attached hereto

as Exhibit "E" and incorporated by reference as if fully set forth at length herein.

Additionally, the recalled tires, and the tire made the subject of this lawsuit are

truck tires.  The tires referenced above were recalled by Defendant Firestone as a result of

a detreading / tread/belt separation problem that resulted in vehicle rollovers, most

notably Ford Explorers.  The vehicle involved in the present case was a pickup truck and

the incident made the basis of this lawsuit is a vehicle rollover proximately caused by a

detreading / tread/belt separation problem.   See copy of Plaintiffs' expert report attached hereto as Exhibit "F" and incorporated by reference as if fully set forth at length herein.

Further these inquiries are relevant to Plaintiffs allegations of gross negligence, conscious / knowing indifference, and malice aforethought, Plaintiffs are clearly entitled to inquire into these areas.  Plaintiffs' allegations of gross negligence against Defendant with regard to tire manufacture, however Plaintiffs are clearly entitled to inquire into areas involving *different tires* manufactured by the Defendant, at *different plant locations* and at *different time periods* if necessary, <u>if such inquiries are reasonably calculated to lead to evidence relevant to any of the Plaintiffs' claims against Defendant.</u>  Plaintiffs therefore request that this portion of Defendant's Prefatory Objections be stricken and Defendant be ordered to fully and completely respond to the Plaintiff's discovery requests without limitation.

3.02    (a)  In paragraph two of Section 1 of Defendant's Introductory Statement and Prefatory Objections to both sets of discovery responses, Defendant identified the subject tire as a *"LR78-15 Firestone 721 tire bearing Department of Transportation ('DOT') Serial No. W2V41BU508, indicating that the subject tire was manufactured at Firestone's Wilson, North Carolina facility during the 50th week of 1978,"* then argued that *"information regarding **other tires** manufactured to **other specifications** and at **other facilities** is not 'relevant to the subject matter' of this action."*  Additionally, in Sections 2 and 3 of Defendant's Introductory Statement and Prefatory Objections, Defendant stated that *"the subject tire was built to different 'proprietary specifications"* and information

4

*regarding other, different tires is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*

***Plaintiffs' Rebuttal:***  Plaintiffs are entitled to know about <u>other tires</u> manufactured at <u>other facilities</u> and to <u>other specifications</u> **if** evidence relevant to any of Plaintiffs' allegations against Defendant may be discovered. (Emphasis added.)  Plaintiffs further adopt all argument and authority set forth in section 3.01 above.  Plaintiffs therefore request that this portion of Defendant's Prefatory Objections be stricken.

3.03    In Sections 4 and 5 of Defendant's Introductory Statement and Prefatory Objections to both sets of discovery responses, Defendant stated that it is not waiving certain objections (such as those based on privilege, materiality, hearsay, etc.) and *"for the sake of brevity, the above objections are incorporated into Firestone's responses . . ."* Defendant's attempt to respond to written discovery subject to conditions is improper and impermissible under the FRCP;  Plaintiffs accordingly request that Defendant be ordered to lodge <u>specific objections</u> to individual discovery requests, and ask that this portion of Defendant's Prefatory Objections be stricken.

<div align="center">

**IV.**
**<u>Improper Responses to Plaintiff Blanca Perales'</u>**
**<u>First Set of Discovery</u>**

</div>

4.01  **Plaintiff's Interrogatory No. 1** asked for <u>the identification of any and all individual(s) who built the tire in question, and if these person(s) could not be identified, the identification of any and all individuals who worked as "tire builders" or participated in any portion of the manufacturing process during the week in which the "subject tire" was built, and the identification of any individuals who worked in the quality control area</u>

of the plant during the time in question.  Defendant objected that it was *"overly broad and irrelevant,"* then identified James D. Garner, Firestone's former Director of Product Analysis as the individual *"generally knowledgeable regarding tire design, development, and production of LR78-15 Firestone 721 tires."*

Defendant then responded that *"it is not able to identify the individual"* who manufactured the subject tire, and objected to the identification of any tire builders or individuals who participated in the manufacturing process during the time in question as unduly burdensome because *"there were hundreds of individuals working in the tire building section at the Wilson plant in 1978."*  Defendant also objected to identifying individuals in the quality control area of the plant because *"at the time the 'subject tire' was manufactured, the substantial majority of employees at the Wilson plant had quality control responsibilities."*

***Plaintiff's Rebuttal:***   Defendant's objections are without merit.  The request is relevant because the individuals that Plaintiffs seek identification of may have material information / admissible evidence relevant to issues involved in this lawsuit.  Further, the request is not overbroad; the identities of specific individuals <u>who worked in a specific area of the plant,</u> during a specific time period, have been requested.  The portion of Defendant's response identifying James D. Garner as the individual "generally knowledgeable regarding tire design, development, and production of LR78-15 Firestone 721 tires" is inadequate because Plaintiffs did not ask for the identification of this person.

Further, Plaintiffs didn't ask for the identification of "hundreds of individuals working in the tire building section at the Wilson plant in 1978."  Plaintiffs specifically

asked for the <u>identification of those who "worked as tire builders" or "participated in the manufacturing process"</u> of the tire in question. Plaintiff is entitled to a direct response and specific identification of the individuals requested, asks the Court to order that Defendant's objections be stricken. In the alternative, Plaintiffs request that Defendant be required to submit a list of employees on duty at the Wilson, NC plant during the 50th week of 1978, with a description of each individual's area of employment.

     4.02    In **Request for Production No 2**, Plaintiffs asked for <u>any and all documents constituting any complaints, protests, grievances or indication of concern regarding any tires manufactured at the Wilson, NC plant in question for the calendar year in which the subject tire was built and for the immediate calendar year that concerns or mentions in any way product quality, manufacturing conditions or processes, quality of materials, quality of components, products, tires or the adequacy or propriety of tire components, manufacturing machinery, work time, break time, manpower, equipment, processes or final product quality.</u> Defendant characterized the interrogatory as a *"catch-all request,"* and objected that it was *"overly broad, irrelevant and not calculated to lead to the discovery of admissible evidence."* Defendant then stated that *"any documents responsive to this request from 1977 and 1978 no longer exist."*

**_Plaintiff's Rebuttal_:**   Defendant's objections are incorrect; any documents constituting complaints, protests, grievances or indication of concern are highly relevant to Plaintiffs' claims against Defendant. Plaintiffs are entitled to the documents requested, if they exist. Additionally, if Defendant states that "any documents responsive to this request . . . no longer exist," Plaintiffs request that the Court order an inquiry into whether or not any

such documents ever existed, and if so what happened to them. Further, if it is determined that documents responsive to this request have been destroyed, Plaintiffs request that the Court require the Defendant to explain specifically what documents were destroyed, when, by whom and for what purpose. The Plaintiffs also request that the Court make a finding, if necessary, into the propriety of the destruction if done by, or at the direction of, the Defendant Firestone.

4.03     In **Request for Production No. 3**, Plaintiffs asked for <u>any documents sent to any Defendant tire retailers, dealers and service shops relating to the "subject tires" including but not limited to how to inspect for separation, code for loss adjustment purposes, adjust for warranty claims, or respond to customer complaint</u>. Defendant objected as *"overly broad and seeks information that is irrelevant and not directed to lead to the discovery of admissible evidence,"* then stated, *"assuming plaintiff is referring to adjustment data, Firestone states that the Tire Maintenance, Warranty and Safety Manual applicable to the 'subject tire' no longer exists."* Then on August 22, 2001 Defendant supplemented with this response, *"Firestone states that any documents responsive to this request relating to the subject matter tire no longer exist."*

***Plaintiff's Rebuttal***:   Defendant's objections are without merit. Plaintiffs' request is not overbroad because it is sufficiently specific. Plaintiffs' request is not irrelevant because it is not limited to adjustment data; on the contrary, Plaintiffs' request specifically seeks *"any documents sent to any Defendant tire retailers, dealers and service shops relating to the "subject tires" <u>including but not limited to</u> how to inspect for separation, code for loss adjustment purposes, adjust for warranty claims, or respond to customer complaints,"*

8

CVisPDF - www.texiis.com

not merely "adjustment data" as referenced in Defendant's response. The items sought by Plaintiffs are clearly relevant to issues involved in this lawsuit. Further, with regard to the Defendant's claims that documents responsive to this request no longer exist, Plaintiffs adopt all argument and authority set forth in section 4.02 above.

4.04   In **Interrogatory No. 4**, Plaintiffs requested <u>Defendant's contention regarding why the tire in question separated or detreaded</u>. Defendant responded by objecting to the use of "detread" on the grounds that it is *"vague, and not a term used by Firestone or, . . . in the tire industry in general,"* and stated that *"it has not completed its forensic examination of 'the tire in question'."* On August 22, 2001 Defendant supplemented this response, *"Firestone will provide its expert's conclusions with its expert disclosure as required by the Federal Rules of Civil Procedure and the scheduling order in this case."*

***Plaintiff's Rebuttal***:   The Defendant clearly understands what is meant by "detread" and/or tire "separation" and Plaintiffs are entitled to a direct response on this issue. Defendant is playing a game of semantics that should not be permitted by this Court. Further, Defendant's excuse that "it has not completed its forensic examination of 'the tire in question'" is insufficient because, even though Defendant's expert has not submitted his report (and is not due until September 15, 2001), the examination of the tire has been completed. Thus, Plaintiff is entitled to a direct response. Pursuant to *FRCP 26(b)(1)*, "A party <u>must</u> produce information that is relevant to the claims or defenses involved in the action." (Emphasis added.)

9

Additionally, the request asks about the <u>Defendant's</u> contentions, not its expert's contentions. Please note that in their response to Request for Admission No. 6, Defendants denied a request for them to admit that *"a cause of the death of Marco Antonio Perales was the detachment of the 'tread' / 'belt' of the left rear . . . tire on the vehicle he was driving at the time of the accident."* For the Defendant to deny Request for Admission No. 6 and then sidestep a direct response to this request is improper. Plaintiffs request that Court order Defendant to fully and completely respond to this request immediately.

4.05    In **Interrogatory No. 5**, Plaintiff asked, "<u>What do you contend caused or contributed to cause the injuries that led to the death of Marco Antonio Perales</u>?" Defendant responded that *"it has not completed its forensic examination of 'the subject tire'"* . . and *"will supplement this response after discovery is complete."* On August 22, 2001 Defendant supplemented its response stating, *"Firestone will provide its expert's conclusions with its expert disclosure as required by the Federal Rules of Civil Procedure and the scheduling order in this case."*

***Plaintiff's Rebuttal***:    Defendant's response is inadequate and Plaintiffs are entitled to a direct response on this issue. Defendant's excuse that "it has not completed its forensic examination of 'the tire in question'" is insufficient because of the reasons set forth in section 4.04 above. Additionally, the request asks about the <u>Defendant's</u> contentions, not its expert's contentions. Plaintiffs request that Court order Defendant to fully and completely respond to this request immediately.

4.06    In **Request for Production No 7**, Plaintiff requested "all written or electronic 'documentation' sent to any BRIDGESTONE/FIRESTONE tire retailers, dealers and service shops relating . . . to how to inspect for separation, code for loss adjustment purposes, adjust for warranty claims, or respond to customer complaints." Defendant responded, *"See objections and response to Request No. 3 above."* The pertinent portions of the response were the request was *"overly broad and seeks information that is irrelevant and not directed to lead to the discovery of admissible evidence."* Defendant further stated that *"assuming plaintiff is referring to adjustment data, Firestone states that the Tire Maintenance, Warranty and Safety Manual applicable to the 'subject tire' no longer exists."*

***Plaintiff's Rebuttal:***    Defendant's response is inadequate and its objections are without merit.  Plaintiff's request is not overbroad because it is sufficiently specific, nor is it irrelevant because it is not limited to adjustment data;  to the contrary, the request specifically seeks *"any written or electronic documentation sent to any Defendant tire retailers, dealers and service shops relating to . . . how to inspect for separation, code for loss adjustment purposes, adjust for warranty claims, or respond to customer complaints,"* not merely "adjustment data" as referenced in Defendant's response.  The items sought are clearly relevant to issues involved in this lawsuit. Plaintiffs ask the Court to order that said objections be stricken.

4.07    In **Interrogatory No. 8**, Plaintiff asks, "What do you contend caused the tire in question to separate or detread?"  Defendant objected to this interrogatory *"on the grounds that it is repetitious,"* and then responded, *"see Interrogatory No. 4 above."*

Defendant responded to Interrogatory No. 4 by objecting to "detread" as *"vague, and not a term used by Firestone or, . . . in the tire industry in general,"* stating *"it has not completed its forensic examination of 'the tire in question'."*

***Plaintiff's Rebuttal:***   Clearly the Defendant understands what the Plaintiffs mean by the terms "detread" and/or tire "separation."   Again, Defendant is playing a game of semantics that should not be permitted by this Court.   Plaintiffs are entitled to a direct response.   As to Defendant's excuse that "it has not completed its forensic examination of 'the tire in question'," Plaintiffs adopt all argument and authority set forth in section 4.04 above.

   4.08   In **Interrogatory No. 10,** Plaintiff stated that if Request for Admission No. 9 was admitted, the Defendant is asked to disclose what abuse or misuse the Defendant contends occurred, the facts which indicate such abuse/misuse and to whom such abuse/misuse is attributed.   Defendant stated *"see response to Request No. 9 above."* Then on August 22, 2001 Defendant supplemented by stating *"Not applicable."*

***Plaintiff's Rebuttal:***   Plaintiffs are entitled to a direct response.   As to Defendant's excuse that it "has not completed its forensic examination of the 'subject tire'," Plaintiffs adopt all argument and authority set forth in section 4.04 above.   Further, in their response to Request for Admission No. 9, Defendant denied that the subject tire exhibited no sign of abuse/misuse, yet when asked to disclose specifically what abuse/misuse occurred, Defendant answered, *"Not applicable."*   These responses are inconsistent and Plaintiffs demand a direct response.

4.09    In **Request for Production No. 11,** <u>Plaintiff requested documents which</u>
<u>set forth the general steps or "procedures" followed in the tire design and development</u>
<u>process, including the "testing" phase,</u> to which the Defendant responded, in addition to
its prefatory objections in paragraph 1 (3.01 above), the request was *"overly broad, and*
*seeks information which is irrelevant and not reasonably calculated to lead to the*
*discovery of admissible evidence."* Firestone objected that the request *"seeks*
*information which is confidential, proprietary and trade secret, the disclosure of which*
*would cause irreparable harm to Firestone,"* and subject to the foregoing objections
stated,

> *"the 'subject tire' was designed to comply with FMVSS 109," . . . which are . . . "contained in 49*
> *C.F.R. § 570.109. Once Firestone has completed its inspection of the 'subject tire,' it will*
> *provide . . . a copy of the Tire and Rim Association guidelines for that tire," . . . and . . . "a copy*
> *of a chart which describes the process used for the manufacture of the 'subject tire'."*

***Plaintiff's Rebuttal*:** As to the Tire and Rim Association guidelines and chart which
describes the process used for the manufacture of the "subject tire," Defendant has no
legal basis for withholding these materials until it has completed its inspection of the
subject tire, thus Plaintiffs demand that Defendant produce these materials immediately,
along with any and all materials that reference FMVSS 109 in any way. As to the
Defendant's claims that the request "seeks information which is confidential, proprietary
and trade secret, the disclosure of which would cause irreparable harm to Firestone,"
Plaintiffs respond that same or similar materials have been produced in other litigation by
Firestone, therefore any confidentiality, proprietary and/or trade secret claims have been
waived. Accordingly, the burden is now on Defendant Firestone to establish that the
documents sought have <u>not</u> been produced and/or waived pursuant to other litigation.

Defendant's objection that the request was "overly broad, and seeks information
which is irrelevant and not reasonably calculated to lead to the discovery of admissible
evidence," is frivolous.  This is a products liability lawsuit that concerns the defective
manufacture of the "subject tire."  Plaintiffs' inquiries are specific and seek information
relevant to issues involved in this lawsuit.  Defendant's objections should be overruled.

4.10  In **Request for Production No. 14**, Plaintiffs requested copies of all
promotional materials, including advertisements . . . for the "subject model tires," to
which the Defendant responded, in addition to its prefatory objections in paragraph 1
(3.01 above), the request was *"remote in time, irrelevant and not reasonably calculated
to lead to the discovery of admissible evidence."*  Subject to said objections, Defendant
responded that *"no promotional materials relative to 'the subject tire' still exist."*

***Plaintiff's Rebuttal:***  As to Defendant's claim that no promotional materials still exist,
Plaintiffs adopt all argument and authority contained in section 4.02 above.  The
documents sought are relevant and are not "remote in time" because they inquire about
the specific type of tire in question.  With regard to the Defendant's claim that the request
is "overbroad," Plaintiff adopts all argument and authority in section 4.09 above.

4.11    In **Request for Production No. 15**, Plaintiff requested data from any
industry database to which Defendant has access, which includes compilations related to
tire "tread" and/or "belt" separation data for steel-belted radial tires manufactured and/or
sold by Defendant, including those tires manufactured and/or sold outside the United
States.  Defendant responded that, in addition to its prefatory objections in paragraph 1
(3.01 above), the request was *"overly broad and seeks information remote in time,*

14

*irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*

***Plaintiff's Rebuttal:***   As to the Defendant's reliance on its prefatory objections, Plaintiffs adopt all of the argument and authority set forth in section 3.01, 3.02 and 3.03 above.  Plaintiffs are entitled to inquire into areas involving different tires manufactured by the Defendant Firestone, at different plant locations and time periods if necessary, if such inquiries are reasonably calculated to lead to evidence relevant to any of Plaintiffs' claims against Defendant. Plaintiffs thus request that this portion of Defendant's Prefatory Objections be stricken.

Further, Defendant's suggestion by way of example, that the request be limited to only the tire and vehicle in question is improper and not supported by any authority, legal or otherwise.  Accordingly, Plaintiffs adopt all argument and authority contained in section 3.01 above.  If the Defendant has information regarding other tire products and/or compilations related to tire "tread" and/or "belt" separation data for steel-belted radial tires manufactured and/or sold by Defendant, including any tires manufactured and/or sold outside the United States, this information would be clearly relevant to issues including, but not limited to, gross negligence / conscious indifference / malice aforethought, especially if information is discovered that Firestone knowingly marketed defective tire products outside the U.S.  As to Defendant's objection that the request is "overly broad and seeks information remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence," Plaintiffs adopt all argument and authority set forth in section 4.09 above.

15

4.12    In **Request for Production No. 16**, Plaintiff requested any management,

engineering or marketing meeting minutes, memoranda or other business records,

referring to or discussing the issue of "tread" or "belt" separation in steel belted radial

passenger tires.  Defendant responded, that, in addition to its prefatory objections in

paragraph 1 (3.01 above), objecting it was *"overly broad and seeks information remote in*

*time, irrelevant and not reasonably calculated to lead to the discovery of admissible*

*evidence."*  Subject to the foregoing objections, Defendant then *"refers plaintiff to*

*Interrogatory No. 7 of Sara Martinez Perales's First Set of Discovery,"* which applicable

portion is quoted as follows:

*"Without waiving its objections, Firestone states that it extensively tests its tires as part of the development and qualification process.  This testing includes on-vehicle testing under a variety of operating conditions.  Additionally, vehicle manufacturers typically test tire/vehicle fitments to comply with FMVSS 110 . . . Firestone also attempts to stay abreast of studies and analysis in this area.  For example, James D. Gardner, Firestone's former Director of Product Analysis, has conducted testing of tread/belt separation and vehicle dynamics.  Firestone will provide . . . copies of Mr. Gardner's paper entitled, "The Role of Tread/Belt Detachment in Accident Causation," as well as and earlier paper authored by Mr. Gardner and Christopher Shapley entitled, "The Role of Blowouts in Accident Causation."  The final additional copyrighted articles are also available from the Society of Automotive Engineers, Inc.: "Drag and Steering Affects from Tire Tread Belt Separation and Loss;" and "Anatomy of Accidents Following Tire Disablement," authored by Ernest Klein and Thomas Black (SAE Technical Paper Series No. 1999-01-0446)."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone is providing herewith a copy of the Tire and Rim Association guidelines for*

*the subject tire and a copy of a chart which describes the process used for the*

*manufacture of the subject tire."*

***Plaintiff's Rebuttal:***   As to the Defendant's reliance on its prefatory objections,

Plaintiffs adopt all of the argument and authority set forth in sections 3.01, 3.02 and 3.03

above.  Further, Plaintiffs object to Defendant's response in its entirety as self-serving

and non-responsive. Plaintiffs specifically asked about statements made by any Defendant employees, acknowledging that "tread" or "belt" separation presents a risk of injury or accident, and Plaintiffs are entitled to inquire into these areas if such inquiries are reasonably calculated to lead to evidence relevant to any of the Plaintiffs' claims against this Defendant.

Additionally, Firestone cannot limit Plaintiff's discovery in the manner it seeks to do so by way of its improper example, that the request be limited to *only the tire and vehicle in question*. This attempt by Defendant is improper and not supported by any authority, legal or otherwise. Accordingly, Plaintiffs adopt all argument and authority contained in section 3.01 above. Further, the documents sought are clearly relevant and not "remote in time" because they inquire about the specific type of tire in question.

As to the portion of Defendant's response that refers to Interrogatory No. 7 of Sara Martinez Perales's First Set of Discovery," that is quoted above, Plaintiffs object to those portions of Defendant's response that are overbroad and vague, specifically the quote, "*Firestone states that it extensively tests its tires . . .*" Defendant has not specified what "extensive" means. Plaintiffs request that Defendant be ordered to specify in detail what types of "extensive testing" it performs on its tire products. Further, Plaintiffs object to the quote, "*. . .testing includes on-vehicle testing under a variety of operating conditions.*" For the reason that Defendant has not specified what "a variety of operating conditions" means. Plaintiffs request that Defendant be ordered to specify in detail what types of "operating conditions" it tests its tire products under. Plaintiffs further object to Defendant's improper attempt to limit its response to "*the Tire and Rim Association*

*guidelines for the subject tire and a copy of a chart which describes the process used for the manufacture of the subject tire.*" Plaintiffs request that Defendant produce <u>all</u> documents that are responsive to this request, and not merely the documents it has selectively identified. If no other documents responsive to this request exist, Defendants should so state.

4.13  In **Request for Production No. 17**, Plaintiff requested <u>all statements made by Defendant employees, whether in public or internally, acknowledging that "tread" or "belt" separation poses a risk of injury or accident</u>. Defendant responded that in addition to its prefatory objections in paragraph 1 (3.01 above), the request was "*overly broad and seeks information remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.*" Without waiving their objections, Firestone stated further that:

"*. . . studies have shown that a loss of tread does not on its own cause or lead to an accident. Firestone will provide . . a sample of literature available on how to react to a tire disablement.*"

Then on August 22, 2001 Defendant supplemented by stating, "*Firestone is providing herewith a representative sample of literature available on how to react to a tire disablement.*"

***Plaintiff's Rebuttal***:  As to the Defendant's reliance on its prefatory objections, Plaintiffs adopt all of the argument and authority set forth in sections 3.01, 3.02 and 3.03 above. Further, Plaintiffs object to Defendant's response in its entirety as self-serving and non-responsive. Plaintiffs specifically requested statements made by any Defendant employees, whether in public or internally, acknowledging that "tread" or "belt" separation presents a risk of injury or accident, and Plaintiffs are entitled to this

information if such inquiries are reasonably calculated to lead to evidence relevant to any of the Plaintiffs' claims against this Defendant.

Firestone cannot limit Plaintiff's discovery in the manner it seeks to do so and Defendant's suggestion that the request be limited to only the *tire and vehicle in question* is improper and not supported by any authority, legal or otherwise. Additionally, as to Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. As to the portion of Firestone's response that is quoted above, Plaintiffs object to the quoted portion of Defendant's response *". . . studies have shown that a loss of tread does not on its own cause or lead to an accident . . ."* because it is vague and Defendant has not identified or produced said studies to Plaintiffs. Regarding the sample of literature available on how to react to a tire disablement, Defendant has no legal basis for withholding these materials until it has completed its inspection of the subject tire, thus Plaintiffs demand that Defendant produce these materials immediately.

4.14    In **Request for Production No. 18**, Plaintiff requested <u>all non-lawsuit complaints from consumers, businesses, or government entities received by Defendant relating to alleged "tread" and/or "belt" separation in a "subject model tire."</u> Defendant responded that in addition to its prefatory objections in paragraph 1 (3.01 above), the request was *"overly broad and seeks information remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* Without waiving its objections, Firestone stated further that:

*"it receives unverified complaints concerning its products and service from various sources. For example, Firestone receives complaints about its services and products at each of its 1500 retail stores. There is no centralized location where such store information is collected. More*

CitaPDF - www.fesina.com

*importantly, since the goal in resolving these customer complaints is customer satisfaction, the manner in which a complaint is resolved provides absolutely no indication that a complaint was verified, let alone justified.*

*In addition, Firestone states that under its limited warranty programs, it adjusts tires for consumers on a prorated basis as further described in the limited warranty for the tire being adjusted. Firestone maintains data in its adjustment system generally indicating the number of tires adjusted in a given size, type and plant, and the condition code for the adjustment. These conditions include such things as cosmetic complaints, ride and handling complaints, and a large number of other non-safety conditions. Furthermore, in order to promote brand name loyalty and customer satisfaction, Firestone has historically maintained a liberal adjustment policy for its tires by which customers are offered full or partial credit toward the purchase of a new tire, based upon a tire's wear. Firestone also frequently gives 'adjustment credit' in order to avoid a lengthy dispute with an otherwise valuable customer, when nothing is wrong with the product other than customer dissatisfaction, or when what is alleged to be wrong with the tire is likely the result of customer misuse, or damage in the field.*

*Furthermore, Firestone does not conduct forensic inspections of adjusted tires. Tires are adjusted for a variety of conditions observed during a cursory inspection without attempting to determining the underlying cause of the condition found. Tires are adjusted by dealers and employees at over 1500 Firestone stores across the country. Therefore, the fact that a tire has been adjusted does not mean that the adjusted tire was defective, nor do adjustment rates indicate percentages of defective tires.*

*After Firestone has completed its inspection of 'the subject tire,' Firestone will provide . . . adjustment data, if any exists, related to tread/belt conditions for any LR78-15 Firestone 721 steel belted radial passenger tires manufactured to the same specification as 'the subject tire' and returned for adjustments from January 1993 through May 30, 1999, the date of the incident in question. Because the adjustment data being provided contains information that is considered to be proprietary and confidential, that data will be produced subject to the entry of a suitable protective order. See also response to Request No. 65 below."*

The pertinent portion of Defendant's response to Request No. 65 is as follows:

*"Without waiving these objections, Plaintiff states that from time to time it receives unverified claims and lawsuits regarding its products. After Firestone has completed its inspection of 'the subject tire,' it will provide counsel for plaintiff a list of personal injury claims and a list of personal injury lawsuits, if any, received by Firestone before May 30, 1999, the date of plaintiff's accident, allegedly involving tread/belt separations of LR78-15 Firestone 721 steel belted radial passenger tires manufactured to the same specification as 'the subject tire.' This list of lawsuits will include the name of the claimant, the claimant's attorney, and the court and docket number. The list of claims will include the name of the claimant, the name of the claimant's attorney, if any, the state of the incident, and the date received by Firestone. In order to protect the privacy interests of the claimants, these lists will be provided subject to the entry of a suitable protective order. In producing this information, Firestone does not agree that the information reflects claims or incidents that are substantially or reasonably similar to the subject accident. See also response to Request No. 18 above."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Adjustment data related to the subject tire constitutes proprietary and confidential business information. Firestone will provide . . . the adjustment data described . . . upon entry of a suitable protective order. In addition, Firestone will provide . . . the list of personal injury claims described in its original response upon entry of a suitable protective order. As noted in its original response, in producing this information, Firestone does not agree that the claims or incidents reflected therein are substantially or reasonably similar to the subject accident. Firestone states that it has received no other personal injury lawsuits received* (sic) *before May 30, 1999, the date of plaintiffs' accident, allegedly involving tread/belt separations of LR78-15 Firestone 721 steel belted radial passenger tires manufactured to the same specification as the subject tire."*

***Plaintiff's Rebuttal***:  Plaintiffs object to Defendant's response in its entirety as self-serving and non-responsive.  Plaintiffs specifically asked about any/all non-lawsuit complaints from consumers, businesses, or government entities received by Defendant relating to alleged "tread" and/or "belt" separation in a "subject model tire," and Plaintiffs are entitled to this information if such inquiries are reasonably calculated to lead to evidence relevant to any of the Plaintiffs' claims against this Defendant.

Plaintiffs further object to Defendant's improper attempt to limit its response to data involving tread/belt separations of *"LR78-15 Firestone 721 steel belted radial passenger tires manufactured to the same specification as the subject tire."* Firestone cannot improperly limit Plaintiff's discovery in the manner it seeks to do and accordingly Plaintiffs adopt all argument and authority contained in section 3.01 above.  Plaintiffs request that Defendant produce all documents that are responsive to this request, and not merely the documents it has identified.  If no other documents responsive to this request exist, Defendants should so state.

Additionally, the documents sought are not "remote in time" because they relate to a specific type of tire, manufactured at a specific point in time, at a specific plant

location. Plaintiffs further object to Defendant's demand for a "suitable protective order" without submitting a draft for consideration. Plaintiffs additionally deny that a protective order is necessary. As to the Defendant's reliance on its prefatory objections, Plaintiffs adopt all of the argument and authority set forth in section 3.01, 3.02 and 3.03 above. Plaintiffs thus request that Defendants be ordered to fully respond to Plaintiff's discovery requests without limitation.

4.15    In **Interrogatory No. 19**, Plaintiff asked for the average profit per tire to Defendant for each tire of the same model and size as "the subject tire" sold from 1978 to present. Defendant responded that in addition to its prefatory objections in paragraph 1 (3.01 above), the request was *"overly broad and seeks information remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* Firestone also objected the inquiry *"seeks confidential and trade secret pricing information, the disclosure of which would be detrimental to Firestone's business."*

***Plaintiff's Rebuttal***:    As to the Defendant's reliance on its prefatory objections, Plaintiffs adopt all of the argument and authority set forth in sections 3.01, 3.02 and 3.03 above. Regarding Defendant's claims that the request "seeks confidential and trade secret pricing information," and that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries regarding the average profit per tire are relevant to issues involved in this lawsuit, is information that Plaintiffs are entitled to discover, and Defendant's objections should be overruled.

4.16  In **Request for Production No. 20**, Plaintiff requested <u>copies of</u>

<u>government standards/regulations . . . which were applicable to the design, manufacture</u>

<u>sale or performance of tires distributed or sold by Defendant from 1978 to the present.</u>

Defendant responded that in addition to its prefatory objections in paragraph 1 (3.01

above), the request was *"overly broad and seeks information remote in time, irrelevant*

*and not reasonably calculated to lead to the discovery of admissible evidence."*   Without

waiving its objections, Firestone stated that:

> *"it designs and manufactures its tires to meet or exceed FMVSS 109. The requirements for*
> *FMVSS 109 are contained in 49 C.F.R. § 570.109. Additionally, the dimensional and load*
> *carrying capacity of the "subject tire" also complies with the guidelines of the Tire and Rim*
> *Association ('TRA'). After Firestone has completed its inspection of the 'subject tire,' it will*
> *provide . . . a copy of the TRA guidelines for that tire."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone is providing herewith a copy of the Tire and Rim Association guidelines for*

*the subject tire."*

***Plaintiff's Rebuttal***:  As to the Defendant's reliance on its prefatory objections,

Plaintiffs adopt all of the argument and authority set forth in sections 3.01, 3.02 and 3.03

above, and as to the Defendant's objection that the request is "overbroad," Plaintiffs

adopt all argument and authority set forth in section 4.09 above.  Plaintiffs are entitled to

inquire into areas involving any/all copies of government standards/regulations . . . which

are and/or were applicable to the design, manufacture, sale or performance of tires

distributed or sold by Defendant from 1978 to the present, if such inquiries are

reasonably calculated to lead to evidence relevant to any of Plaintiffs' claims against this

Defendant.

CIMPDF - www.fastio.com

Firestone cannot limit Plaintiff's discovery in the manner it seeks to do so and Defendant's attempt to limit its response to the Tire and Rim Association guidelines for the subject tire is improper. Plaintiffs requested any/all copies of government standards/regulations . . . which are and/or were applicable to the design, manufacture, sale or performance of tires distributed or sold by Defendant from 1978 to the present and Plaintiffs are entitled to this information; clearly, if Defendant has any documents or materials responsive to this request, in its possession, custody or control, that have been generated by government regulators including, but not limited to, the Environmental Protection Agency (EPA) and Occupational Safety and Health Administration (OSHA), they need to be produced immediately.

4.17    In **Request for Production No. 21**, Plaintiff requested any and all reports, photographs, computer analysis or simulations, or videotapes of any "tests" performed by Defendant, or by any independent entities on behalf of Defendant on "subject model tires" to determine vehicle handling characteristics or stability when a tire fails by way of a (1) "tread" and/or "belt" separation or (2) a blowout. Defendant responded that "in addition to its prefatory objections in paragraph 1 (3.01 above), the request was *"overly broad, unduly burdensome, remote in time, irrelevant, seeks information not reasonably calculated to lead to the discovery of admissible evidence, and seeks information protected by the attorney work product doctrine as it pertains information prepared in anticipation of litigation."* Without waiving its objections, Firestone stated further that:

*"James D. Gardner recently published the results of his testing of vehicle response to the loss of a tire tread at speeds, including high speeds. The tests included a 1994 Ford Explorer and a 1994 specification Radial ATX tire. The paper was presented at the 1998 meeting of the ITEC, with representatives of the tire and automotive industries in attendance. A copy of the published report will be produced . . ."*

24

CUtePDF - www.tesisx.com

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone is providing herewith a copy of James D. Gardner's recently published results of his testing of vehicle response to the loss of a tire tread at speeds, including high speeds. In its original response, Firestone preserved its objection to the production of any testing that would constitute work product. However, to date, Firestone has not conducted any testing in this matter for which it intends to assert work product protection."*

***Plaintiff's Rebuttal***:   Plaintiffs object to the Defendant's response in its entirety as argumentative, self-serving and non-responsive.  Plaintiffs also object to Defendant's improper attempt to limit its response to Dr. Gardner's paper.  Plaintiffs specifically asked for any reports, photographs, computer analysis or simulations, or videotapes of any "tests" performed by Defendant, or by any independent entities on behalf of Defendant on "subject model tires" involved in this case to determine vehicle handling characteristics or stability when a tire fails by way of a (1) "tread" and/or "belt" separation or (2) a blowout, and Plaintiffs are entitled to this information if such inquiries are reasonably calculated to lead to evidence of any of Plaintiffs' claims against Defendant.

As to the Defendant's reliance on its prefatory objections, Plaintiffs adopt all of the argument and authority set forth in section 3.01, 3.02 and 3.03 above.  Regarding Defendant's claims that the request seeks information protected by the attorney work product privilege as it supposedly relates to "information prepared in anticipation of litigation,"  Plaintiffs respond that similar materials have been produced in other litigation by Firestone, therefore any work product claims have been waived.  A party may waive the protection of the work-product doctrine by . . . intentionally disclosing the material to third parties. *Norton v. Caremark, Inc., 20 F.3d 330, 339 (8th Cir. 1994).*

25

Materials created in the ordinary course of business . . . are not prepared in anticipation of litigation. _Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260-61 (3d Cir. 1993); National Un. Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992)._ In the alternative, Plaintiffs' request that the Court conduct an en camera inspection to determine which documents are legitimately protected pursuant to the attorney work product doctrine.

4.18    In **Request for Production No. 22,** Plaintiff requested copies of all photographs, films, videos, diagrams, "test" reports and the underlying "test" data for any "test" relevant to the cause of action in question which may be conducted prior to the trial of this cause.  Defendant objected that it was _"vague, overly broad, irrelevant, seeks information not reasonably calculated to lead to the discovery of admissible evidence, and is allegedly improperly phrased to seek information relating to potential future testing, therefore seeks information protected from discovery by the consulting expert exemption and as attorney work product."_  Without waiving these objections, Defendant stated that it had not completed its inspection of "the subject tire," and had not yet determined how much past testing it may consider relevant at time of trial.  Then on August 22, 2001 Defendant supplemented its response by stating,

_"Firestone is providing herewith a copy of a quality control chart which generally describes the inspections and tests conducted by Firestone throughout the development and manufacturing process.  Furthermore, as noted in its response to Interrogatory No. 33, Firestone conducts extensive testing throughout the manufacturing process.  Although the protocols and procedures utilized in testing the subject tire are no longer available, Firestone will provide . . . copies of FMVSS 109 testing for tires made to the same specification as the subject tire upon entry of a suitable protective order."_

**_Plaintiff's Rebuttal_**:   Plaintiffs object to Defendant's response in its entirety as

argumentative, self-serving and non-responsive.  Plaintiffs specifically requested copies of all photographs, films, videos, diagrams, "test" reports and the underlying "test" data for any "test" relevant to the cause of action in question which may be conducted prior to the trial of this cause and Plaintiffs are entitled to this information, if such inquiries are reasonably calculated to lead to evidence relevant to any of Plaintiffs' claims against this Defendant.   Plaintiffs further object to Defendant's demand for a "suitable protective order" without submitting a draft for consideration. Plaintiffs additionally deny that a protective order is necessary.

As to Defendant's objection that the request is "overbroad," Plaintiff adopts all argument and authority set forth in section 4.09 above.  Defendant also claimed that the inquiry was "improperly phrased to seek information relating to potential future testing," and seeks information protected from discovery by the consulting expert exemption and as attorney work product.  These objections are without merit.  Plaintiffs are entitled to any test results that are relevant to the issues involved in the instant litigation, <u>even if</u> such results were obtained after the incident made the basis of the lawsuit occurred, or the date this lawsuit was filed, *if it was not prepared in anticipation of litigation*.  Indeed, this discovery request imposes an ongoing duty upon Defendant to supplement, as is required by the FRCP, and Plaintiffs ask that Defendant be ordered to comply.  As to the Defendant's excuse that it had not completed its inspection of "the subject tire," and had not yet determined how much past testing it may consider relevant at time of trial, Defendant has completed its testing and returned the subject tire.  Plaintiffs are thus entitled to a direct response.

4.19    In **Interrogatory No. 23**, Plaintiff requested <u>a description of the general</u>
<u>nature and types of training "documents" and aids, . . . films, video tapes, handouts and</u>
<u>posters, made available at the time "the subject tire" was built, to persons who construct,</u>
<u>manufacture or assemble tires or operate tire building equipment at the Wilson, NC plant</u>
<u>where "the subject tire" was built.</u>  Defendant responded that, in addition to its prefatory

objections in paragraph 1 (3.01 above), the request was *"overly broad, irrelevant and*
*seeks information not reasonably calculated to lead to the discovery of admissible*
*evidence."* Firestone further objects that said information is *"confidential and*
*proprietary."* Without waiving its objections, Defendant further stated that:

> *"the personnel involved in the quality assurance and manufacturing processes in the Wilson*
> *plant in 1978 were trained to recognize any anomalies or deviations from specifications in the*
> *production of tires such as 'the subject tire.' Training materials responsive to this request and*
> *related to the manufacture of 'the subject tire' no longer exist."*

***Plaintiff's Rebuttal:***    Plaintiffs object to the Defendant's response in its entirety as
argumentative, self-serving and non-responsive.  Plaintiffs specifically asked for any
<u>training "documents" and aids, . . . films, video tapes, handouts and posters, made</u>
<u>available at the time "the subject tire" was built, to persons who construct, manufacture</u>
<u>or assemble tires or operate tire building equipment at the Wilson, NC plant where "the</u>
<u>subject tire" was built,</u> and Plaintiffs are entitled to this information if such inquiries are
reasonably calculated to lead to evidence relevant to any of the Plaintiffs' claims against
this Defendant.

Firestone cannot limit Plaintiff's discovery in the manner it seeks to do so and
Defendant's suggestion that the request be limited to only the *tire and vehicle in question*
is improper and not supported by any authority, legal or otherwise.  Accordingly,

Plaintiffs adopt all argument and authority set forth in section 3.01 above. Additionally, the documents sought are not overbroad or irrelevant because they relate to the specific type of tire in question. As to the Defendant's reliance on its prefatory objections, Plaintiffs adopt all of the argument and authority set forth in section 3.01, 3.02 and 3.03 above. As to Defendant's claim that said information is "confidential and proprietary," Plaintiffs respectfully adopt all argument and authority set forth in section 4.15 above. As to Defendant's representation that "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority set forth in section 4.02 above.

4.20  In **Request for Production No. 24**, Plaintiff requested <u>the various types of training "documents" made available at the time "the subject tire" was built, to persons who construct, manufacture or assemble tires or operate tire building equipment at the plant where the subject tire" was built</u>, to which the Defendant responded: *"See objections and response to Interrogatory No. 23 above.*

***Plaintiff's Rebuttal***:   Plaintiffs respectfully adopt all of the argument and authority set forth in section 4.19 above.

4.21    In **Request for Production No. 25**, Plaintiff requested that, "<u>to the extent that such training 'documents' have changed since the time 'the subject tire' was built, please produce the current versions</u>." Defendant responded that, in addition to its prefatory objections in paragraph 1 (3.01 above), the request was *"overly broad, irrelevant and seeks information that is remote in time and not reasonably calculated to lead to the discovery of admissible evidence. "* Firestone further claimed that said

information comprises "trade secrets" the disclosure of which would cause irreparable

harm to Firestone.  Without waiving its objections, Defendant further stated that:

*"there have been innumerable continuous changes to the manufacturing processes used by
Firestone during the period the Firestone 721 brand name has been used.  There have been a
multitude of evolutionary changes to the equipment and procedures used at the plant since the
tire identified as 'the subject tire' was manufactured in 1978."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone's use of the term 'innumerable' in reference to the continuous changes that Firestone
has made to the manufacturing process over the past 23 years was deliberate and accurate.
Manufacturing equipment, factory controls, and other capital equipment have been replaced
repeatedly as technology has advanced and equipment has aged.  Certain areas of the factory
have been reorganized and reequipped.  To detail each and every change that Firestone has
made over more than two decades, most if not all of which would have no relevance whatsoever
to this lawsuit, would be unduly burdensome."*

**_Plaintiff's Rebuttal_:**   Plaintiffs object to the Defendant's response in its entirety as

argumentative, self-serving and non-responsive.  Plaintiffs specifically asked for any

**changes or current versions** of training "documents" and aids, . . . films, video tapes,

handouts and posters, made available at the time "the subject tire" was built, to persons

who construct, manufacture or assemble tires or operate tire building equipment at the

Wilson, NC plant where "the subject tire" was built, and Plaintiffs are entitled to this

information if such inquiries are reasonably calculated to lead to evidence relevant to any

of the Plaintiffs' claims against this Defendant.

Firestone cannot limit Plaintiff's discovery in the manner it seeks to do so and

Defendant's suggestion that the request be limited to only the *tire and vehicle in question*

is not supported by any authority, legal or otherwise.  Accordingly, Plaintiffs adopt all

argument and authority set forth in section 3.01 above.

As to the Defendant's reliance on its prefatory objections, Plaintiffs adopt all of the argument and authority set forth in its rebuttal portion of section 3.01, 3.02 and 3.03 above.   With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Further, with regard to Defendant's claim of trade secret, Plaintiffs adopt all argument and authority contained in section 4.15 above.  Plaintiffs thus request that Defendants be ordered to fully and completely respond to the Plaintiff's discovery requests without limitation.

4.22    In **Request for Production No. 26**, Plaintiff requested all non-lawsuit complaints, incident reports or other notices made by any dealership, customer, consumer or government agency to Defendant alleging a "subject model tire" "tread" or "belt" separation.  Defendant responded, *"See objections and responses to Request No. 18 above."*

***Plaintiff's Rebuttal***:   Plaintiffs adopt all of the argument and authority set forth in section 4.14 above.

4.23    In **Request for Production No. 27**, Plaintiff requested all documents showing what other BRIDGESTONE/FIRESTONE tires were built with the same "belt" skim stock formulation as "the subject tire."  Defendant responded, in addition to its prefatory objection in paragraph 1, (3.01 above), the request was *"overly broad, unduly burdensome, and seeks information which is remote in time, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence."*  Without waiving its objections, Firestone stated further that,

*"An individual steel belted radial passenger tire may have as many as two dozen separate components comprised of a dozen or more rubber compounds, as well as different types of fabrics*

*and other components.  Thus, tires made with the same skim stock are not necessarily substantially similar."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone states that, in order to determine which tires were manufactured with the same skim stock as the subject tire, it would have to review by hand thousands of microfiche containing outdated specifications.  Such an effort would literally take an engineer weeks of dedicated effort.  Furthermore, skim stock is only one of many components in a tire.  An individual steel belted radial passenger tire may have as many as two dozen separate components comprised of a dozen or more rubber compounds, as well as different types of fabrics and other components.  Thus, tires made with the same skim stock are not necessarily substantially similar."*

***Plaintiff's Rebuttal:***   Plaintiffs object to the Defendant's response in its entirety as argumentative, self-serving and non-responsive.  Plaintiffs specifically asked for the identification of other tires built with the same "belt" skim stock formulation as "the subject tire," especially if other tires built with the same "belt" skim stock formulation as "the subject tire" had similar problems with detreading and/or belt separation.  Plaintiffs are entitled to this information.  Further, if no other tires were built by Defendant with the same "belt" skim stock formulation as "the subject tire," Plaintiffs are entitled to know this information, and inquire why.

With regard to the Defendant's objection that the request is "overbroad," Plaintiff respectfully adopts all argument and authority set forth in section 4.09 above.  Plaintiffs' inquiries regarding what other Defendant tires were built with the same "belt" skim stock formulation as "the subject tire," are not remote, are specific and clearly seek information relevant to the issues involved in this lawsuit, therefore Defendant's objections should be overruled.

4.24    In **Request for Production No. 28**, Plaintiff requested <u>any and all</u>

<u>warranty records and other documents related to other incidents of "tread" or "belt"</u>

<u>separation or for "subject model tires" returned for adjustment due to "tread" or "belt"</u>

<u>separation" from 1978 through the present.</u> Defendant responded, *"See objections and*

*response to Request No. 18 above."*

***Plaintiff's Rebuttal:***    Plaintiffs are entitled to inquire into the areas of warranty records

and other documents related to other incidents of tread/belt separation, or tires returned

for adjustment due to tread/belt separation to determine the extent of the detreading / belt

separation problem, and the extent of Defendant's knowledge of the detreading / belt

separation problem, as they are relevant to issues including, but nor limited to, gross

negligence, conscious / knowing indifference and malice aforethought.  Plaintiffs

additionally adopt all argument and authority set forth in section 4.14 above.

4.25    In **Interrogatory No. 29**, Plaintiff requested the <u>identification of each and</u>

<u>every discreet component of "the subject tire" by stating the component name, its</u>

<u>function, in what order it was assembled, the manner in which it was incorporated into</u>

<u>the tire, the identity of the manufacturer of the component, the date and location where it</u>

<u>was manufactured, and whether the component was used in tire models other than the</u>

<u>model of "the subject tire", and if so, the identity of such other tire models.</u>

Defendant objected that the interrogatory was *"overly broad, irrelevant and seeks*

*information not reasonably calculated to lead to the discovery of admissible evidence."*

Firestone further objected that the interrogatory *"requests information which is*

*proprietary and comprises trade secret"* and, without waiving its objections stated,

*"The formula, "recipe," a specification of any proprietary compound used in Firestone's tires represents thousands of manhours and millions of dollars in research and development, the disclosure of which would cause Firestone irreparable harm. Without waiving its objections, Firestone states that it will provide . . . specifications for "the subject tire," which contains a detailed description of each component used in "the subject tire" and the manner in which those components were assembled and cured into the finished tire. Since this specification contains information which is considered to be proprietary and confidential, it will be produced subject to the entry of a suitable protective order."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"The specification for the subject tire contains information that constitutes proprietary and confidential business information. Firestone will provide . . . a copy of the specification subject to an appropriate protective order."*

***Plaintiff's Rebuttal:***   Plaintiffs are clearly entitled to the identification of each component of "the subject tire." This is a products liability lawsuit that concerns the defective manufacture of the "subject tire." Plaintiffs' inquiries are specific and clearly seek information relevant to the heart of this lawsuit. With regard to the Defendant's objection that the request is "overbroad," and that the request "seeks information which is proprietary and confidential," Plaintiffs adopt all argument and authority set forth in section 4.09 above.   Plaintiffs further object to Defendant's demand for a "suitable protective order" without submitting a draft for consideration. Plaintiffs additionally deny that a protective order is necessary.

4.26   In **Interrogatory No. 30,** Plaintiff requested that Defendant detail in the manner in which "the subject tire" was assembled by stating how and when each component was assimilated into the tire, in what location within the plant the component was stored and then added to the tire, the process by which each component was assimilated, the approximate time it takes to assemble each component, what methods, processes or mechanisms were used to ensure proper bonding of the components, and the

34

time, manner, and location of the final inspection or other quality control process. Defendant responded, *"See objections and response to Interrogatory No. 29 above."*

***Plaintiff's Rebuttal***: Plaintiffs adopt all of the argument and authority set forth in section 4.25 above.

4.27    In **Interrogatory No. 31**, Plaintiff requested that to the extent that other tires built contemporaneously (i.e., during the same week) with "the subject tire" in the same plant, but built using different processes or "procedures," please describe all such different processes or "procedures." Defendant responded, in addition to its prefatory objections in paragraph 1, (3.01 above), the request was *"overly broad and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* Firestone further objected that the interrogatory *"seeks information which is proprietary and comprises trade secret."*

***Plaintiff's Rebuttal***:    Plaintiffs are entitled to inquire into this area because if Defendant manufactured the subject tire differently, or more importantly, with lesser-quality components than those used in the manufacture of other tires, Plaintiffs are entitled to know this information, and to inquire why. This is crucial information that the jury should be allowed to consider. With regard to the Defendant's objection that the request is "overbroad," and "seeks information which is proprietary and confidential," Plaintiffs adopt all argument and authority set forth in section 4.09 above.

35

4.28  In **Interrogatory No. 32**, Plaintiff requested, <u>to the extent that tire</u>

<u>building processes or "procedures" in the Wilson, NC plant have changed since "the</u>

<u>subject tire" was built, please describe all such different processes or "procedures."</u>

Defendant responded, in addition to its prefatory objections in paragraph 1, (3.01 above),

the request was *"overly broad, unduly burdensome, and seeks information which is*

*irrelevant and not reasonably calculated to lead to the discovery of admissible*

*evidence."* Firestone further objected that the request *"seeks information that comprises*

*trade secret, the disclosure of which would cause irreparable harm to Firestone."*

Without waiving its objections, Firestone stated further that,

*"there have been innumerable continuous changes to the manufacturing processes used by*
*Firestone during the period the Firestone 721 brand name has been used.  There have been a*
*multitude of evolutionary changes to the equipment and procedures used at the plant since the*
*tire identified as "the subject tire" was manufactured in 1978.  The specification described in*
*response to Interrogatory No. 29 above includes the change history for the specification."*

***Plaintiff's Rebuttal*:**   Plaintiffs are entitled to inquire into this area to determine if

Defendant has made any changes or improvements to their processes that are relevant to

the issues including, but not limited to, defective manufacture.  With regard to the

Defendant's objection that the request is "overbroad," and "seeks information which is

proprietary and confidential," Plaintiffs adopt all argument and authority set forth in

section 4.09 above.

4.29    In **Interrogatory No. 33**, Plaintiff requested <u>all quality control processes</u>

<u>or "procedures" in effect at the Wilson, NC plant **at the time "the subject tire" was**</u>

**built**.  Defendant responded, in addition to its prefatory objections, in paragraph 1, (3.01

above), the request was *"overly broad, unduly burdensome, and seeks information which*

*is remote in time, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence,"* and, without waiving its objection stated,

*"all passenger tires sold in the United States must comply with or exceed the requirements of Federal Motor Vehicle Safety Standard ('FMVSS') 109 as set forth by the Department of Transportation ('DOT'). This testing includes high speed and endurance testing, plunger energy, bead unseating, and dimensional checks. Firestone will provide . . . available FMVSS 109 testing for tires made to the same specification as 'the subject tire,' if any. However, any test protocols and procedures for 'the subject tire' no longer exist. Since this testing contains information which is considered to be confidential and proprietary, it will be provided subject to the entry of a suitable protective order."*

*"Firestone also conducts quality assurance testing throughout the manufacturing process. These tests include laboratory tests of the various components used in the manufacture of the tire. Additionally, every tire is inspected after it is assembled and again after curing. Subsequently, each tire is checked for uniformity and balance using a calibrated tire uniformity machine and balancing equipment. Firestone will provide counsel for plaintiff a copy of a quality control chart which generally describes the inspection and tests conducted by Firestone throughout the development and manufacturing process."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"As noted above, the protocols and procedures utilized in testing the subject tire no longer exist. However, Firestone will provide . . . copies of the FMVSS 109 testing for tires made to the same specification as the subject tire upon entry of a suitable protective order."*

***Plaintiff's Rebuttal:*** Plaintiffs object to Defendant's demand for a "suitable protective order" without submitting a draft for consideration. Plaintiffs additionally deny that a protective order is necessary. As to Defendant's claim that the request is overboard, Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs are entitled to discover information regarding quality control processes or procedures in effect at the Wilson, NC plant at the time "the subject tire" was built because this is a products liability lawsuit that concerns the defective manufacture of the "subject tire." Regarding the FMVSS 109 testing for tires, Defendant has no legal basis for withholding these materials until it has completed its inspection of the subject tire, therefore Plaintiffs demand that Defendant produce these materials immediately, along with any and all

materials and/or documents that reference FMVSS 109 in any way.  With regard to Defendant's claim that the documents no longer exist, Plaintiffs adopt all argument and authority set forth in section 4.02 above.

4.30    In **Interrogatory No. 34**, Plaintiff requested, to the extent that quality control processes or "procedures" in the Wilson, NC plant have changed since "the subject tire" was built, a description of all such different processes or "procedures." Defendant responded, in addition to its prefatory objection, in paragraph 1, (3.01 above), the request was *"overly broad, unduly burdensome, seeks information which is remote in time, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence."* Firestone stated further that,

> *"There have been innumerable continuous changes to the manufacturing processes used by Firestone during the period the Firestone 721 brand name has been used. There have been a multitude of evolutionary changes to the equipment and procedures used at the plant since the tire identified as "the subject tire" was manufactured in 1978. Firestone thus objects to this interrogatory on grounds of undue burden."*

Additionally, Firestone objected that the request "seeks materials and information that comprises trade secret." Without waiving its objections, Firestone stated,

> *"throughout its history as a tire manufacturer it has made continuous evolutionary changes to virtually all stages of its manufacturing processes as new technologies and equipment have become available."*

***Plaintiff's Rebuttal:***   Plaintiffs object to the Defendant's response in its entirety as argumentative, self-serving and non-responsive.  Plaintiffs specifically asked for any information regarding  any control processes or procedures in the Wilson, NC plant have changed since "the subject tire" was built, since this information may be relevant to issues including, but not limited to, defective product manufacture and/or design.

Plaintiffs are entitled to this information.  With regard to the Defendant's objection that the request is "overbroad," and "seeks information which is proprietary and confidential," Plaintiffs adopt all argument and authority set forth in section 4.09 above.

    4.31   In **Interrogatory No. 35**, Plaintiff requested <u>all humidity, temperature, and environmental control processes and equipment used at the Wilson, NC plant at the time "the subject tire" was built to ensure a proper physical environment for constructing tires.</u>  Defendant objected that the request was *"overly broad, seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*  Without waiving its objections, Firestone stated further that,

> *"there are a variety of environmental controls at the Wilson plant as part of the manufacturing process.  For example, the creel room is temperature and humidity controlled and is constantly monitored to ensure proper temperature and relative humidity.  The temperature and humidity of the storage area for the steel cord fabric which is cut into stabilizer plies or belts is also monitored.  However, the documents related to temperature and humidity controls at Wilson during the period "the subject tire" was built no longer exist."*

***Plaintiff's Rebuttal***:  Plaintiffs are entitled to discover any information regarding any humidity, temperature, and environmental control processes and equipment used at the Wilson, NC plant at the time "the subject tire" was built to ensure a proper physical environment for constructing tires, since this information is highly relevant to issues including, but not limited to, defective manufacture.  With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs' inquiries are specific and clearly seek information relevant to the issues involved in this lawsuit, therefore Defendant's objections should be overruled.  With regard to Defendant's claim that the documents no longer exist, Plaintiffs adopt all argument and authority set forth in section 4.02 above.

4.32    In **Request for Production No. 36**, Plaintiff requested <u>all documents that</u>

<u>discuss or mention the use or purpose of **nylon cap "plies", nylon safety "belt**.**"**</u>

Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above),

the request was *"overly broad, irrelevant, remote in time and seeks information not*

*reasonably calculated to lead to the discovery of admissible evidence."*  Firestone further

objected that the request was vague with regard to Plaintiff's definition of "nylon safety

belts."  Without waiving its objections, Firestone stated further that,

> *"cap plies or belt edge strips are used in steel belted radial passenger and light truck tires in the United States primarily to meet high speed requirements to reduce the effects of centrifugal force or "standing waves" in the tire at higher operating speeds.  Firestone states that it has done testing that shows the use of a cap ply does not prevent the detachment of the tread and outer belt in a tire where a separation is developing.  Firestone will provide . . . notes concerning this testing.  Since these documents contain information which is considered to be proprietary and confidential, they will be provided subject to the entry of a suitable protective order."*

Then on August 22, 2001 Defendant supplemented its response by stating,

> *"The referenced notes concerning testing that shows the use of a cap ply does not prevent the detachment of the tread and outer belt in a tire where a separation is developing contain proprietary and confidential business information, and will be provided upon entry of a suitable protective order."*

***Plaintiff's Rebuttal***:   Plaintiffs are entitled to discover any documents that discuss or

mention the use or purpose of nylon cap "plies", nylon safety "belt," since this

information could be relevant to issues including, but not limited to, defective

manufacture.  With regard to the Defendant's objection that the request is "overbroad,"

Plaintiffs adopt all argument and authority set forth in section of 4.09 above.  Plaintiffs'

inquiries are specific and clearly seek information relevant to the issues involved in this

lawsuit, therefore Defendant's objections should be overruled.  Plaintiffs further object to

Defendant's demand for a "suitable protective order" without submitting a draft for

consideration. Plaintiffs additionally deny that a protective order is necessary.

CSkPDF - www.fasisa.com

4.33    In **Request for Admission No. 37**, Plaintiff requested Defendant to admit or deny that *at least one of the purposes of* **nylon cap "plies"** is to reduce the incidence of "tread" or "belt" separation. Defendant responded, *"Firestone denies this request as stated. See response to Request No. 36 above."*

***Plaintiff's Rebuttal*:**    Plaintiffs adopt all of the argument and authority set forth in section 4.32 above.

4.34    In **Request for Admission No. 38**, Plaintiff asked Defendant to admit or deny that *at least one of the purposes of* **nylon safety "belts"** is to reduce the incidence of "tread" or "belt" separation. Defendant objected that the request was vague with regard to Plaintiff's definition of "nylon safety belts," and without waiving its objections, *"denied the request as stated. See response to Request No. 36 above."*

***Plaintiff's Rebuttal*:**    Plaintiffs adopt all of the argument and authority set forth in section 4.32 above.

4.35    In **Request for Admission No. 39**, Plaintiff requested Defendant admit or deny that at the time "the subject tire" was manufactured, it was technologically and economically feasible to incorporate nylon cap "plies" into the design of "the subject tire." Defendant objected that the request was vague with regard to Plaintiff's definition of "economically feasible." Without waiving its objections, Firestone stated,

*"it is unable to admit or deny this request on the grounds that it lacks sufficient information upon which to base its response. Firestone is unable, 23 years after the fact, to determine if it would have been technologically or economically feasible to incorporate nylon cap plies in 'the subject tire.' Firestone does admit that some steel belted radial tires were manufactured prior to 1978 incorporating a nylon cap ply."*

CVisPDF - www.fasoo.com

***Plaintiff's Rebuttal***:   Plaintiffs are entitled to a direct response to this request and its admission that nylon cap lies were used in tires manufactured prior to the subject tire, requires a response. Further, Plaintiffs object to the Defendant's use of the term "economically feasible" as vague.

4.36  In **Request for Admission No. 40**, Plaintiff requested Defendant admit or deny that at the time "the subject tire" was manufactured, it was technologically and economically feasible to incorporate nylon safety "belts" into the design of "the subject tire."  Defendant responded, *"See objections and response to Request No. 39 above."*

***Plaintiff's Rebuttal***:   Plaintiffs adopt all of the argument and authority set forth in section 3.35 above.

4.37    In **Interrogatory No. 41**, Plaintiff stated that, if any of the previous four Requests for Admission were denied, Defendant was requested to state what nylon safety "belts" or cap "plies" are used for, to state whether the Wilson, NC plant has ever incorporated nylon cap "plies" or safety "belts" in any tire, to identify any/all such tires by model name and dates of manufacture, and state the design purpose of the cap "ply" or safety "belt" in such tires.  Defendant objected on the grounds that it was *"overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*  Firestone further objected that it was vague with regard to plaintiff's definition of "nylon safety belts."  Without waiving its objections, Firestone stated further that,

*"certain of its steel belted radial passenger and light truck contain nylon cap plies or belt edge strips. Firestone will provide . . . a list of sizes and models of tires manufactured at the Wilson plant that have cap plies and/or belt edge strips, based on information that is reasonably accessible. See also response to Request No. 36 above. Since this document contains*

*information which is considered to be proprietary and confidential, it will be provided subject to the entry of a suitable protective order."*

> Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone states that it uses and has used cap plies and/or belt edge strips ("cap strips") in certain of its steel belted radial passenger and light truck tires in the United States to meet high-speed qualification requirements. Cap plies and strips reduce the effects of centrifugal force or "standing waves" in the tire at higher operating speeds. Whether cap plies and/or strips are necessary in any given tire for high-speed qualification depends on the specific design of that tire. For example, certain tires with heavier lug designs, including some high flotation light truck tires, may require cap plies or strips to meet high speed requirements, while differently designed tires can meet those requirements without cap plies or strips. Furthermore, if a customer specifies a speed rating for its tires requiring a cap ply or strips, any common green tire would also have those features even if not speed rated. In addition, Firestone occasionally designs tires with cap plies or cap strips to reduce road noise, affect the tire's foot print shape, increase penetration resistance or for processing reasons. Firestone first used cap plies in steel belted radial tires in the United States in approximately 1985 or 1986. Firestone began using belt edge strips shortly thereafter.*

*As stated in its original response, Firestone will, upon entry of a suitable protective order, provide . . . a list of tires manufactured at the Wilson plant that incorporate cap plies and/or belt edge strips based on information that it* (sic) *reasonably accessible. However, in order to determine the reason such technology was incorporated into any particular tire, Firestone would have to review each and every tire specification, and possibly search the individual files of the engineers involved in the design, if such files are still available. As is apparent from the length of the list, such a search would be unreasonably burdensome."*

**_Plaintiff's Rebuttal_:**  Plaintiffs are entitled to discover information from this Defendant regarding  what nylon safety "belts" or cap "plies" are used for, whether the Wilson, NC plant has ever incorporated nylon cap "plies" or safety "belts" in any tire, and the identify of any/all such tires, along with the design purpose of the cap "ply" or safety "belt" in such tires, because this is relevant to issues including, but not limited to, safer alternative design, the Defendant's knowledge/awareness of such safer alternative design, and/or the Defendant's conscious disregard of such safer alternative design.  As to Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs further object to Defendant's demand for a

CMAPDF – www.texis.com

"suitable protective order" without submitting a draft for consideration. Plaintiffs additionally deny that a protective order is necessary.

     4.38    In **Request for Production No. 42**, Plaintiff requested <u>all documents concerning FMVSS 109 compliance certification or "testing" of the model of tires including testing of prototype or development tires that were precursors to the final design of "the subject tire</u>." Defendant responded, in addition to its prefatory objections in paragraph 1, (3.01 above), the request was *"overly broad, unduly burdensome, remote in time, irrelevant, and seeks information not reasonably calculated to lead to the discovery of admissible evidence."* Without waiving its objections, Firestone stated that,

> *"all passenger tires old in the United States must comply with or exceed the requirements of Federal Motor Vehicle Safety Standard ("FMVSS") 109 as set forth by the Department of Transportation ("DOT"). This testing includes high speed and endurance testing, plunger energy, bead unseating, and dimensional checks. Firestone will provide . . . available FMVSS 109 testing for tires made to the same specification as 'the subject tire,' if any. However, testing protocols and procedures for "the subject tire" no longer exist. Since the testing contains information which is considered to be confidential and proprietary, it will be provided subject to the entry of a suitable protective order."*

     Then on August 22, 2001 Defendant supplemented its response by stating,

> *"Firestone will provide . . . copies of the FMVSS 109 testing for tires made to the same specification as the subject tire upon entry of a suitable protective order."*

***Plaintiff's Rebuttal***:  Plaintiffs are entitled to discover any information regarding FMVSS 109 compliance certification or "testing" of the model of tires including testing of prototype or development tires that were precursors to the final design of "the subject tire," because it is relevant to issues including, but not limited to, defective tire design / manufacture. With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs'

CutePDF - www.texta.com

inquiries are specific and clearly seek information relevant to the issues involved in this lawsuit, therefore Defendant's objections should be overruled.

      4.39  In **Interrogatory No. 48**, Plaintiff requested the <u>identification of any</u> investigations that have been conducted (either by or at the direction of any federal, any state or foreign government, agency, or internal investigation by or at the direction of Defendant regarding allegations including, but not limited to, tire separation from 1978 to the present, to include the identity of the entity conducting each such investigation, the date of each such investigation, any file number, docket number and/or other identifying information regarding each investigation.  The Defendant responded, in addition to its prefatory objections, in paragraph 1, (3.01 above), the request was *"overly broad, unduly burdensome and seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*  Without waiving its objections, Firestone stated that, *"it is not aware of any investigation by any government agency regarding 'the subject tire' or any LR78-15 Firestone 721 tires."*

***Plaintiff's Rebuttal***:   Plaintiffs object to the Defendant's response in its entirety as argumentative, self-serving and non-responsive.  Plaintiffs also object to Defendant's improper attempt to limit its response to LR78-15 Firestone 721 tires.  Accordingly, Plaintiffs adopt all argument and authority set forth in section 3.01 above.  Plaintiffs specifically asked for any information regarding any investigations into tire separation from 1978, because these findings are relevant to the issues involved in this lawsuit, which is the issue of defective design / manufacture, and Plaintiffs demand a direct

response. With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above.

4.40    In **Interrogatory No. 49**, Plaintiff requested the name and addresses of each insurance company, organization, or individual, and the policy number of each insurance policy, bond agreement, or memorandum of insurance, pursuant to which defendant may be insured  against liability to satisfy all or any or all part of judgment or settlement which may result from this lawsuit, which provides for defense of this suit in any manner, or which provides for indemnity or reimbursement of any obligation or expense incurred, directly or indirectly, in connection with this suit, or to safety or to satisfy, reimburse, compensate or identify against any judgment, obligation or expense in connection with this suit, and please state the terms, the effective dates and all the limits of liability and obligation for each such policy, bond, agreement or memorandum. (Note: This interrogatory also inquires about "excess" coverage or "umbrella" policies of insurance which may provide additional coverage above and beyond "first tier" policies, bonds, agreements or memoranda of insurance, or any self insurance which must be depleted prior to the triggering of such "excess" or "umbrella" policy.

Defendant objected on the grounds that it *"seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* Without waiving its objections, Firestone stated that *"it will provide counsel for plaintiff a copy of its Certificate of Insurance applicable to this claim."* Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone is self-insured for claims after November 1, 2000 due to the fact that settlements, judgments, fees, etc., far exceed the policy limits in effect during the applicable time period."*

***Plaintiff's Rebuttal***:  Clearly, Plaintiff is entitled to a copy of the declaration page

showing the maximum amount of insurance policy limits proceeds available to resolve to

this case, including any and all excess coverage.  Defendant's objection as to relevance is

without merit.  Defendant has no legal basis for withholding or delaying the production

of this information.  Further, Defendant's supplementary response is inadequate in that

this claim arose prior to November 1, 2000.  Plaintiffs thus request that the Defendants be

ordered to provide Plaintiffs with a direct and sufficiently specific response immediately.


    4.41    In **Interrogatory No. 50,** Plaintiff requested <u>the net worth, as reflected in</u>

<u>the most recent financial statement of the Defendant and any parent corporation or</u>

<u>companies of defendant.</u>  Defendant objected on the grounds that it was *"overly broad*

*and seeks information which is irrelevant and not reasonably calculated to lead to the*

*discovery of admissible evidence. "*  Then on August 22, 2001 Defendant supplemented

its response by stating,

*"Firestone is a privately held corporation and does not make its financial statements available to*
*the public.  Firestone will, however provide . . . a copy of its most recent audited financial*
*statements upon entry of a suitable protective order. "*

***Plaintiff's Rebuttal***:  Plaintiffs object to Defendant's demand for a "suitable protective

order" without submitting a draft for consideration. Plaintiffs additionally deny that a

protective order is necessary.  Plaintiffs have made a claim for gross negligence and have

requested punitive/exemplary damages.  Clearly, Plaintiffs are entitled to a specific

disclosure of Defendant's net worth.  A request for Defendant's net worth is sufficiently

specific, and related to the discovery of relevant, admissible evidence.  Defendant's

objection as to relevance is without merit.  Defendant has no legal basis for withholding

or delaying the production of this information to the Plaintiffs immediately.  Further, as

to Defendant's objection that the request was overbroad, Plaintiffs adopt all argument and authority contained in section 4.09 above. Plaintiffs request that this Court order the Defendants to provide Plaintiffs with a direct response immediately.

4.42    In **Request for Production No. 59**, Plaintiff requested the most recent financial statement, and documents of any kind relating to or reflecting the net worth of defendant and any parent corporation or companies owning an interest in defendant. Defendant objected that it was *"overly broad and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence,"* and that it is *"repetitious. See Interrogatory No. 50 above."*

***Plaintiff's Rebuttal:***  Plaintiffs adopt all argument and authority set forth in section 4.41 above.

4.43    In **Request for Production No. 60**, Plaintiff requested copies of all written advertisements, television commercials, magazine advertisements, dealer bulletins, dealer advertisement materials, sales brochures, promotional literature, and advertising materials of any type regarding "the subject tire" from 1978 to present. Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), the request was *"repetitious, overly broad and seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. See response to Request No. 14 above."*  The pertinent portion of response to Request No. 14 is, *"no promotional materials relative to 'the subject tire' still exist."*

***Plaintiff's Rebuttal:***   Plaintiffs are entitled to discover any information regarding advertisements, television commercials, magazine advertisements, dealer bulletins, dealer advertisement materials, sales brochures, promotional literature, and advertising materials of any type regarding "the subject tire" from 1978 to present because this information is relevant to issues including, but not limited to, negligent and/or intentionally misleading advertising of the subject tire.  With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section  4.09 above.  Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

Additionally, if Defendant states that "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above.

     4.44   In **Request for Production No. 62**, Plaintiff requested copies of all shop manuals and service manuals regarding "the subject tire" from 1978 to present. Defendant objected that it seeks information *"which is remote in time, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence."*  Without waiving its objections, Firestone stated further that,

*" 'the subject tire' was designed and manufactured to be reasonably safe for its intended and foreseeable use.  Firestone instructs and warns about the proper care, service and maintenance of its tires in various ways.  By way of example, warnings and information related to the proper use and inflation are molded onto the sidewall of the tire and contained in a label affixed to the tread of the tire.  Additional safety and servicing information is also contained in the Firestone Tire Maintenance Warranty and Safety Manual, which would have been provided in the vehicle's glove compartment if the vehicle was originally equipped with Firestone tires and/or available at the point of purchase if the tires were purchased from a Firestone store or an independent dealer. Firestone states that the Tire Maintenance Warranty and Safety Manual for 'the subject tire' no longer exists.  In additional, Firestone, as a member of the Rubber Manufacturer's Association and the Tire Industry Safety Council ('TISC'), has also disseminated to the public various tire care and service materials.  Firestone will provide . . . same copies of the RMA and TISC booklets.  Furthermore, information regarding proper tire size and inflation is also contained in a placard placed on the subject vehicle by the vehicle manufacturer.  Information about the*

*proper use and maintenance of a vehicle's tire also is provided by the vehicle manufacturer in the vehicle owner's manual. Firestone has no 'shop manuals' or 'service manuals' for its tires."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone is providing herewith sample copies of RMA and TISC booklets."*

**_Plaintiff's Rebuttal_**:  Plaintiffs object to Defendant's identification of, "*warnings and information related to the proper use and inflation are molded onto the sidewall of the tire and contained in a label affixed to the tread of the tire,*" without reproducing a copy of such warnings and information for review by Plaintiffs.  Additionally, Plaintiffs object to the Defendant's response in its entirety as argumentative, self-serving and non-responsive.  Plaintiffs specifically asked for any shop manuals and service manuals regarding "the subject tire" from 1978 to present because it may reveal evidence relevant to the Plaintiffs' claims against Defendant.  Plaintiffs are entitled to this information.

With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

4.45    In **Request for Production No. 63**, Plaintiff requested all blueprints, design drawings, "body in white" drawings, diagrams, templates, schematic sketches, and equivalent documents regarding "the subject tire" from 1978 to present. Defendant objected that it "*seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.*" Without waiving its objections, Firestone stated that,

*"it will provide . . . the mold drawings for 'the subject tire.' Since these drawings contain information which is considered to be proprietary and confidential, they will be produced subject to the entry of a suitable protective order."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone will provide . . . copies of the mold drawings for the subject tire upon entry of a suitable protective order."*

***Plaintiff's Rebuttal:***   Plaintiffs object to Defendant's demand for a "suitable protective order" without submitting a draft for consideration. Plaintiffs additionally deny that a protective order is necessary.  Plaintiffs are clearly entitled to discover any information regarding blueprints, design drawings, "body in white" drawings, diagrams, templates, schematic sketches, and equivalent documents regarding "the subject tire" from 1978 to present because this lawsuit is premised upon allegations of defective design and/or manufacture.  With regard to the Defendant's objection that the request is "overbroad," and "seeks information which is proprietary and confidential," Plaintiffs adopt all argument and authority set forth in section 4.09 above.

4.46    In **Request for Production No. 64**, Plaintiff requested <u>documents in the possession, care, custody, or control of Defendant regarding (or mentioning) "the subject tire" including, but not limited to, any documentation regarding road tests or field testing of "the subject tire", and any manufacturing logs, production records, repair logs, "build" sheets, and shipping records relating to "the subject tire."</u>   The Defendant objected on the ground that it was *"overly broad, unduly burdensome, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*  Without waiving its objections, Firestone stated that *"testing or*

51

*manufacturing records relating to 'the subject tire,' which was manufactured 23 years ago, no longer exist."*

**_Plaintiff's Rebuttal_**:   With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.  As to the Defendant's claims that the request "seeks information which is proprietary and confidential,"  Plaintiffs adopt all argument and authority set forth in section 4.15 above. Additionally, if Defendant states that "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above.

     4.47   In **Request for Production No. 65**, Plaintiff requested all written complaints, correspondence, warranty repair claims, incident reports, statistical analyses, and equivalent documents regarding incidents of alleged tire or tread separation in "the subject tire" from 1978 to present.  Defendant objected that it was *"overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*  Defendant then suggested that Plaintiff's request should be limited to only *the circumstances of Plaintiff's accident*. Without waiving these objections, Plaintiff stated further that,

*"from time to time it receives unverified claims and lawsuits regarding its products. After Firestone has completed its inspection of 'the subject tire,' it will provide . . . a list of personal injury claims and a list of personal injury lawsuits, if any, received by Firestone before May 30, 1999, the date of plaintiff's accident, allegedly involving tread/belt separations of LR78-15 Firestone 721 steel belted radial passenger tires manufactured to the same specification as 'the subject tire.'  This list of lawsuits will include the name of the claimant, the claimant's attorney, and the court and docket number. The list of claims will include the name of the claimant, the name of the claimant's attorney, if any, the state of the incident, and the date received by Firestone   In order to protect the privacy interests of the claimants, these lists will be provided*

CVisPDF - www.fasisi.com

*subject to the entry of a suitable protective order.  In producing this information, Firestone does not agree that the information reflects claims or incidents that are substantially or reasonably similar to the subject accident.  See also response to Request No. 18 above."*

The pertinent portion of Defendant's response to Request No. 18 is as follows:

*"it receives unverified complaints concerning its products and service from various sources.  For example, Firestone receives complaints about its services and products at each of its 1500 retail stores.  There is no centralized location where such store information is collected.  More importantly, since the goal in resolving these customer complaints is customer satisfaction, the manner in which a complaint is resolved provides absolutely no indication that a complaint was verified, let alone justified.*

*In addition, Firestone states that under its limited warranty programs, it adjusts tires for consumers on a prorated basis as further described in the limited warranty for the tire being adjusted.  Firestone maintains data in its adjustment system generally indicating the number of tires adjusted in a given size, type and plant, and the condition code for the adjustment.  These conditions include such things as cosmetic complaints, ride and handling complaints, and a large number of other non-safety conditions.  Furthermore, in order to promote brand name loyalty and customer satisfaction, Firestone has historically maintained a liberal adjustment policy for its tires by which customers are offered full or partial credit toward the purchase of a new tire, based upon a tire's wear.  Firestone also frequently gives 'adjustment credit' in order to avoid a lengthy dispute with an otherwise valuable customer, when nothing is wrong with the product other than customer dissatisfaction, or when what is alleged to be wrong with the tire is likely the result of customer misuse, or damage in the field.*

*Furthermore, Firestone does not conduct forensic inspections of adjusted tires. Tires are adjusted for a variety of conditions observed during a cursory inspection without attempting to determining the underlying cause of the condition found.  Tires are adjusted by dealers and employees at over 1500 Firestone stores across the country.  Therefore, the fact that a tire has been adjusted does not mean that the adjusted tire was defective, nor do adjustment rates indicate percentages of defective tires.*

*After Firestone has completed its inspection of 'the subject tire,' Firestone will provide . . . adjustment data, if any exists, related to tread/belt conditions for any LR78-15 Firestone 721 steel belted radial passenger tires manufactured to the same specification as 'the subject tire' and returned for adjustments from January 1993 through May 30, 1999, the date of the incident in question.  Because the adjustment data being provided contains information that is considered to be proprietary and confidential, that data will be produced subject to the entry of a suitable protective order.  See also response to Request No. 65 below."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Adjustment data related to the subject tire constitutes proprietary and confidential business information.  Firestone will provide . . . the adjustment data described in its original response upon entry of a suitable protective order.*

CSMPDF - www.testix.com

*In addition, Firestone will provide . . . the list of personal injury claims described in its original response upon entry of a suitable protective order. As noted in its original response, in producing this information, Firestone does not agree that the claims or incidents reflected therein are substantially or reasonably similar to the subject accident. Firestone states that it has received no other personal injury lawsuits received* (sic) *before May 30, 1999, the date of plaintiffs' accident, allegedly involving tread/belt separations of the LR78-15 Firestone 721 steel belted radial passenger tires manufactured to the same specifications as the subject tire."*

**_Plaintiff's Rebuttal_:**  Plaintiffs object to Defendant's demand for a "suitable protective order" without submitting a draft for consideration. Plaintiffs additionally deny that a protective order is necessary.  Plaintiffs also object to Defendant's improper attempt to limit the response to "adjustment data."  Plaintiffs specifically asked for written complaints, correspondence, warranty repair claims, incident reports, statistical analyses, and equivalent documents regarding incidents of alleged tire or tread separation in "the subject tire" from 1978 to present because this lawsuit is premised upon allegations of defective design and/or manufacture.  Plaintiffs are entitled to this information. Additionally, if Defendant states that "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above. Also object to Defendant's attempt to limit the scope of Plaintiffs inquiry to . . .

4.48    In **Request for Production No. 66,** Plaintiff requested <u>all recall notices, dealer service bulletins, correspondence, memoranda, and equivalent documents regarding" the subject tire" (including, but not limited to incidents of alleged tire or tread separation) of "the subject tire" from 1978 to present.</u>  Defendant objected that it was *"vague, overly broad and seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence,"* then stated,

*"there has never been a recall of any LR78-15 Firestone 721 tires," and without waiving its objections, Firestone stated further that, "any technical bulletins relating to Firestone 721 tires no longer exist. See also response to Request No. 62 above."*

54

***Plaintiff's Rebuttal***:   As to Defendant's objection that the request is "overbroad,"
Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs'
inquiries are specific and clearly seek information relevant to issues involved in this
lawsuit, therefore Defendant's objections should be overruled.  Further, Plaintiffs object
to Defendant's improper attempt to limit the scope of this inquiry to *"LR78-15 Firestone*
*721 tires"* and adopts all argument and authority set forth in section 3.01 above.

    4.49   In **Request for Production No. 68**, Plaintiff requested all correspondence,
memoranda, reports, data compilations, statistical compilations and equivalent documents
regarding all investigations conducted by or at the direction of Defendant; the federal
government or foreign governmental agency regarding allegations of alleged tire or tread
separation regarding "the subject tire" from 1978 to present.  Defendant objected on the
grounds that it is *"repetitious, overly broad, and seeks information that is remote in time,*
*irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.*
*Without waiving its objections, see response to Interrogatory No. 48 above."*

***Plaintiff's Rebuttal***:   As to Defendant's objection that the request is "overbroad,"
Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs'
inquiries are specific and clearly seek information relevant to issues involved in this
lawsuit, therefore Defendant's objections should be overruled.  Additionally, Plaintiffs
adopt all of the argument and authority set forth in section 4.39 above.

    4.50   In **Request for Production No. 69**, Plaintiff requested all correspondence,
memoranda, reports, data compilations, statistical compilations, and equivalent
documents regarding all investigations conducted by or at the direction of Defendant; the

CutePDF - www.tezbs.com

federal government or any state government; any state or federal government agency; or any foreign government agency regarding allegations of tire or tread separation regarding "the subject tire" from 1978 to present. Defendant objected, *"on the grounds that it is repetitious. See Request No. 68 above."*

**_Plaintiff's Rebuttal_:**  Plaintiffs adopt all of the argument and authority set forth in section 4.49 above.

4.51    In **Request for Production No. 70,** Plaintiff requested <u>all texts, treatises, memoranda, papers and equivalent documentary materials (whether published or note) prepared by or at the direction of Defendant, or its engineers and employees, regarding allegations of tire or tread separation regarding "the subject tire" from 1978 to present,</u> to which Defendant objected on the grounds that it is *"overly broad and seeks information that is remote in time, irrelevant and not reasonable calculated to lead to the discovery of admissible evidence."* Without waiving its objections, Firestone stated that, *"it is not aware of any documents responsive to this request regarding 'the subject tire.' See also the documents described in response to Interrogatory No. 7 of Sara Martinez Perales' First Set of Discovery."* The pertinent part of response to Interrogatory No. 7 is:

*"Without waiving its objections, Firestone states that it extensively tests its tires as part of the development and qualification process. This testing includes on-vehicle testing under a variety of operating conditions. Additionally, vehicle manufacturers typically test tire/vehicle fitments to comply with FMVSS 110 . . . Firestone also attempts to stay abreast of studies and analysis in this area. For example, James D. Gardner, Firestone's former Director of Product Analysis, has conducted testing of tread/belt separation and vehicle dynamics. Firestone will provide . . . copies of Mr. Gardner's paper entitled, "The Role of Tread/Belt Detachment in Accident Causation," as well as an earlier paper authored by Mr. Gardner and Christopher Shapley entitled, "The Role of Blowouts in Accident Causation." The final additional copyrighted articles are also available from the Society of Automotive Engineers, Inc.: "Drag and Steering Affects from Tire Tread Belt Separation and Loss;" and "Anatomy of Accidents Following Tire Disablement," authored by Ernest Klein and Thomas Black (SAE Technical Paper Series No. 1999-01-0446)."*

***Plaintiff's Rebuttal*:** Plaintiffs are entitled to discover any information regarding texts, treatises, memoranda, papers, etc. prepared by or at the direction of Defendant, or its engineers and employees, regarding allegations of tire or tread separation because this lawsuit is premised upon allegations of defective design and/or manufacture. With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

    4.52    In **Request for Production No. 72**, Plaintiff requested copies of all depositions given by technical expert witnesses (non-medical) hired by or on behalf of Defendant, and all depositions given by any Defendant representatives, in all lawsuits brought against Defendant for personal injuries or deaths involving allegations of tire or tread separation. Defendant responded, in addition to its prefatory objection, paragraph 1, (3.01 above*)*, the request was *"overly broad, unduly burdensome and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* By way of example, Firestone improperly attempts to limit this inquiry to only 'the tire and vehicle in question,' then states that, *"it is not aware of any depositions responsive to the request in litigation involving a LR78-15 Firestone 721 steel belted radial passenger tire."*

***Plaintiff's Rebuttal*:** Plaintiffs are entitled to discover any information regarding depositions by Defendant technical expert witnesses, and by Defendant representatives, in lawsuits for personal injuries or deaths involving allegations of tire or tread separation,

CitiPDF - www.fasite.com

because this lawsuit is premised upon allegations of defective design and/or manufacture. With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

Plaintiffs additionally object to Defendant's improper attempt to limit its inquiry by way of example, to only depositions responsive to the request in litigation involving a LR78-15 Firestone 721 steel belted radial passenger tire. The materials requested by Plaintiffs were not restricted to a specific model tire; Defendants should be ordered to produce responsive materials in all lawsuits in which allegations of tire or tread separation have been made, regardless of model type. Plaintiffs accordingly adopt all argument and authority set forth in section 3.02(a) above.

4.53    In **Request for Production No. 73**, Plaintiff requested <u>copies of all final trial court pleadings (or the live trial court pleadings in pending litigation) involving the Defendant; copies of all written discovery of Defendant; and copies of all affidavits filed by or by on behalf of Defendant in all lawsuits brought against Defendant for personal injuries or death where it is alleged that tire or tread separation occurred</u>. Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), the request was *"overly broad, unduly burdensome and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* By way of example, Firestone improperly attempts to limit this inquiry to only *"the tire and vehicle in question,"* and *"the circumstances of plaintiff's accident"*

then states that, *"it is not aware of any depositions responsive to the request in litigation involving a LR78-15 Firestone 721 steel belted radial passenger tire,"* and *"without waiving its objections, Firestone refers plaintiff to the documents offered in response to Request No. 65 above."*

**_Plaintiff's Rebuttal_**:   Plaintiffs are clearly entitled to discover any final trial court pleadings involving the Defendant . . . in all lawsuits . . . for personal injuries or death where it is alleged that tire or tread separation occurred, because this lawsuit is premised not only upon allegations of defective design and/or manufacture, but also allegations of gross negligence and/or conscious / knowing indifference.  With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

Plaintiffs additionally object to Defendant's improper attempt to limit its inquiry by way of example, to only depositions responsive to the request in litigation involving a LR78-15 Firestone 721 steel belted radial passenger tire. The materials requested by Plaintiffs were not restricted to a specific model tire;  Defendants should be ordered to produce responsive materials in all lawsuits in which allegations of tire or tread separation have been made, regardless of model type.  Plaintiffs accordingly adopt all argument and authority set forth in section 3.01 above.  Plaintiffs also respectfully adopt all of the argument and authority set forth in section 4.51 above.

4.54     In **Request for Production No. 74**, Plaintiff requested <u>copies of all</u>

<u>depositions given by technical expert witnesses (non-medical) hired by or on behalf of</u>

<u>Defendant, and all depositions given by Defendant for personal injuries or death where it</u>

<u>is alleged that tire or tread separation occurred.</u>   Defendant objected *"on the grounds that*

*it is repetitious.  See Request No. 72 above."*

***Plaintiff's Rebuttal***:   Plaintiffs adopt all of the argument and authority set forth in

section 4.52 above.

4.55     In **Request for Production No. 75**, Plaintiffs requested <u>all field</u>

<u>investigation notes or road accident records made by or on behalf of Defendant of all</u>

<u>known incidents where it is alleged that tire or tread separation occurred</u>.   Defendant

responded, in addition to its prefatory objections, paragraph 1, (3.01 above), the request

was *"overly broad, unduly burdensome and seeks information which is remote in time,*

*irrelevant and not reasonably calculated to lead to the discovery of admissible*

*evidence."*   By way of example, Firestone improperly attempts to limit this inquiry to

only *"the tire and vehicle in question,"* and *"the circumstances of plaintiff's accident"*

then states that, *"without waiving its objections, Firestone refers plaintiff to the*

*documents offered in response to Request No. 65 above."*

***Plaintiff's Rebuttal***:   As to Defendant's objection that the request is "overbroad,"

Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs'

inquiries are specific and clearly seek information relevant to issues involved in this

lawsuit, therefore Defendant's objections should be overruled.

Plaintiffs additionally object to Defendant's improper attempt to limit its inquiry by way of example, to only *"the tire and vehicle in question,"* and *"the circumstances of plaintiff's accident."* The materials requested by Plaintiffs are not restricted to only the accident upon which this lawsuit is based; that would defeat the intent in which the request was made. Accordingly, Plaintiffs adopt all argument and authority set forth in section 3.01 above. Clearly, Defendants are being evasive and should be ordered to produce responsive materials in all known incidents in which allegations of tire or tread separation have been made. Plaintiffs additionally adopt all argument and authority set forth in section 4.47 above.

## V.
## Defendant's Improper Responses to Plaintiff Sara Martinez' First Set of Discovery

5.01    In **Request for Admission No. 4,** Plaintiffs requested Defendant to admit or deny that no other tire manufacturer has manufactured "the subject tire" or "model tires" for Defendant. Defendant objected that it was vague with regard to definition of "model tires." Without waiving its objections, Firestone admitted that, *"although it purchases various materials from outside vendors, it was responsible for the assembly and manufacture of 'the subject tire'."*

***Plaintiffs' Rebuttal:***   As to the objection that the Plaintiffs' definition of "model tires" is vague, Defendant is again playing semantics that should not be permitted. Plaintiffs request that Defendant's objections be stricken and a direct, sufficiently specific response be ordered.

CMxPDF - www.hexisx.com

5.02    In **Request for Admission No. 6**, Plaintiffs requested Defendant to <u>admit or deny that tire "tread" or "belt" separation **can** cause vehicle handling and stability problems which may lead to driver loss of control</u>.  Defendant responded, in addition to its prefatory objection, paragraph 1, (3.01 above), objecting *"on the ground that the request lacks sufficient facts.  As a result, Firestone is unable to admit or deny this request. "*  Then, without waiving its objections, the Defendant **admitted in part and denied in part the request**, stating that,

*"Firestone denies that a tread/belt separation normally adversely affects vehicle dynamics so as to cause loss of control.  Firestone admits, however, that under certain extreme and unusual circumstances a tread/belt separation and detachment may lead to loss of driver control."*

***Plaintiffs' Rebuttal***:    Plaintiffs object to the Defendant's response in its entirety as argumentative, self-serving and non-responsive.  By admitting the request in part and denying the request in part, Defendant is being evasive.  Plaintiffs are entitled to a direct response.  Plaintiffs also object to the portions of Defendant's response that are vague, in particular the statement that "Firestone denies that a tread/belt separation normally adversely affects vehicle dynamics so as to cause loss of control," without defining what is meant by "normally." Additionally, Plaintiffs object to Defendant's statement, "that under certain extreme and unusual circumstances a tread/belt separation and detachment may lead to loss of driver control," without defining what is meant by "extreme and unusual circumstances."  Plaintiffs request that the Court strike the limiting objections, order Defendant to provide a direct response.

5.03  **Interrogatory No. 9** asks the Defendant to <u>identify each incident in which a "tread or belt separation" has occurred (or is alleged to have occurred) in a tire such as "the subject tire" by stating the date of the incident; the city, county (or parish) and state</u>

62

where the incident occurred; the tire position of the vehicle where the tread separation

occurred, and the plant, year and week of manufacture of the tire which failed; whether or

not the vehicle lost control, was involved in a collision or rolled over; whether any one

was injured and, if so, a basic description of the injuries sustained by each person as a

result of the incident; the date when Defendant first received notice that such incident had

occurred; whether or not a claim was made or a lawsuit was filed; and if so, the name,

address and phone number of the Claimant(s)' attorneys, the style, (case number) cause

number, and court jurisdiction where the suit was filed; and the status of the claim.

Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above),

objecting that it is *"vague, overly broad, unduly burdensome and seeks information*

*which is remote in time, irrelevant, and not reasonably calculated to lead to the discovery*

*of admissible evidence."* Firestone further objected that the request was not limited to the

facts and circumstances of the subject accident. Without waiving its objections, Firestone

stated that,

*"after it has completed its inspection of 'the subject tire,' it will provide . . . adjustment data, if any, related to tread/belt conditions for LR78-15 Firestone 721 steel belted radial passenger tires manufactured during the same specification period as 'the subject tire' and returned for adjustments from January 1, 1993 through May 1999."* Firestone stated further that, *"adjustment data prior to January 1993 no longer exists on its system. Because the adjustment data being provided contains information that is considered to be proprietary and confidential, that data will be produced subject to the entry of a suitable protective order."*

In addition, Firestone stated that,

*"from time to time it receives unverified claims and lawsuits regarding its products. After Firestone has completed its inspection of 'the subject tire,' it will provide . . . a list of claims and a list of lawsuits, if any, involving personal injury, and allegedly arising from a tread/belt separation of a tire made to the same specification as 'the subject tire,' and received by Firestone before May 30, 1999, the date of the subject accident. In order to protect the privacy interest of claimants, the lists will be produced subject to the entry of a suitable protective order. Each list will include the date of incident, the incident location, the name of the claimant, the claimant's attorney, if any, the court and docket number, if any, the DOT tire serial number, and the date received by Firestone. By producing this information, Firestone is not admitting that any of these*

*lawsuits and claims involved facts and circumstances substantially similar to the subject accident. See also response to Request No. 23 below."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Adjustment data related to the subject tire constitutes proprietary and confidential business information. Firestone will provide . . . the adjustment data described in its original response upon entry of a suitable protective order.*

*In addition, Firestone will provide . . . the list of personal injury claims described in its original response upon entry of a suitable protective order. As noted in its original response, in producing this information, Firestone does not agree that the claims or incidents reflected therein are substantially or reasonably similar to the subject accident. Firestone states that it has received no other personal injury lawsuits received (sic) before May 30, 1999, the date of plaintiffs' accident, allegedly involving tread/belt separations of LR78-15 Firestone 721 steel belted radial passenger tires manufactured to the specification as the subject tire.*

**_Plaintiffs' Rebuttal_:**   Plaintiffs object to the Defendant's response in its entirety as argumentative, self-serving and non-responsive. Plaintiffs further object to Defendant's demand for a "suitable protective order" without submitting a draft for consideration. Plaintiffs additionally deny that a protective order is necessary. Plaintiffs further object to the Defendant's claim that the materials requested constitute "proprietary and confidential business information," in that this objection was timely made. In the alternative, Plaintiffs adopt all argument and authority set forth in section 4.09 above.

Plaintiffs are entitled to discover any information regarding each incident in which a "tread or belt separation" has occurred (and the details of each) because they are relevant to issues including, but not limited to, the extent of the detreading problem, Defendant's knowledge / conscious disregard of the detreading problem. As to Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections

should be overruled.  Plaintiffs also object to Defendant's attempt to limit its inquiry by
example, to only the facts and circumstances of the accident made the basis of this
lawsuit.  Further, Plaintiffs object to Defendant's improper attempt to limit the scope of
this inquiry to *"LR78-15 Firestone 721 tires"* and adopts all argument and authority set
forth in section 3.01 above.

5.04    In **Request for Production No. 10**, Plaintiffs requested production
of the following types of documents related to every incident listed in previous response:

(a)  The first "document" by which Defendant received notice of such incident;

(b)  The first court petition or complaint by which a lawsuit was made against Defendant
arising out of such incident;

(c)  The last amended petition or complaint by which a legal claim was made against
Defendant arising out of such incident;

(d)  Any and all documents in which such incident was identified or discussed in either
internal Defendant documents or memoranda, or in correspondence between
Defendant and some other entity. *(Defendant is not requested to identify
communications between Defendant and trial counsel regarding litigation, when such
communication occurred after the date Defendant was served with a lawsuit or if
such communication was in anticipation of the defense of a potential lawsuit arising
out of the specific incident);*

Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01
above), objecting that it is *"overly broad, unduly burdensome, and seeks information
which is not limited to 'the subject tire,' vehicle, and circumstances of the subject
accident."*  Therefore, reasoned the Defendant, *"the information sought is irrelevant and
not reasonably calculated to lead to the discovery of admissible evidence."*  Firestone
further objected to subparagraph (d) on the grounds that, *"it calls for information and
materials subject to the attorney-client privilege and the work product doctrine and*

*because the phrase 'any and all documents' as used in this subparagraph is overly*

*broad, even if limited to non-privileged or work product communications.  Without*

*waiving its objections, see response to Interrogatory No. 9 above. "*

**_Plaintiffs' Rebuttal_:**   Plaintiffs are entitled to discover documents regarding other

incidents in which a "tread or belt separation" has occurred, or has been alleged, because

this information is relevant to the issues involved in this case.  With regard to the

Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and

authority set forth in section 4.09 above.  As to Defendant's claims that the request seeks

information protected by the attorney work product privilege as it supposedly relates to

"information prepared in anticipation of litigation," Plaintiffs adopt all argument and

authority set forth in section 4.17 above.  Additionally, Plaintiffs adopt all of the

argument and authority set forth in section 5.03 above.


        5.05     In **Request for Production No. 11** Plaintiffs requested <u>production of all</u>

<u>documents in the possession of or subject to the control of Defendant, no matter wherever</u>

<u>in the world they are located, containing loss adjustment data for tires substantially</u>

<u>similar in design to</u> "the subject tire."

*["Loss Adjustment Data" is defined as summary compilations of individual claim*
*adjustment records, field performance data and/or customer concession adjustment*
*records, rainbow charts, awareness charts, tire failure records, failure data compilations*
*and other statistical, quantitative or numerical records regarding tire failures, tire*
*defects and tires returned for warranty adjustment.]*


Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above),

objecting that it is *"overly broad, unduly burdensome and seeks information from other*

*non-party entities which is irrelevant and not reasonably calculated to lead to the*

*discovery of admissible evidence.*" Firestone further objected to the definition of "loss

adjustment data" on the grounds that that definition is *"vague with regard to Plaintiff's*

*definition of 'rainbow charts,' or 'awareness charts' as those terms are not used by*

*Firestone or, to Firestone's knowledge, in the tire industry in general.*" In addition,

Firestone objected to Plaintiff's definition of "substantially similar."

Firestone also objected on the grounds that *"it is not limited to the failure mode of*

*'the subject tire,' or the time period during which the specification for 'the subject tire'*

*was in effect. Without waiving its objections and assuming that Plaintiff is seeking*

*information regarding adjustment data, see response to Interrogatory No. 9 above.*"

***Plaintiffs' Rebuttal:***    With regard to the Defendant's objection as to vagueness with

regard to the definition of "loss adjustment data" on the grounds that that definition is

"vague with regard to Plaintiff's definition of 'rainbow charts,' or 'awareness charts,'

again the Defendant is playing semantics. Firestone has had an opportunity to inspect the

tire. Certainly, since examination of the tire has been completed, Defendant will know if

their position in this lawsuit will be that "the subject tire failed due to a separation or

detreading of the outer belt and tread from the tire" or if Firestone will suggest another

reason as to why the tire failed. Defendant's response is evasive and shielded by

improper objections. Plaintiffs request a direct response. Additionally, Plaintiffs adopt all

of the  argument and authority set forth in section 5.03 above.

5.06    In **Interrogatory No. 12**, Plaintiff requested that Defendant list all radial

tire models or radial tire lines manufactured by Defendant anywhere in the world for the

period of 1978 until the present, by stating  the brand name and other model or line

67

identifying designation for each tire line, as well as the country in which each such line is manufactured and the country(s) in which each such line is sold. Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is, *"overly broad, unduly burdensome and seeks information over a 23 year period which is irrelevant, remote in time, and not reasonably calculated to lead to the discovery of admissible evidence."*

***Plaintiffs' Rebuttal*:** Plaintiffs are entitled to discover any information regarding other radial tire models or radial tire lines manufactured by Defendant for the period of 1978 until the present, in order to compare the manufacturing process, tire components, etc. to the subject tire, and is relevant to issues including, but not limited to, knowledge of / conscious indifference to safer alternative design. Also, the request is not overly broad or remote in time; Plaintiffs adopt all argument and authority set forth in section 4.09 above.

5.07    In **Request for Admission No. 13**, Defendant is requested to admit or deny that it maintains loss adjustment data (as defined above) for all tire lines it manufactured. Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* Firestone also objected to the definition of "loss adjustment data" on the grounds that that definition is *"vague with regard to Plaintiff's definition of 'rainbow charts,' or 'awareness charts' as those terms are not used by Firestone or, to Firestone's knowledge, in the tire industry in general."* Without waiving its objections, Firestone responded,

*"assuming that this request refers to adjustment data, Firestone denies this request. However, Firestone admits that it does maintain adjustment data, if any exists, for Firestone 721 tires."*

***Plaintiffs' Rebuttal:*** Plaintiffs are entitled to a direct response without the limitations imposed by Defendant's improper objections. As to Defendant's objection that the request is "overbroad," Plaintiff adopts all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

   5.08   In **Request for Production No. 14,** Plaintiffs request production of all documents or data compilations located anywhere in the world which contain loss adjustment data (as defined above) on any tire lines manufactured by Defendant, and with respect to each "document" or group of "documents," identify its location and the entity (company, office, department or person) who is the custodian of the same. Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that *"it is overly broad, unduly burdensome, and not limited to 'the subject tire,' the failure mode at issue, or to this Defendant."* Furthermore, Firestone objected to the definition of "loss adjustment data" contained in the request on the grounds that it is *"vague with regard to Plaintiff's definition of 'rainbow charts' or 'awareness charts,' as those terms are not used by Firestone, nor, to Firestone's knowledge, within the tire industry in general."* Without waiving its objections, Firestone stated that,

*"assuming Plaintiff is referring to adjustment data, . . . that information regarding warranty adjustments of its tires, including 'the subject tire,' is maintained in a computer system under the control of Firestone's Corporate Quality Assurance Department. During the relevant time period, this department was under the supervision of W. E. Moore, Manager of Quality Assurance. See also response to Interrogatory No. 9 above."*

***Plaintiff's Rebuttal***:  With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

As to Defendant's objection as to vagueness with regard to the definition of "loss adjustment data," "rainbow charts" and "awareness charts," again Defendant is playing semantics.  In response to request for Admission No. 13, Defendant admitted that, *"it does maintain adjustment data, if any exists, for Firestone 721 tires,"*  however in Request for Production No. 14, objects to the definition of "loss adjustment data" as vague.  Clearly, Defendant's response is evasive and shielded by improper objections. Plaintiffs request a direct and immediate response.

5.09   In **Request for Admission No. 15,** Plaintiffs request the Defendant to admit or deny that Defendant maintains "loss adjustment data" in electronic format, to which Defendant responded,  in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*  Firestone further objected to the definition of "loss adjustment data" contained in the request on the grounds that it is *"vague with regard to Plaintiff's definition of 'rainbow charts' or 'awareness charts,' as those terms are not used by Firestone, nor, to Firestone's knowledge, within the tire industry in general."*  Without waiving its objections, Firestone stated that, *"assuming that this request refers to adjustment data, Firestone can admit that it does maintain adjustment data, if any exists, for Firestone 721 tires."*

***Plaintiff's Rebuttal:*** With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

Defendant also objected to definitions of "loss adjustment data," "rainbow charts" and "awareness charts," as to vague; again Defendant is playing semantics. In response to Request for Admission No. 13, Defendant admitted, *"it does maintain adjustment data, if any exists, for Firestone 721 tires,"* yet in response to this request, objects to "loss adjustment data" as vague. Again, Defendant's response is clearly evasive and shielded by improper objections. Plaintiffs request a direct and immediate response.

5.10    In **Request for Production No. 16,** Plaintiffs requested production of all documents which contain Defendant's internal recommendations, determinations or guidelines as to the acceptable or unacceptable rate or frequency of loss adjustment, or any rate or frequency of loss adjustment which requires that action be taken or that notification be given by or to any internal Defendant persons or organizations. Firestone responded that, without waiving its prefatory objections, paragraph 1, (3.01 above),

*"under its Limited Warranty Program, it adjusts tires for consumers on a pro-rated basis as further described in the limited warranty for the tire being adjusted. Tires are adjusted for conditions including such things as cosmetic complaints, ride and handling complaints, and a number of other non-safety related conditions. Furthermore, in order to promote brand name loyalty and consumer satisfaction, Firestone has historically maintained a liberal adjustment policy for its tires, and may provide an adjustment credit in order to avoid a possible dispute with an otherwise valuable customer. Tires are adjusted for a variety of conditions observed during a cursory inspection without attempting to determine the underlying cause of the condition found. Tires are adjusted by dealers and employees at over 1,500 Firestone stores across the country. As a result, the fact that a tire has been adjusted does not mean that the adjusted tire was defective, nor do adjustment rates indicate percentages of defective tires.*

71

*Given the nature and purposes of the adjustment process, Firestone does not have a set adjustment figure by which it evaluates adjustment data. Rather, each tire size and line is evaluated in light of its intended application and uses.*

**_Plaintiffs' Rebuttal_:**   Plaintiffs object to the Defendant's response in its entirety as argumentative, self-serving and non-responsive. Plaintiffs also object to Defendant's improper attempt to limit its response to Dr. Gardner's paper. Plaintiffs specifically asked for any <u>documents which contain Defendant's internal recommendations, determinations or guidelines as to the acceptable or unacceptable rate or frequency of loss adjustment, or any rate or frequency of loss adjustment which requires that action be taken or that notification be given by or to any internal Defendant persons or organizations</u> and Plaintiffs demand a direct response.

     5.11   In **Request for Production No. 18,** Plaintiffs requested production of all <u>books, manuals, newsletters, circular letters, publications, and mass mailing communications for the period of 1985 to the present from Defendant to tire dealers, defendant employees or other persons specifying or describing the circumstances under which tire warranty adjustments will be paid by Defendant</u>, to which Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above),

*"Firestone objects to this request on the grounds that it is overly broad, and seeks information on tires other than 'the subject tire' and over a broad period of time remote from the manufacture of that tire."*

Without waiving its objections, Firestone stated that it lacks sufficient information regarding the sale of "the subject tire" in order to respond to this request, and

*"the Tire Maintenance Warranty and Safety Manual applicable to 'the subject tire' no longer exists. However, Firestone will provide . . . a copy of Bridgestone/Firestone's Warranty Policy and Procedure Manual dated 4/99."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone is providing herewith a copy of Bridgestone/Firestone's Warranty Policy and Procedure Manual dated 4/99 as well as its current Tire Maintenance, Warranty and Safety Manual."*

***Plaintiffs' Rebuttal***:   With regard to the Defendant's objection that the request is

"overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above.

If Defendant states that "any documents responsive to this request . . . no longer exist,"

Plaintiffs adopt all argument and authority contained in section 4.02 above.  Regarding

the 4/99 Warranty Policy & Procedure Manual for the "subject tire," Defendant has no

legal basis for withholding these materials until it has completed its inspection of the

subject tire, therefore Plaintiffs demand that Defendant produce these materials

immediately.  As to Defendant's objection that the request seeks information on tires

other than 'the subject tire' and over a broad period of time remote from the manufacture

of that tire, Plaintiffs adopt all argument and authority set forth in section 3.01 above.

    5.12    In **Request for Production No. 19,** Plaintiffs requested production of all

documents containing or specifying the design of "the subject tire" and all "subject model

tires," with respect to each of the following characteristics:

(a)  The physical size, shape and characteristics of the finished tire:

(b)  The specifications of the component parts which are assembled to constitute
     the finished tire:

(c)  The green tire specifications applicable to "the subject tire," including the order of
     assembly, dimensions and compounds or construction, including specifications for
     skim stock, belt materials, belt construction, wire coatings and treatments, tread and
     undertread, cushions and/or edge strips, gum strips belt wedges, overlay belts and
     interliners;

(d)  Cured tire specifications for "the subject tire", including any manufacturing
     directions, parameters or specifications for the size, placement and curing of

components; and

(e) Any other documents constituting or containing the design of "the subject tire" or "subject model tires."

The Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* Firestone further objected to subparagraph (c) to the extent that,

*"it seeks information which is proprietary and trade secret. The formula, 'recipe,' or specification of any proprietary compound used in Firestone's tires represents thousands of manhours and millions of dollars in research and development, the disclosure of which would cause irreparable harm to Firestone."*

Additionally, Firestone objected to the use of the terms "interliners," "cushions," "gum strips," etc. as undefined and vague. Firestone further objected to subparagraph (e) of this request on the grounds that it is vague, overly broad and comprises a "catch-all request." Without waiving its objections, Firestone stated,

*"after it has completed its inspection of 'the subject tire,' it will provide . . . the specifications for that tire. Since this specification contains information which is considered to be confidential and proprietary, it will be produced after the entry of a suitable protective order."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"The specification for the subject tire contains information that constitutes proprietary and confidential business information. Firestone will provide . . . a copy of the specification subject to an appropriate protective order. Firestone will also provide . . . copies of the mold drawings for the subject tire upon entry of a suitable protective order."*

***Plaintiffs' Rebuttal:***   With regard to the Defendant's objection that the request is "overbroad," and "seeks information which is proprietary and confidential," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs further object

74

to Defendant's demand for a "suitable protective order" without submitting a draft for consideration. Plaintiffs additionally deny that a protective order is necessary.

5.13    In **Request for Production No. 20,** Plaintiffs requested production of all <u>documents by which the design characteristics (including manufacturing methods or specifications) for "the subject tire" has been changed for the period of time beginning January 1, 1978 through the present</u>.  Defendant responded, *"See objections and response to Request No. 19 above."*

***Plaintiffs' Rebuttal:***    Plaintiffs respectfully adopt all of the argument and authority set forth in its rebuttal in section 5.12 above.

5.14    In **Request for Production No. 21,** Plaintiff requested production of all <u>internal Defendant tire design manuals, guidelines or other internal documents setting forth guidelines or recommendations for tire design</u>.  Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad, contains no time frame, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery admissible, evidence."*  Firestone further objected to the request as seeking, *"internal design information which is trade secret, and the disclosure of which would cause irreparable damage to Firestone."*  Without waiving its objections, Firestone stated further that,

*"the subject tire" was designed to comply with FMVSS 109 and the guidelines issued by the Tire and Rim Association ("TRA").  The requirements for FMVSS 109 are contained in 49 C.F.R. § 570.109.  After Firestone has completed its inspection of 'the subject tire,' it will provide . . . a copy of the Tire and Rim Association guidelines for that tire."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone is providing herewith a copy of the Tire and Rim Association guidelines for the subject tire and a copy of a chart which describes the process used for the manufacture of the subject tire."*

***Plaintiffs' Rebuttal:*** With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled. As to the Defendant's claims that the request "seeks information which is proprietary and confidential," Plaintiffs adopt all argument and authority set forth in section 4.15 above. Regarding the Tire and Rim Association guidelines and chart which describes the process used for the manufacture of the "subject tire," Defendant has no legal basis for withholding these materials until it has completed its inspection of the subject tire, therefore Plaintiffs demand that Defendant produce these materials immediately.

    5.15   In **Request for Production No. 22,** Plaintiffs requested production of all internal "testing" manuals or "testing" requirements applicable to tires in general and "the subject tires" in particular. Defendant responded, in addition to prefatory objections, paragraph 1, (3.01 above), objecting that it is *"vague, overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* Without waiving its objections Defendant stated,

*"Firestone will provide . . . available FMVSS 109, testing for tires made to same specification as 'the subject tire,' if any. However, testing protocols and procedures for 'the subject tire' no longer exist. Since the testing contains information which is considered to be confidential and proprietary, it will be provided subject to the entry of a suitable protective order."*

    Then on August 22, 2001 Defendant supplemented its response by stating,

<div align="center">76</div>

*"As noted above, the protocols and procedures utilized in testing the subject tire no longer exist. However, Firestone will provide . . . copies of the FMVSS 109 testing for tires made to the same specification as the subject tire upon entry of a suitable protective order."*

***Plaintiffs' Rebuttal:***  Plaintiffs object to Defendant's demand for a "suitable protective order" without submitting a draft for consideration. Plaintiffs additionally deny that a protective order is necessary.  As to Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled. As to the Defendant's claims that the request "seeks information which is proprietary and confidential," Plaintiffs adopt all argument and authority set forth in section 4.15 above. Additionally, if Defendant states that "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above.

5.16    In **Request for Production No. 23,** Plaintiffs requested production of all documents which constitute or contain information regarding testing of 'the subject tire' with respect to characteristics which affects its propensity (or lack thereof) to fail by 'tread' or 'belt' separation, segregating them separated by:  (a)  Design and development "documents";  (b)  Quality control "documents"; and  (c)  Other "documents," to which Defendant responded,

*"Firestone objects to this request on the grounds that it is argumentative.  Firestone is unaware of any 'propensity' of 'the subject tire' to fail by tread/belt separations.  Rather, any steel belted radial passenger tire can sustain a tread/belt separation due to a variety of service conditions such as overloading, underinflation, unrepaired or improperly repaired punctures, high speed operation, impact damage, mounting damage, improper storage. and so forth." Firestone further objected to subparagraph (c) of this request on the grounds that it is vague and overly broad, and was allegedly an improper "catch-all request."  Without waiving its objections, Firestone stated further that, "records of testing for 'the subject tire,' which was manufactured 23 years ago, no longer exist."*

CVisPDF - www.texisi.com

*__Plaintiffs' Rebuttal__*: As to Defendant's objection that the request is "overbroad,"
Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs'
inquiries are specific and clearly seek information relevant to issues involved in this
lawsuit, therefore Defendant's objections should be overruled.  As to Plaintiffs claim that
the documents no longer exist, Plaintiffs adopt all argument and authority set forth in
section 4.02 above.

5.17   In **Request for Production No. 24,** Plaintiff requested production of all
documents which specify quality control procedures related to manufacturing processes
or tire characteristics which affect the propensity (or lack thereof) for "the subject model
tires" to fail by "tread" or "belt" separation.  Defendant responded, in addition to its
prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad, and
seeks information which is irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence, and is argumentative."*  Defendant stated further that,
*"Firestone is unaware of any 'propensity' of 'the subject tire' to fail by tread/belt
separations.  Without waiving these objections, see response to Request No. 21 above."*

*__Plaintiffs' Rebuttal__*:   As to Defendant's objection that the request is "overbroad,"
Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs'
inquiries are specific and clearly seek information relevant to issues involved in this
lawsuit, therefore Defendant's objections should be overruled.  Additionally, Plaintiffs
respectfully adopt all of the argument and authority contained in section 5.14 above.
Plaintiffs also adopt all argument and authority contained in section 4.30 above.

5.18    In **Request for Production No. 25,** Plaintiffs requested production of all

documents which contain, constitute or demand studies, reports, testing or research to

determine the cause of tire "belt" or tread" separation with respect to:  (a)  tires in

general;  (b)  "the subject tire"' and  (c)  "the subject model tires." Defendant responded,

in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is

*"overly broad and is not limited to 'the subject tire'."*  Firestone further objects to this

request as unduly burdensome and  *"requiring a file by file search of each employee to*

*see what texts or treatises that employee may have."*  Without waiving its objection,

Defendant stated further that,

> *"tread/belt separations may be produced by certain forces, stresses and material constraints*
> *affecting any steel belted radial passenger tire. The effects of these forces and stresses require a*
> *fundamental understanding of mechanical and tire engineering.  Furthermore, the knowledge of*
> *tread/belt separations has been evolving since pneumatic tires were first introduced in this*
> *country over 100 years ago.  Over that time, this knowledge has resulted in tens of thousands of*
> *papers and publications on tires and tire technology, and Firestone has employed thousand of*
> *papers and publications on tire and tire technology, and Firestone has employed thousands of*
> *tire engineers.  This continuing knowledge has resulted in a variety of Firestone and industry*
> *publications on the maintenance and care of steel belted radial tires to prevent tread/belt*
> *separations.  Examples of these publications include the Tire Maintenance, Warranty and Safety*
> *Manual, which no longer exists for 'the subject tire,' 'Care and Service of Passenger and Light*
> *Truck Tires' published by the Rubber Manufacturers' Association ('RMA'), and the 'Consumer*
> *Tire Guide' by the Tire Industry Safety Council ('TISC').  Firestone will provide counsel for*
> *plaintiff sample copies of the RMA and TISC booklets.*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone is providing herewith sample copies of the RMA and TISC booklets."*

***Plaintiffs' Rebuttal:***   Plaintiffs object to the Defendant's response in its entirety as

argumentative, self-serving and non-responsive.  Plaintiffs specifically asked for

documents which contain, constitute or demand studies, reports, testing or research to

determine the cause of tire "belt" or tread" separation with respect to:  (a)  tires in

general;  (b)  "the subject tire"' and  (c)  "the subject model tires," and Plaintiffs are

CVISPDF - www.testia.com

clearly entitled to this information. As to Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, thus Defendant's objections should be overruled.

5.19    In **Request for Production No. 26,** Plaintiffs requested production of all research papers, reports, publications, "documents", treatises or memoranda distributed internally at Defendant relating to the subject of "tread", "ply", "belt" or "cord" separation from steel belted radial tires. Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad and is not limited to 'the subject tire' nor the alleged failure mode of that tire."* Firestone further objected as unduly burdensome and *"requiring a file by file search of employees to see what 'publications' and/or 'treatises' that employee may maintain."* Without waiving its objections Defendant stated further that, *"assuming that Plaintiff is referring to the causes and potential results of tread/belt separations, see response to Interrogatory No. 7 and Request No. 25 above."*

***Plaintiffs' Rebuttal:***    As to Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled. Additionally, Plaintiffs adopt all of the argument and authority set forth in section 5.18 above.

5.20    In **Request for Production No. 27,** Plaintiffs requested production of

copies of any and all research papers, reports, treatises or other publications published

outside Defendant corporation by Defendant or its employees related to the subject of

"tread", "ply", "belt" or "cord" separation from steel belted radial tires.  Defendant

responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting

that it is *"overly broad, unduly burdensome, and is not limited to 'the subject tire' nor the*

*alleged failure mode of that tire."*  Firestone further objected on the grounds that,

> *"it contains no time frame, and would require Firestone to conduct a literature search and obtain*
> *documents 'published outside Firestone,' which would be a matter of public record and therefore*
> *equally available to Plaintiff.  See also response to Request No. 26 above."*

***Plaintiffs' Rebuttal:***  As to Defendant's objection that the request is "overbroad,"

Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs'

inquiries are specific and clearly seek information relevant to issues involved in this

lawsuit, therefore Defendant's objections should be overruled.

     5.21    In **Request for Production No. 28,** Plaintiffs requested production of

copies of any and all correspondence, written communications, or written memoranda of

oral communications regarding the subject of "tread," "belt," or "tire" separations and

steel belted radial tires in general, and in "the subject model tires" specifically, between:

(a) Defendant and the U.S. Department of Transportation, or NHTSA;

(b) Defendant and any other foreign or domestic governmental entity;

(c) Defendant and any automobile manufacturer;

(d) Defendant and any other corporate entity not listed above.

     Defendant objected, in addition to its prefatory objections, paragraph 1, (3.01

above), it is *"overly broad, unduly burdensome and seeks information regarding*

*dissimilar tires which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* Firestone also objected to the catch-all request of subparagraph (d) of this request on the grounds that it is vague and overly broad. Without waiving its objections, Firestone stated that documents responsive to this quest, if any, relating to "the subject tire," which was manufactured 23 years ago, no longer exist.

***Plaintiffs' Rebuttal***: As to Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled. Additionally, if Defendant states that "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above.

     5.22   In **Request for Production No. 29** Plaintiff requested production of all warnings and instructions issued by Defendant to anyone regarding precautions to be taken to avoid "tread", "cord", "ply" and/or "belt" separation in radial tires in general, and in "the subject model tires" specifically. Defendant responded, in addition to its prefatory objections, paragraph 1, (*3.01 above*), objecting on the grounds that it is "overly broad, unduly burdensome and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." Firestone further objected on the grounds that it "seeks information on failure modes other then the failure mode at issue. Therefore . . . seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence," and without waiving its objections, stated,

82

CitiPDF - www.fastio.com

*"information concerning proper loading and inflation pressure is molded on the sidewall of 'the subject tire.' Additional information is contained in the Tire Maintenance, Warranty and Safety Manuel which is described in Firestone's response to Request No. 18 above. Additionally, vehicle manufacturers provide information regarding proper tire fitment and inflation pressure on the placard of the door of their vehicles. Additional information regarding tire maintenance usually is contained in the vehicle owner's manual. Furthermore, as a member of the RMA and TISC, Firestone participates in the distribution of additional warnings and maintenance instructions to consumers. See e.g., the RMA and TISCA literature described in Firestone's response to Request No. 25 above."*

***Plaintiffs' Rebuttal:*** As to the portion of Defendant's response that states, "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above.

5.23    In **Request for Production No. 31** Plaintiffs requested production of all documents reflecting:  (1) Defendant internal determination of the speed rating, maximum, minimum and recommended tire pressure for "the subject mode tires" from 1978 until the present; and  (2)  Defendant communication of the speed rating, maximum, minimum and recommended tire pressure for "the subject mode tires" to any auto manufacturer from 1978 to the present.  Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*  Firestone further objected "to the extent it seeks information from '1978 until the present,' which is remote in time."  Without waiving its objections, Defendant stated further,

*"(a)  The 'subject tire' was not speed rated.  The cold inflation pressure of 36 psi at maximum load prescribed by the TRA was tested in accordance with FMVSS 109.*

*(b)    Firestone states that the cold inflation pressure at maximum load for LR78-15 Firestone 721 tires is molded onto the sidewall of that tire."*

83

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone states that it does not specify a recommended inflation pressure for tires on any particular vehicle. The recommended inflation pressure is determined by the vehicle manufacturer. However, Firestone states that it designs its tires, including LR78-15 Firestone 721 tires, to comply with the guidelines of the Tire & Rim Association ("TRA"). Among other things, the TRA specifies the maximum load at the cold inflation pressure for each type and size tire. This cold inflation pressure is molded on the sidewall of the tire and also appears in the specification proffered above. However, documents related to the initial determination of the inflated pressure for the subject tire no longer exist."*

***Plaintiffs' Rebuttal***:   As to the portion of Defendant's response that states, "any documents responsive to this request   . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above.

5.24    In **Request for Production No. 32,** Plaintiffs request that <u>if Defendant has ever changed speed rating or the maximum, minimum or recommended tire pressures since it began selling "the subject model tires," to state what the different tire ratings and maximum, minimum and recommended tire pressure have been for each model tire, stating the date when the values were in effect and the reasons for the changes.</u> Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad, and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, see response to Interrogatory No. 30 above."*

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone has never changed the maximum cold inflation pressure for the subject tire."*

***Plaintiffs' Rebuttal***:   As to the portion of Defendant's response that states, "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument

CVISPDF - www.fineprint.com

and authority contained in section 4.02 above.  Plaintiffs additionally adopt all argument and authority section 5.22 above.

    5.25    In **Request for Production No. 33,** Plaintiffs requested production of all documents explaining how the tire speed rating for the maximum, minimum and recommended tire pressure of "the subject model tires" was decided.  Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*  Without waving these objections, Firestone stated that,

*"it designs tires to comply with the guidelines of the Tire and Rim Association ("TRA").  Among other things, the TRA specifies the maximum load at the cold inflation pressure for each type and size tire.  This cold inflation pressure is molded on the sidewall of the tire.  See also response to Interrogatory No. 30 above."*

    Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone states that it is providing herewith copies of the TRA guidelines applicable to the subject tire."*

***Plaintiffs' Rebuttal*:**  As to Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section of 4.09 above.  Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

    5.26    In **Request for Admission No. 34,** Plaintiffs request Defendant to admit or deny that it has determined the average tire mileage life expected from (a) tires such as "the subject tire" and/or (b) "the subject model tires," and, without waiving its prefatory objections, paragraph 1, (3.01 above), denied this request.

***Plaintiffs' Rebuttal***: Plaintiffs are entitled to a direct response without any limiting prefatory objections. Plaintiffs respectfully adopt all of the argument and authority contained in its Rebuttal Section of 3.01 above.

5.27 In **Request for Production No. 37**, Plaintiffs requested production of one or more catalogues or similar "documents" sufficient to identify all tire lines or models manufactured and/or sold by Defendant in the United States from 1978 until the present. Defendant objected, in addition to its prefatory objections, paragraph 1, (*3.01*), that it is "overly broad, unduly burdensome, and seeks information over a 23-year period that is irrelevant, remote in time, and not reasonably calculated to lead to the discovery of admissible evidence." Without waiving its objections, Firestone stated further that, "the Firestone Tire Data Book applicable to 'the subject tire" is no longer available.

Then on August 22, 2001 Defendant supplemented its response by stating,

*"Firestone states that it is providing herewith a copy of the current Firestone Passenger and Light Truck Tire Data Book."*

***Plaintiffs' Rebuttal***: With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled. Additionally, if Defendant states that "any documents responsive to this request . . . no longer exist," or "are no longer available," Plaintiffs respectfully adopt all argument and authority contained in section 4.02 above.



ClibPDF - www.fastio.com

5.28    In **Interrogatory No. 38** Plaintiffs request that, <u>if a gum strip, belt wedge,</u> <u>or any rubber materials is used between the edges of the steel "belts" of any of "the</u> <u>subject model tires," to identify the specific materials used for each model tires</u>. Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"vague, overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. "* Firestone additionally stated that it *"is not apprised of Plaintiff's definition of the terms 'gum strip, ' or 'any rubber materials' as used in the content of this interrogatory. "* In addition, Firestone objected, *"to the extent it seeks the formula or 'recipe' of the compounds used in 'the subject tire' (which comprises) trade secret, the disclosure of which would cause Firestone irreparable harm. "* Without waiving its objections, Firestone stated further that, *"according to the specification for 'the subject tire,' described in response to Request No. 19 above, no gum strip, belt wedge, or other rubber material was used between the edges of the belts in 'the subject tire'. "*

***Plaintiffs' Rebuttal:*** Plaintiffs are entitled to know if a gum strip, belt wedge, or any rubber materials is used between the edges of the steel "belts" of any of "the subject model tires," and with regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section  4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.  As to the Defendant's claims that the request "seeks information which is proprietary and confidential," Plaintiffs adopt all argument and authority set forth in section 4.15 above.

5.29  In **Interrogatory No. 39** Plaintiffs directly ask, "was a gum strip, wedge or other rubber materials used between the edges of the steel belts of 'the subject tire'?" Defendant responded, objecting on the grounds that it is vague.  Firestone additionally stated that it,

> *"is not apprised of Plaintiff's definition of the terms 'gum strip,' or 'any rubber materials' as used in the context of this interrogatory.  Without waiving its objections, Firestone states that no gum strip, belt wedge, or other rubber material was used between the edges of the belts in "the subject tire."*

***Plaintiffs' Rebuttal**:* Plaintiffs are entitled to know if a gum strip, belt wedge, or any rubber materials is used between the edges of the steel "belts" of any of "the subject model tires," and with regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

5.30    In **Request for Production No. 41,** Plaintiffs requested <u>copies of the Master Specifications for tires such as "the subject tire" from Defendant's home office</u>. Defendant objected, in addition to its prefatory objections, paragraph 1, (3.01 above), it is *"overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence,"* and without waiving its objections, *"refers plaintiff to the specification . . . in response to Request No. 19 above."*

Then on August 22, 2001 Defendant supplemented its response by stating,

> *"The specification for the subject tire contains information that constitutes proprietary and confidential business information.  Firestone will provide . . . a copy of the specification subject to an appropriate protective order."*

***Plaintiffs' Rebuttal:***   As to Defendant's objection that the request is "overbroad,"
Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs'
inquiries are specific and clearly seek information relevant to issues involved in this
lawsuit, therefore Defendant's objections should be overruled.  Additionally, Plaintiffs
adopt all of the argument and authority contained in section 5.12 above.

   5.31   In **Request for Production No. 42,** Plaintiffs request <u>copies of the master</u>
<u>tire specifications used at the plant where "the subject tire" was manufactured, applicable</u>
<u>to "the subject tire.</u>"  Defendant objected on the grounds that it is *"overly broad, and*
*seeks information which is irrelevant and not reasonably calculated to lead to the*
*discovery of admissible evidence."*   Without waiving its objections Firestone, *"refers*
*Plaintiff to the specification described in response to Request No. 19 above."*

   Then on August 22, 2001 Defendant supplemented its response by stating,
*"The specification proffered in response to Request for Production No. 41 above is the*
*specification used in the plant in which the subject tire was manufactured."*

***Plaintiffs' Rebuttal:***   As to Defendant's objection that the request is "overbroad,"
Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs'
inquiries are specific and clearly seek information relevant to issues involved in this
lawsuit, therefore Defendant's objections should be overruled.   Additionally, Plaintiffs
adopt all of the argument and authority contained in section 5.12 above.

   5.32   In **Interrogatory No. 43,** Defendant is asked to <u>describe each design or</u>
<u>manufacturing process change made to "the subject model tires" during the period of</u>
<u>their production, stating the date and all reasons for each such change.</u>  Defendant

responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting

*"on the grounds that it is overly broad, and seeks information which is irrelevant and not*

*reasonably calculated to lead to the discovery of admissible evidence."* Firestone also

objects to this interrogatory on the grounds of undue burden as,

> *"there would have been numerous continuous changes to the manufacturing processes, as well as evolutionary changes to the equipment and procedures, used by Firestone during the period of Firestone 721 brand name was used. Firestone further objects to this interrogatory on the grounds that it seeks materials and information that is trade secret and the disclosure of which would cause irreparable harm to Firestone. Without waiving its objections, Firestone states that the specification described in response to Request No. 19 above includes the change history for the specification."*

Then on August 22, 2001 Defendant supplemented its response by stating,

> *"As noted in Firestone's original response, the specification proffered in response to Request for Production No. 41 above includes the modifications to that specification, the dates of those modifications, and the reason for each modification."*

**_Plaintiffs' Rebuttal_**: Plaintiffs are entitled to discover any information regarding design

or manufacturing process change made to "the subject model tires" during the period of

their production. With regard to the Defendant's objection that the request is

"overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above.

Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved

in this lawsuit, therefore Defendant's objections should be overruled.

5.34    In **Interrogatory No. 45,** the Defendant is asked to <u>identify all plants at</u>

<u>which "the subject model tires" have been made and the date ranges such tires were made</u>

<u>at each plant</u>, to which Defendant responded, in addition to its prefatory objections,

paragraph 1 (3.01 above), objecting that it is *"overly broad, and seeks information which*

*is irrelevant and not reasonably calculated to lead to the discovery of admissible*

CbhPDF - www.fasoo.com

*evidence. Without waiving its objections, Firestone states that it is unable to respond to this interrogatory as it relates to 'the subject tire' since the production records applicable to that tire, which was manufactured 23 years ago, no longer exist."*

***Plaintiffs' Rebuttal***:   As to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.  Additionally, if Defendant states that "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above.

5.35    In **Interrogatory No. 46,** Defendant is asked to list the number of "the subject model tires" produced on a weekly or monthly basis at each plant, broken down by tire size and model, to which Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*  Without waiving its objections, Firestone states that it is *" unable to respond to this interrogatory as it relates to 'the subject tire' since the production records applicable to that tire, which was manufactured 23 years ago, no longer exist."*

***Plaintiffs' Rebuttal***: With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.   Additionally, if

Defendant states that "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above.

5.36    In **Request for Production No. 47,** Plaintiffs requested <u>production of the tire fitment guides for "the subject model tires</u>," to which Defendant responded, in addition to its prefatory objection, paragraph 1, (3.01 above), objecting that it is *"overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* Without waiving its objections, Firestone states that *"the tire fitment guides applicable to 'the subject tire' no longer exist."*

***Plaintiffs' Rebuttal:*** With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled. Additionally, if Defendant states that "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above.

5.37    In **Request for Production No. 48,** Plaintiffs request production of <u>any and all documents that relate to or discuss a lack of tack, or loss of tack with respect to green tires (or components thereof) assembled or produced at the manufacturing facility that built "the subject tire" between 1990 and the end of 1993</u>.  Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad, and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  The 'subject tire' was*

*manufactured in 1978, and any documents responsive to this request from that*

*production period no longer exist. "*

**_Plaintiffs' Rebuttal_:**   As to the objection that the request is "overbroad," Plaintiffs adopt

all argument and authority set forth in section 4.09 above.  Plaintiffs' inquiries are

specific and clearly seek information relevant to issues involved in this lawsuit, therefore

Defendant's objections should be overruled.  Additionally, if Defendant states that "any

documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument

and authority contained in section 4.02 above.

   5.38    In **Request for Production No. 51,** Plaintiffs requested production of all

documents pertaining to the use of vulcanization accelerators, antiozonants, protective

waxes and other materials (including but not limited to solvents) affecting the tackiness

of rubber components used at Defendant plant during the period of time from 1978

through the present.  Defendant responded, in addition to its prefatory objection,

paragraph 1, (*3.01 above*) objecting that *"it is seeks information that is remote in time,*

*irrelevant and not reasonably calculated to lead to the discovery of admissible*

*evidence, "* and objected on that it "seeks information which is proprietary and trade

secret."  Firestone also stated,

*"The formula, 'recipe, ' a specification of any proprietary compound used in Firestone's tires
represents thousands of manhours and millions of dollars in research and development, the
disclosure of which would cause Firestone irreparable harm.  In addition, Firestone objects to
this request on the grounds that it is overly broad in that it seeks information about all rubber
compounds used at the Wilson plant.  Plaintiff has not identified any component of "the subject
tire" she alleges to be defective, much less every rubber component in the plant. "*

93

**_Plaintiffs' Rebuttal_:** Regarding As to the Defendant's claims that the request "seeks information which is proprietary and confidential," Plaintiffs adopt all argument and authority set forth in section 4.12 above.

5.39    In **Request for Production No. 52,** Plaintiffs requested production of copies of any and all correspondence between Defendant and either the U.S. Department of Transportation or NHTSA regarding the subject of "tread", "ply", "belt", and/or "cord" separation. Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."* Without waiving its objections, Firestone stated that,

> *"it no longer has in its possession correspondence or communications, if any exists, between Firestone and the Department of Transportation, NHTSA, or any other government entity regarding 'the subject tire' or any LR78-15 Firestone 721 tires."*

**_Plaintiffs' Rebuttal_:** With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled. Additionally, if Defendant states that "any documents responsive to this request . . . no longer exist," Plaintiffs adopt all argument and authority contained in section 4.02 above.

5.40    In **Request for Production No. 53,** Plaintiffs request production of copies of any and all docket submissions to the NHTSA or the U.S. Department of Transportation regarding the subject of "tread", "ply", "belt", and/or "cord" separation, to which Defendant responded, "see objections and response to Request No. 53 above."

***Plaintiffs' Rebuttal:*** Defendant's response is obviously an error and Plaintiffs ask that a supplementary response be filed immediately.

     5.41   **Request for Production No. 54,** requests that Defendant, with respect to any U.S. Department of Transportation or NHTSA investigation or inquiry (by whatever name called) into the subject of "tread", "ply", "belt", or "cord" separation in Defendant tires, produce the following:

(a)     All related internal "documents", business records, memoranda, or meeting minutes;

(b)     All correspondence between Defendant and the U.S. Department of Transportation or NHTSA; and

(c)     Any and all statistical or engineering "studies" or analysis performed with respect to such investigation.

     Defendant responded, *"see objections and response to Request No. 53 above."*

***Plaintiffs' Rebuttal:*** Again, Defendant's response is obviously an error and Plaintiffs ask that a supplementary response be filed immediately.

     5.42   In **Request for Production No. 55,** Plaintiffs request production of all documents relating to or discussing the risks or hazards of a vehicle's tire detreading, to which Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"overly broad and not limited to 'the subject tire,' subject vehicle, nor the alleged failure mode of 'the subject tire'."* Firestone also objected to "detreading" as vague, and stated further that,

  " *'Detreading' is not a term used by Firestone or, to Firestone's knowledge, in the tire industry in general. Without waiving these objections, Firestone refers Plaintiff to the documents offered in response to Interrogatory No. 7 above."*

*__Plaintiffs' Rebuttal__*:   As to Defendant's objection that the request is "overbroad,"

Plaintiff adopts all argument and authority set forth in section 4.09 above.  Plaintiffs'

inquiries are specific and clearly seek information relevant to issues involved in this

lawsuit, therefore Defendant's objections should be overruled.  Additionally, the

Defendant understands what is meant by "detreading" and/or tire "separation" and

Plaintiffs are entitled to a direct response on this issue.  Defendant is playing a game of

semantics that should not be permitted by this Court.   Further, Plaintiffs respectfully

adopt all argument and authority contained in section 5.05 above.

     5.43   **Request for Production No. 56,** Plaintiffs request production of all

documents relating to or discussing the statistics on how often accidents occur, and/or

persons are injured or killed in incidents when a tire detreads, to which Defendant

responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting

that it is *"overly broad and is not limited to 'the subject tire,' subject vehicle, nor the*

*alleged failure mode of 'the subject tire'."*  Firestone further objected to the use of the

term "detreads" on the ground that it is "vague," and continued on stating that,

> " *'Detreads' is not a term used by Firestone or, to Firestone's knowledge, in the tire industry in*
> *general.  Without waiving its objections, Firestone states that it does not compile such statistics.*
> *However, Firestone attempts to stay abreast of the general literature in this area and is aware of*
> *such studies as that conducted by Stannard Baker which shows that there is approximately one*
> *accident in every 4,000 tire disablements.  Firestone also refers Plaintiffs to the document*
> *described in response to Interrogatory No. 7 above which show that a tread/belt separation does*
> *not adversely affect vehicle dynamics so as to result in a loss of control."*

*__Plaintiffs' Rebuttal__*:   As to Defendant's objection that the request is "overbroad,"

Plaintiffs adopt all argument and authority set forth in section 4.09 above.  Plaintiffs'

inquiries are specific and clearly seek information relevant to issues involved in this

lawsuit, therefore Defendant's objections should be overruled.  Additionally, the

Defendant understands what is meant by "detread" and/or tire "separation" and Plaintiffs are entitled to a direct response on this issue. Defendant is playing a game of semantics that should not be permitted by this Court.

5.44 In **Request for Production No. 57,** Plaintiffs requested production of all documents that depict the Defendant plant layout in Wilson, N.C. where "the subject tire" was manufactured (i.e., a blueprint or engineering drawing or similar "document" showing the relative location and distances between the various parts of the plant) at the time "the subject tire" was built. Defendant responded, in addition to its prefatory objections, paragraph 1, (3.01 above), objecting that it is *"vague, overly broad, unduly burdensome, not reasonably limited in scope as to time, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence,"* and objected *"that it seeks information which is proprietary and trade secret to Firestone."*

Then on August 22, 2001 Defendant supplemented its response by stating, *"Documents reflecting the layout of the Wilson plant in 1978 no longer exist."*

***Plaintiffs' Rebuttal:*** With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled. As to the Defendant's claims that the request "seeks information which is proprietary and confidential," Plaintiffs respectfully adopt all argument and authority set forth in section

4.09 above.  As to Defendant's claim that the documents no longer exist, Plaintiffs adopt all argument and authority set forth in section 4.02 above.

5.45   In **Request for Production No. 58,** Plaintiffs requested production of all industry standards, specifications and regulations, whether voluntary or mandatory, which were in effect and applicable to the manufacture of "the subject tire" (including its component parts),  including the methods by which the components of "the subject tire" were purchased, prepared for assembly, stored, assembled, cured or tested.  Defendant responded, in addition to its prefatory objections, paragraph 1 (3.01 above), objecting that it is *"vague, overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."*  Without waiving its objections, Firestone stated that *"James D. Gardner, Firestone's former Director of Product Analysis, generally is knowledgeable regarding the design, development and production in LR78-15 Firestone 721 tires."*

*Plaintiffs' Rebuttal*: With regard to the Defendant's objection that the request is "overbroad," Plaintiffs adopt all argument and authority set forth in section 4.09 above. Plaintiffs' inquiries are specific and clearly seek information relevant to issues involved in this lawsuit, therefore Defendant's objections should be overruled.

# VI.
## Request for Expenses

After ruling on the motion to compel, the court should award reasonable expenses, including attorney's fees, to the party or person who prevails, unless the losing position was substantially justified, or other circumstances make an award of expenses

unjust. *FRCP 37(a)(4)(A), (B); see Devaney v. Continental Am. Ins. Co., 989 F.2d 1154, 1159 (11th Cir. 1993).* If the Court grants the motion in part and denies the motion in part, the court may apportion the expenses. *FRCP 37(a)(4)(C); Smith v. Conway Org., Inc., 154 F.R.D. 73, 78 (S.D. N.Y. 1994).* Plaintiffs respectfully request that reasonable expenses be awarded by the Court for the prosecution of this motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Motion to Compel be granted in all things, and for such other and further relief to which the Plaintiffs are entitled, either at law or in equity.

Respectfully submitted,

BY: _R. Bruce Tharpe_

R. Bruce Tharpe
Federal Bar ID No. 13098
Texas State Bar ID No. 19823800
LAW OFFICES OF R. BRUCE THARPE
Professional Plaza
715 E. Frontage, Suite D
Alamo, Texas 78516
(956) 782-9946
(956) 782-9945 - Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Compel has been served upon all counsel in this case by hand-delivery and/or by facsimile transmission and/or by depositing same in the U.S. mail, postage prepaid, on this 31st day of August, 2001 at the following addresses:

Mr. Louis E. McCarter
VINSON & ELKINS, L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760

Mr. Tom Woodrow
Attorney at Law
55 West Monroe, Suite 800
Chicago, Illinois 60603

Mr. Joseph A. Rodriguez
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren, P.O. Box 2155
Brownsville, TX 78520

Mr. Joe Valle
ATTORNEY AT LAW
1120 East 10th Street
Brownsville, TX 78520

R. Bruce Tharpe

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with defense counsel regarding this Motion to Compel and it is opposed.

R. Bruce Tharpe

CVisPDF – www.fenmo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BLANCA PERALES, Individually and | § | |
| As Next Friend of ANN DELIA | § | |
| PERALES, a minor, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. B-00-131 |
| | § | |
| BRIDGESTONE/FIRESTONE, INC., | § | |
| | § | |
| Defendant. | § | |

DEFENDANT BRIDGESTONE/FIRESTONE, INC.'S RESPONSES TO
PLAINTIFF BLANCA PERALES, INDIVIDUALLY'S FIRST SET OF DISCOVERY

Defendant Bridgestone/Firestone, Inc. ("Firestone") responds to Plaintiff Blanca

Perales, Individually's First Set of Discovery as follows:

INTRODUCTORY STATEMENT AND PREFATORY OBJECTIONS

1.     Firestone generally objects to plaintiff's discovery on the grounds that it is

overly broad, and not limited to the tire in question, its particular specifications, and the

manufacturing facility and period at issue. As a result, this discovery seeks information

which is irrelevant and not reasonably calculated to lead to the discovery of admissible

evidence.

Although Firestone has not completed its examination of the subject tire, it has

been identified as a LR78-15 Firestone 721 tire bearing Department of Transportation

("DOT") Serial No. W2V41BU508. That serial number indicates that the subject tire was

manufactured at Firestone's facility in Wilson, North Carolina during the 50th week of

1978. Information regarding other tires manufactured to other specifications and at other

facilities during other time periods is not "relevant to the subject matter" of this action.

EXHIBIT "A"

2. The subject tire was built to a proprietary specification which establishes the exact manner in which the numerous design and construction variables are combined to produce that particular product. The specification prescribes the tire size and overall type of construction, the number and type of components, the dimensions, gauges and relevant placement of each component; the manner and sequence of component assembly; and the curing process and equipment used in fashioning the tire. Moreover, the specifications of individual tires change over time to reflect developments in radial tire technology and evolving vehicle requirements.

3. Trade names such as "Firestone 721" cover tires made to different specifications at different plants over the years. Therefore, the only way to identify an individual tire is by reference to the particular specification to which it is built. Where indicated in its responses, Firestone will provide information regarding the subject tire as defined by its specification. Information regarding other, different tires is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

4. In making these responses, Firestone is not waiving: (a) the right to object on the grounds of privilege, materiality, hearsay or any other proper ground, to the use of any information provided in these responses in any subsequent proceeding in this action or any other action; and (b) the right to object on any and all grounds to any other discovery procedures involving or relating to the subject matter of these requests.

5. For the sake of brevity, the above objections are incorporated into Firestone's responses and are referenced to by paragraph where applicable.

<u>RESPONSES</u>

<u>INTERROGATORY NO. 1</u>: Identify (by name, last known address and last known telephone number) the following BRIDGESTONE/FIRESTONE employees:

2

(a)    The individual who built the tire in question;

(b)    If "you" are unable to identify the particular individual who built the tire in question, then "identify" all individuals who worked as tire builders during the week in which "the subject tire" was built, in the same plant in which the tire in question was built, and who may have built "the subject tire";

(c)    All other persons who worked in the plant in which the tire was built during the week in which the tire in question was built and who may have participated in any portion of the manufacturing process of "the subject tire";

(d)    All persons who worked in the quality control portion of the plant in which the tire in question was built, during the week in which the tire in question was built.

In "identifying" such individuals, please state, in addition to the information required by the Table of Definitions, the type of work or Aprocedure≡ [sic] which such person did during the week in which "the subject tire" was built and whether such person is still an employee of BRIDGESTONE/FIRESTONE.

RESPONSE:

In addition to its prefatory objections, Firestone objects to this interrogatory on the grounds that it is overly broad and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone states that James D. Gardner, Firestone's former Director of Product Analysis, generally is knowledgeable regarding tire design, development, and production of LR78-15 Firestone 721 tires. Firestone further responds as follows:

(a)    Firestone states that it is not able to identify the individual who built "the subject tire," which was manufactured 23 years ago.

(b)    Firestone objects to this subparagraph on the grounds that it is overly broad and unduly burdensome. There were hundreds of individuals working in the tire building section at the Wilson plant in 1978. Firestone states that it is not able to identify all individuals who worked as tire builders at the time "the subject tire" was built.

3

(c)     Firestone objects to this subparagraph on the grounds that it is overly broad and unduly burdensome.  In 1978, there were hundreds of individuals employed at the Wilson plant who "may have participated in any portion of the manufacturing process" of that tire.

(d)     Firestone objects to this subparagraph on the grounds that it is overly broad and unduly burdensome.  At the time "the subject tire" was manufactured, the substantial majority of employees at the Wilson plant had quality control responsibilities.

REQUEST FOR PRODUCTION NO. 2:     Produce all "documents" constituting or recording a complaint, protest, grievance or other express or indication of a concern applicable to tires manufactured in the BRIDGESTONE/FIRESTONE plant in Wilson, NC for the calendar year in which "the subject tire" was built and for the immediately preceding calendar year, which deal with or mention in any way product quality, manufacturing conditions or processes, quality of materials, quality of components, products, tires or the adequacy or propriety of tire components, manufacturing machinery, work time, break time, manpower, equipment, processes or final product quality.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this "catch all" request on the ground that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Firestone states that any documents responsive to this request from 1977 and 1978 no longer exist.

REQUEST FOR PRODUCTION NO. 3:     Please produce all written or electronic "documentation" sent to BRIDGESTONE/FIRESTONE tire retailers, dealers and service shops relating, in whole or in part, to "the subject model tires", including but not limited to how to inspect for separation, code for loss adjustment purposes, adjust for warranty claims, or respond to customer complaint.

4

(c)     Firestone objects to this subparagraph on the grounds that it is overly broad and unduly burdensome.  In 1978, there were hundreds of individuals employed at the Wilson plant who "may have participated in any portion of the manufacturing process" of that tire.

(d)     Firestone objects to this subparagraph on the grounds that it is overly broad and unduly burdensome.  At the time "the subject tire" was manufactured, the substantial majority of employees at the Wilson plant had quality control responsibilities.

REQUEST FOR PRODUCTION NO. 2:     Produce all "documents" constituting or recording a complaint, protest, grievance or other express or indication of a concern applicable to tires manufactured in the BRIDGESTONE/FIRESTONE plant in Wilson, NC for the calendar year in which "the subject tire" was built and for the immediately preceding calendar year, which deal with or mention in any way product quality, manufacturing conditions or processes, quality of materials, quality of components, products, tires or the adequacy or propriety of tire components, manufacturing machinery, work time, break time, manpower, equipment, processes or final product quality.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this "catch all" request on the ground that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Firestone states that any documents responsive to this request from 1977 and 1978 no longer exist.

REQUEST FOR PRODUCTION NO. 3:     Please produce all written or electronic "documentation" sent to BRIDGESTONE/FIRESTONE tire retailers, dealers and service shops relating, in whole or in part, to "the subject model tires", including but not limited to how to inspect for separation, code for loss adjustment purposes, adjust for warranty claims, or respond to customer complaint.

4

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections and assuming plaintiff is referring to adjustment data, Firestone states that the Tire Maintenance, Warranty and Safety Manual applicable to "the subject tire" no longer exists. However, Firestone will provide counsel for plaintiff a copy of Bridgestone/Firestone's Warranty Policy and Procedure Manual dated 4/99.

INTERROGATORY NO. 4: What do "you" contend caused the tire in question to separate or detread?

RESPONSE:

Firestone objects to the use of "detread" on the grounds that it is vague. "Detread" is not a term used by Firestone or, to Firestone's knowledge, in the tire industry in general. Without waiving its objections, Firestone states that it has not completed its forensic examination of "the tire in question," nor the events surrounding the accident and as such, cannot respond to this interrogatory at the present time. Firestone will supplement this response after discovery is complete.

INTERROGATORY NO. 5: What do "you" contend caused or contributed to cause the injuries that led to the death of Marco Antonio Perales?

RESPONSE:

Firestone states that it has not completed its forensic examination of "the subject tire," nor the events surrounding the accident and as such, cannot respond to this interrogatory at the present time. Firestone will supplement this response after discovery is complete.

5

REQUEST FOR ADMISSION NO. 6:       Admit that a cause of the death of Marco Antonio Perales was the detachment of the "tread"/ "belt" of the left rear BRIDGESTONE/FIRESTONE tire on the vehicle he was driving at the time of the accident.

RESPONSE:

Firestone lacks sufficient information to admit or deny this request.  Firestone has

not completed its forensic examination of "the subject tire."  Firestone states that, after

reasonable inquiry, the information known or easily obtainable is insufficient to enable it

to admit or deny this request.

REQUEST FOR PRODUCTION NO. 7:      Please produce all written or electronic "documentation" sent to BRIDGESTONE/FIRESTONE tire retailers, dealers and service shops relating, in whole or in part, to how to inspect for separation, code for loss adjustment purposes, adjust for warranty claims, or respond to customer complaints.

RESPONSE:

See objections and response to Request No. 3 above.

INTERROGATORY NO. 8: What do "you" contend caused the tire in question to separate or detread?

RESPONSE:

Firestone objects to this interrogatory on the grounds that it is repetitious.  See

Interrogatory No. 4 above.

REQUEST FOR ADMISSION NO. 9:       Admit that "the subject tire" exhibits no sign of abuse or misuse (beyond normal wear and tear).

RESPONSE:

Firestone lacks sufficient information to admit or deny this request.  Firestone has

not completed its forensic examination of "the subject tire."  Firestone states that, after

reasonable inquiry, the information known or easily obtainable is insufficient to enable it

to admit or deny this request.

6

INTERROGATORY NO. 10: If "you" answered the preceding request other than "Admitted" please state what abuse or misuse "you" contend occurred, the facts which indicate such abuse or misuse and to whom "you" attribute the abuse or misuse.

RESPONSE:

See response to Request No. 9 above.

REQUEST FOR PRODUCTION NO. 11:   Please produce the "documents" which set forth the general steps or "procedures" followed by BRIDGESTONE/FIRESTONE in the tire design and development process, including the "testing" phase.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Firestone further objects to this request on the ground that it seeks information which is confidential, proprietary and trade secret, the disclosure of which would cause irreparable harm to Firestone.  Without waiving its objections, Firestone states that "the subject tire" was designed to comply with FMVSS 109.  The requirements for FMVSS 109 are contained in 49 C.F.R. § 570.109.  Once Firestone has completed its inspection of "the subject tire," it will provide counsel for plaintiff a copy of the Tire and Rim Association guidelines for that tire.  In addition, Firestone states that it will provide counsel for plaintiff a copy of a chart which describes the process used for the manufacture of "the subject tire."

REQUEST FOR PRODUCTION NO. 12:   Please produce all trial exhibits.

RESPONSE:

Firestone will provide counsel for plaintiff a list of its trial exhibits at the appropriate time in accordance with the Court's pretrial rules and procedures.

REQUEST FOR PRODUCTION NO. 13:   Pursuant to the Federal Rules of Evidence, produce all "documents" concerning any criminal conviction which "you" may use to impeach Plaintiffs, the deceased, or any persons with relevant knowledge.

RESPONSE:

Firestone is not aware of any documents responsive to this request at the present time. As discovery continues, Firestone will supplement any responsive information.

REQUEST FOR PRODUCTION NO. 14:   Please produce copies of all promotional materials, including advertising proofs, print ads, radio ads and television advertisements as well as advertisements in commercial publications and trade journals from 1978 to present for "the subject model tires".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad and seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone states that no promotional materials relative to "the subject tire" still exist.

REQUEST FOR PRODUCTION NO. 15:   Please produce the data from any industry database to which BRIDGESTONE/FIRESTONE has access, which data includes compilations related to tire "tread" and/or "belt" separation data for steel-belted radial tires manufactured and/or sold by BRIDGESTONE/FIRESTONE, including those tires manufactured and/or sold outside of the United States.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad and seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. For example, the request is not limited to the tire and vehicle in question, nor to the circumstances of this accident. Firestone further objects to this request to the extent that it calls for the creation of a new document which is beyond the scope of permissible

8

discovery. Without waiving its objections, Firestone states that it is not aware of any documents responsive to this request.

REQUEST FOR PRODUCTION NO. 16:   Please                    produce BRIDGESTONE/FIRESTONE management, engineering or marketing meeting minutes, memoranda, or other business records, referring to or discussing the issue of "tread" or "belt" separation in steel belted radial passenger tires.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. For instance, the request is not limited to the tire and vehicle in question, nor to the circumstances of plaintiff's accident. Firestone further objects to this request as unduly burdensome. For example, a response would require a file by file search of employees to see what "minutes, memoranda, or other business records" that employee may maintain. Without waiving its objections, Firestone refers plaintiff to the documents offered in response to Interrogatory No. 7 of Sara Martinez Perales's First Set of Discovery.

REQUEST FOR PRODUCTION NO. 17:   Please produce all statements made by BRIDGESTONE/FIRESTONE employees, whether in public or internally, acknowledging that "tread" or "belt" separation presents a risk of injury or accident.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. For instance, the request is not limited to the tire and vehicle in question, nor to the circumstances of plaintiff's accident. Without waiving its objections, Firestone states that studies have shown that a loss of tread does not on its own cause or lead to an

9

CISAPDF - www.fesisa.com

accident. Firestone will provide counsel for plaintiff a representative sample of literature available on how to react to a tire disablement.

REQUEST FOR PRODUCTION NO. 18:   Please produce all non-lawsuit complaints from consumers, businesses, or government entities received by BRIDGESTONE/FIRESTONE relating to alleged "tread" and/or "belt" separation in a "subject model tire".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. For instance, the request is not limited to the tire and vehicle in question, nor to the circumstances of plaintiff's accident.  Without waiving these objections, Firestone states that it receives unverified complaints concerning its products and service from various sources.  For example, Firestone receives complaints about its services and products at each of its 1500 retail stores.   There is no centralized location where such store information is collected.  More importantly, since the goal in resolving these customer complaints is customer satisfaction, the manner in which a complaint is resolved provides absolutely no indication that a complaint was verified, let alone justified.

In addition, Firestone states that under its limited warranty programs, it adjusts tires for consumers on a prorated basis as further described in the limited warranty for the tire being adjusted.   Firestone maintains data in its adjustment system generally indicating the number of tires adjusted in a given size, type and plant, and the condition code for the adjustment.  These conditions include such things as cosmetic complaints, ride and handling complaints, and a large number of other non-safety conditions. Furthermore, in order to promote brand name loyalty and consumer satisfaction,

10

Firestone has historically maintained a liberal adjustment policy for its tires by which customers are offered full or partial credit toward the purchase of a new tire, based upon a tire's wear. Firestone also frequently gives "adjustment credit" in order to avoid a lengthy dispute with an otherwise valuable customer, when nothing is wrong with the product other than customer dissatisfaction, or when what is alleged to be wrong with the tire is likely the result of customer misuse, or damage in the field.

Furthermore, Firestone does not conduct forensic inspections of adjusted tires. Tires are adjusted for a variety of conditions observed during a cursory inspection without attempting to determine the underlying cause of the condition found. Tires are adjusted by dealers and employees at over 1500 Firestone stores across the country. Therefore, the fact that a tire has been adjusted does not mean that the adjusted tire was defective, nor do adjustment rates indicate percentages of defective tires.

After Firestone has completed its inspection of "the subject tire," Firestone will provide counsel for plaintiff adjustment data, if any exists, related to tread/belt conditions for any LR78-15 Firestone 721 steel belted radial passenger tires manufactured to the same specification as "the subject tire" and returned for adjustments from January 1993 through May 30, 1999, the date of the incident in question. Because the adjustment data being provided contains information that is considered to be proprietary and confidential, that data will be produced subject to the entry of a suitable protective order. See also response to Request No. 65 below.

INTERROGATORY NO. 19:    Please state the average profit per tire to BRIDGESTONE/FIRESTONE for each tire of the same model and size as "the subject tire" sold from 1978 to present

11

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Firestone further objects to this interrogatory on the grounds that it seeks confidential and trade secret pricing information, the disclosure of which would be detrimental to Firestone's business.

REQUEST FOR PRODUCTION NO. 20:   Please produce a copy of those government standards or regulations, whether mandatory or voluntary, whether United States or foreign, which were applicable to the design, manufacture, sale or performance of tires distributed or sold by BRIDGESTONE/Firestone from 1978 to present.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. For example, this request is broad enough to seek information on Environmental Protection Agency ("EPA") and Occupational Safety and Health Administration ("OSHA") regulations. Without waiving these objections, Firestone states it designs and manufactures its tires to meet or exceed FMVSS 109. The requirements for FMVSS 109 are contained in 49 C.F.R. § 570.109. Additionally, the dimensional and load carrying capacity of "the subject tire" also complies with the guidelines of the Tire and Rim Association ("TRA").   After Firestone has completed its inspection of "the subject tire," it will provide counsel for plaintiff a copy of the TRA guidelines for that tire.

REQUEST FOR PRODUCTION NO. 21: Please produce any and all reports, photographs, computer analysis or simulations, or videotapes of any "tests" performed by BRIDGESTONE/FIRESTONE, or by any independent entity on behalf of

12

BRIDGESTONE/FIRESTONE, on "subject model tires" to determine vehicle handling characteristics or stability when a tire fails by way of a (1) "tread" and/or "belt" separation or (2) a blowout.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, unduly burdensome, remote in time, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. To the extent this request seeks information prepared in anticipation of litigation, Firestone objects on the grounds that it seeks information protected from discovery as attorney work product doctrine.  Without waiving its objections, Firestone states that James D. Gardner recently published the results of his testing of vehicle response to the loss of a tire tread at speeds, including high speeds.  The tests included a 1994 Ford Explorer and a 1994 specification Radial ATX tire.  The paper was presented at the 1998 meeting of the ITEC, with representatives of the tire and automotive industries in attendance.  A copy of the published report will be produced to plaintiff, and Firestone refers plaintiff to that published report for the details of the testing and its results.

REQUEST FOR PRODUCTION NO. 22:   Copies of all photographs, films, videos, diagrams, "test" reports and the underlying "test" data for any "test" relevant to the cause of action in question which may be conducted prior to the trial of this cause.

RESPONSE:

Firestone objects to this request on the grounds that it is vague, overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, because the request is phrased to seek information relating to potential future testing, Firestone objects as requesting

13

information protected from discovery by the consulting expert exemption and as attorney work product.   Without waiving these objections, Firestone states that it has not completed its inspection of "the subject tire," and has not yet determined how much past testing it may consider relevant at time of trial.

INTERROGATORY NO. 23: Describe the general nature and types of training "documents" and aids, including but not limited to films, video tapes, handouts and posters, made available at the time "the subject tire" was built, to persons who construct, manufacture or assemble tires or operate tire building equipment at the Wilson, NC plant where "the subject tire" was built.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff, for instance, has not limited this request to "the subject tire." Firestone further objects to this interrogatory to the extent it seeks information which is confidential and proprietary.  Without waiving its objections, Firestone states that the personnel involved in the quality assurance and manufacturing processes in the Wilson plant in 1978 were trained to recognize any anomalies or deviations from specifications in the production of tires such as "the subject tire."  Training materials responsive to this request and related to the manufacture of "the subject tire" no longer exist.

REQUEST FOR PRODUCTION NO. 24:   Produce the various types of training "documents" made available, at the time "the subject tire" was built, to persons who construct, manufacture or assemble tires or operate tire building equipment at the plant where "the subject tire" was built.

RESPONSE:

See objections and response to Interrogatory No. 23 above.

14

REQUEST FOR PRODUCTION NO. 25:   To   the   extent   that   such   training "documents" have changed since the time "the subject tire" was built, please produce the current versions.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, and seeks information which is remote in time,

irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.

Firestone further objects to this request on the ground that it seeks materials and

information that is trade secret and the disclosure of which would cause irreparable harm

to Firestone.   Without waiving its objections, Firestone states that there have been

innumerable continuous changes to the manufacturing processes used by Firestone during

the period the Firestone 721 brand name has been used.   There have been a multitude of

evolutionary changes to the equipment and procedures used at the plant since the tire

identified as "the subject tire" was manufactured in 1978.

REQUEST FOR PRODUCTION NO. 26:   Produce all nonlawsuit complaints, incident reports or other notices made by any dealership, customer, consumer or government agency to BRIDGESTONE/FIRESTONE alleging a "subject model tire" "tread" or "belt" separation.

RESPONSE:

See objections and response to Request No. 18 above.

REQUEST FOR PRODUCTION NO. 27:   Produce all "documents"   showing   what other BRIDGESTONE/FIRESTONE tires were built with the same "belt" skim stock formulation as "the subject tire".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, unduly burdensome, and seeks information which

is remote in time, irrelevant, and not reasonably calculated to lead to the discovery of

15

admissible evidence. An individual steel belted radial passenger tire may have as many as two dozen separate components comprised of a dozen or more rubber compounds, as well as different types of fabrics and other components. Thus, tires made with the same skim stock are not necessarily substantially similar.

REQUEST FOR PRODUCTION NO. 28:   Please produce any and all warranty records and other "documents" related to other incidents of "tread" or "belt" separation "subject model tires" returned for adjustment due to "tread" or "belt" separation.

Note:  This request applies to the time frame from 1978 through the present.

RESPONSE:

　　　See objections and response to Request No. 18 above.

INTERROGATORY NO. 29:  "Identify" each and every discreet component of "the subject tire" by stating the component name, its function, in what order it was assembled, the manner in which it was incorporated into the tire, the identity of the manufacturer of the component, the date and location where it was manufactured, and whether the component was used in tires models other than the model of "the subject tire", and if so, the identity of such other tire models.

RESPONSE:

　　　Firestone objects to this interrogatory on the grounds that it is overly broad and

seeks information which is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence. Firestone further objects to this interrogatory on the

grounds that it seeks information which is proprietary and trade secret. The formula,

"recipe," a specification of any proprietary compound used in Firestone's tires represents

thousands of manhours and millions of dollars in research and development, the

disclosure of which would cause Firestone irreparable harm.  Without waiving its

objections, Firestone states that it will provide counsel for plaintiff with the specification

for "the subject tire," which contains a detailed description of each component used in

"the subject tire" and the manner in which those components were assembled and cured

16

into the finished tire. Since this specification contains information which is considered to be proprietary and confidential, it will be produced subject to the entry of a suitable protective order.

INTERROGATORY NO. 30: Describe in detail the manner in which "the subject tire" was assembled by stating how and when each component was assimilated into the tire, in what location within the plant the component was stored and then added to the tire, the process by which each component was assimilated, the approximate time it takes to assemble each component, what methods, processes or mechanisms were used to ensure proper bonding of the components, and the time, manner, and location of the final inspection or other quality control process.

RESPONSE:

See objections and response to Interrogatory No. 29 above.

INTERROGATORY NO. 31: To the extent that other tires built contemporaneously (i.e., during the same week) with "the subject tire" in the same plant were built using different processes or "procedures", please describe all such different processes or "procedures".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Firestone further objects to this interrogatory on the grounds that it seeks information which is proprietary and trade secret.

INTERROGATORY NO. 32: To the extent that tire building processes or "procedures" in the Wilson, NC BRIDGESTONE/FIRESTONE plant have changed since "the subject tire" was built, please describe all such different processes or "procedures".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of

17

admissible evidence.  Firestone further objects to this request on the ground that it seeks

information that is trade secret and the disclosure of which would cause irreparable harm

to Firestone.    Without waiving its objections, Firestone states that there have been

innumerable continuous changes to the manufacturing processes used by Firestone during

the period the Firestone 721 brand name has been used. There have been a multitude of

evolutionary changes to the equipment and procedures used at the plant since the tire

identified as "the subject tire" was manufactured in 1978.  The specification described in

response to Interrogatory No. 29 above includes the change history for the specification.

INTERROGATORY NO. 33:    Please describe all quality control processes or
"procedures" in effect at the Wilson, NC BRIDGESTONE/FIRESTONE plant at the time
"the subject tire" was built.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this

interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks

information which is remote in time, irrelevant, and not reasonably calculated to lead to

the discovery of admissible evidence.  Without waiving its objections, Firestone states

that all passenger tires sold in the United States must comply with or exceed the

requirements of Federal Motor Vehicle Safety Standard ("FMVSS") 109 as set forth by

the Department of Transportation ("DOT").    This testing includes high speed and

endurance testing, plunger energy, bead unseating, and dimensional checks.  Firestone

will provide counsel for plaintiff available FMVSS 109 testing for tires made to the same

specification as "the subject tire," if any.  However, any test protocols and procedures for

"the subject tire" no longer exist.  Since this testing contains information which is

considered to be confidential and proprietary, it will be provided subject to the entry of a suitable protective order.

Firestone also conducts quality assurance testing throughout the manufacturing process. These tests include laboratory tests of the various components used in the manufacture of the tire. Additionally, every tire is inspected after it is assembled and again after curing. Subsequently, each tire is checked for uniformity and balance using a calibrated tire uniformity machine and balancing equipment. Firestone will provide counsel for plaintiff a copy of a quality control chart which generally describes the inspections and tests conducted by Firestone throughout the development and manufacturing process.

INTERROGATORY NO. 34: To the extent that quality control processes or "procedures" in the Wilson, NC BRIDGESTONE/FIRESTONE plant have changed since "the subject tire" was built, please describe all such different processes or "procedures".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information which is remote in time, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. There have been innumerable continuous changes to the manufacturing processes used by Firestone during the period the Firestone 721 brand name has been used. There have been a multitude of evolutionary changes to the equipment and procedures used at the plant since the tire identified as "the subject tire" was manufactured in 1978. Firestone thus objects to this interrogatory on grounds of undue burden. Firestone further objects to this interrogatory on the ground that it seeks materials and information that is trade secret and the disclosure of which would cause

irreparable harm to Firestone. Without waiving its objections, Firestone states that throughout its history as a tire manufacturer it has made continuous evolutionary changes to virtually all stages of its manufacturing processes as new technologies and equipment have become available.

INTERROGATORY NO. 35:    Please describe all humidity, temperature, and environmental control processes and equipment used at the Wilson, NC BRIDGESTONE/FIRESTONE plant at the time "the subject tire" was built to ensure a proper physical environment for constructing tires.

RESPONSE:

Firestone objects to this interrogatory on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone states that there are a variety of environmental controls at the Wilson plant as part of the manufacturing process. For example, the creel room is temperature and humidity controlled and is constantly monitored to ensure proper temperature and relative humidity. The temperature and humidity of the storage area for the steel cord fabric which is cut into stabilizer plies or belts is also monitored. However, the documents related to temperature and humidity controls at Wilson during the period "the subject tire" was built no longer exist.

REQUEST FOR PRODUCTION NO. 36:    Please produce all "documents" that discuss or mention the use or purpose of nylon cap "plies", nylon safety "belts".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

20

CbhPDF - www.hesha.com

Firestone further objects to this request on the grounds that it is vague.  Firestone is not apprised of plaintiff's definition of "nylon safety belts."  Without waiving its objections, Firestone states that cap plies or belt edge strips are used in steel belted radial passenger and light truck tires in the United States primarily to meet high speed requirements to reduce the effects of centrifugal force or "standing waves" in the tire at higher operating speeds.  Firestone states that it has done testing that shows the use of a cap ply does not prevent the detachment of the tread and outer belt in a tire where a separation is developing.  Firestone will provide counsel for plaintiff notes concerning this testing. Since these documents contain information which is considered to be proprietary and confidential, they will be provided subject to the entry of a suitable protective order.

REQUEST FOR ADMISSION NO. 37:    Admit that the at least one of the purposes of nylon cap "plies" is to reduce the incidence of "tread" or "belt" separation.

RESPONSE:

Firestone denies this request as stated.  See response to Request No. 36 above.

REQUEST FOR ADMISSION NO. 38:    Admit that the at least one of the purposes of nylon safety "belts" is to reduce the incidence of "tread" or "belt" separation.

RESPONSE:

Firestone objects to this request on the grounds that it is vague.  Firestone is not apprised of plaintiff's definition of "nylon safety belts."  Without waiving its objections, Firestone denies this request as stated.  See response to Request No. 36 above.

REQUEST FOR ADMISSION NO. 39:    Admit that at the time "the subject tire" was manufactured, it was technologically and economically feasible to incorporate nylon cap "plies" into the design of "the subject tire".

21

RESPONSE:

Firestone objects to this request on the grounds that it is vague. Firestone is not apprised of plaintiff's definition of "economically feasible." Without waiving its objections, Firestone states that it is unable to admit or deny this request on the grounds that it lacks sufficient information upon which to base its response. Firestone is unable, 23 years after the fact, to determine if it would have been technologically or economically feasible to incorporate nylon cap plies in "the subject tire." Firestone does admit that some steel belted radial tires were manufactured prior to 1978 incorporating a nylon cap ply.

REQUEST FOR ADMISSION NO. 40:   Admit that at the time "the subject tire" was manufactured, it was technologically and economically feasible to incorporate nylon safety "belts" into the design of "the subject tire."

RESPONSE:

See objections and response to Request No. 39 above.

INTERROGATORY NO. 41: If "you" have denied any of the previous four REQUESTS FOR ADMISSION, please state what nylon safety "belts" or cap "plies" are used for, state whether Wilson, NC BRIDGESTONE/FIRESTONE has ever incorporated nylon cap "plies" or safety "belts" in any tire, "identify" all such tires by model name and dates of manufacture, and state the design purpose of the cap "ply" or safety "belt" in such tires.

RESPONSE:

Firestone objects to this interrogatory on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Firestone further objects to this interrogatory on the grounds that it is vague. Firestone is not apprised of plaintiff's definition of "nylon safety belts." Without waiving its objections, Firestone states that certain of its steel belted radial passenger and light truck tires contain nylon cap plies or belt edge strips. Firestone

22

will provide counsel for plaintiff with a list of sizes and models of tires manufactured at the Wilson plant that have cap plies and/or belt edge strips, based on information that is reasonably accessible. See also response to Request No. 36 above. Since this document contains information which is considered to be proprietary and confidential, it will be provided subject to the entry of a suitable protective order.

REQUEST FOR PRODUCTION NO. 42:   Please produce all "documents" concerning FMVSS 109 compliance certification or "testing" of the model of tires which include "the subject tire", including "testing" of prototype or developmental tires that were precursors to the final design of "the subject tire".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information which is remote in time, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving its objections, Firestone states that all passenger tires sold in the United States must comply with or exceed the requirements of Federal Motor Vehicle Safety Standard ("FMVSS") 109 as set forth by the Department of Transportation ("DOT").  This testing includes high speed and endurance testing, plunger energy, bead unseating, and dimensional checks.  Firestone will provide counsel for plaintiff  available FMVSS 109 testing for tires made to the same specification as "the subject tire," if any.  However, testing protocols and procedures for "the subject tire" no longer exist.   Since the testing contains information which is considered to be confidential and proprietary, it will be provided subject to the entry of a suitable protective order.

INTERROGATORY NO. 43: To the person answering these interrogatories: please state your name, your business address and telephone number, your present position with defendant, and the number of you have worked with defendant.

23

RESPONSE:

> See the attached verification page.

INTERROGATORY NO. 44: Please state the names, businesses addresses, business telephone numbers, residence addresses, residence telephone numbers and professional titles, if any, of all persons defendant or its attorneys anticipate calling as an expert witness in the above-styled and numbered cause, and for each expert witness identified, state the subject matter on which such expert is expected to testify, the mental impressions and opinions held by such expert and to which such expert is expected to testify, the facts known to such expert (regardless of when such factual information was acquired) which relate to or form the basis of the mental impressions and opinions held by such expert and to which such expert is expected to testify, and the summary of the grounds for each expert's mental impressions and opinions.

RESPONSE:

> Firestone has not decided which experts, if any, it will use at trial.   Firestone

reserves the right to supplement this response when appropriate.

INTERROGATORY NO. 45:  Please provide the information requested in No. 44 above, for each expert used by defendant or its attorneys for consultation purposes and who is not expected to be called as a witness at trial if such consulting expert's work product forms or will form a basis, either in whole or in part of the mental impressions or opinions of experts who may be called defendant or its attorneys as witnesses in the above-styled and numbered cause, of if such consulting expert's mental impressions and opinions have been reviewed by experts who may be called by the defendant or its attorneys as witnesses in the above-styled and numbered cause.

RESPONSE:

> Firestone objects to this interrogatory on the grounds that it exceeds the scope of

permissible expert discovery.   Without waiving its objections, see response to

Interrogatory No. 44 above.

INTERROGATORY NO. 46: Please state the names, the business and residence addresses, and residence telephone numbers of all persons having knowledge of relevant facts which relate to the factual issues, including, but no limited to issues as to damages and liability, involved in the above-styled and numbered cause and for each individual identified, please relate generally the substance of facts known to such individual regarding the above-styled and numbered cause (e.g., John Smith eyewitness to event; John Doe, knowledgeable about plaintiffs damages; Dr. Red Duke, plaintiff's treating

physician, etc. This interrogatory s\does [sic] not ask that you detail the relevant knowledge and opinions these potential witness may possess).

RESPONSE:

Blanca Perales
2624 Delia Street
Brownsville, Texas 78521

Plaintiff/Widow of Deceased, Marco Antonio Perales, may have knowledge of relevant facts pertaining to the incident made basis of this lawsuit.

Ann Delia Perales
2624 Delia Street
Brownsville, Texas 78521

Plaintiff/Minor daughter of Deceased, Marco Antonio Perales, may have knowledge of relevant facts pertaining to the incident made basis of this lawsuit.

Alma Delia Perales
2624 Delia Street
Brownsville, Texas 78521

Plaintiff/Minor daughter of Deceased, Marco Antonio Perales, may have knowledge of relevant facts pertaining to the incident made basis of this lawsuit.

Sara Martinez Delia Perales
2624 Delia Street
Brownsville, Texas 78521

Plaintiff/Mother of Deceased, Marco Antonio Perales, may have knowledge of relevant facts pertaining to the incident made basis of this lawsuit.

Trooper E. Escalon
ID No. 9388
And/or Custodian of Records

Investigating officer, may have knowledge of relevant facts pertaining to his investigation of the incident made the basis of this lawsuit.

Unidentified Personnel
And/or Custodian of Records
Valley Baptist Medical Center

Hospital where deceased was taken after the accident, personnel may have knowledge of relevant facts pertaining to the incident made the basis of this lawsuit.

25

Unidentified Personnel
And/or Custodian of Records
Trevino's Funeral Home

Funeral home where deceased was taken after his death, personnel may have knowledge
of relevant facts pertaining to the incident made the basis of this lawsuit.

Unidentified Ambulance/EMS Personnel
And/or Custodian of Records

EMS personnel who may have responded to the accident scene, personnel may have
knowledge of relevant facts pertaining to the incident made the basis of this lawsuit.

Pathologist
And/or Custodian of Records
Valley Baptist Medical Center

May have knowledge of relevant facts pertaining to the deceased, Marco Antonio Perales,
and the autopsy performed on the decedent.

Unidentified Personnel
And/or Custodian of Records
Brownsville Herald
1135 E. Van Buren
Brownsville, Texas  78520

May have knowledge of relevant facts, including but not limited to, the incident resulting
in the death of the deceased, Marco Antonio Perales, and resulting damages.

Emma Perez-Trevino
Brownsville Herald
1135 E. Van Buren
Brownsville, Texas  78520

Newspaper reporter, may have knowledge4 of relevant facts, including but not limited to,
the incident resulting in the death of the deceased, Marco Antonio Perales, and resulting
damages.

Unidentified Personnel
And/or Custodian of Records
KGBT-TV Channel 4
9201 West Expressway 83
Harlingen, Texas
(956) 421-4444

May have knowledge of relevant facts, including but not limited to, the incident resulting in the death of the deceased, Marco Antonio Perales, and resulting damages.

Unidentified Personnel
And/or Custodian of Records
KRGV-TV Channel 5
900 E. Expressway
Weslaco, Texas
(956) 968-5555

May have knowledge of relevant facts, including but not limited to, the incident resulting in the death of the deceased, Marco Antonio Perales, and resulting damages.

Patricia Guillermo
KRGV-TV Channel 5
900 E. Expressway
Weslaco, Texas
(956) 968-5555

Television news reporter, may have knowledge of relevant facts, including but not limited to, the incident resulting in the death of the deceased, Marco Antonio Perales, and resulting damages.

Unidentified Personnel
And/or Custodian of Records
CBS News

May have knowledge of relevant facts, including but not limited to, the proximate cause of the incident made basis of this lawsuit and/or the issue of gross negligence.

Ms. Sharyl Atkinson
CBS News

CBS News reporter, may have knowledge of relevant facts, including but not limited to, the proximate cause of the incident made basis of this lawsuit and/or the issue of gross negligence.

Unidentified Personnel
And/or Custodian of Records
ABC News

May have knowledge of relevant facts, including but not limited to, the proximate cause of the incident made basis of this lawsuit and/or the issue of gross negligence.

Unidentified Personnel
And/or Custodian of Records

NBC News

May have knowledge of relevant facts, including but not limited to, the proximate cause of the incident made basis of this lawsuit and/or the issue of gross negligence.

Morris M. Dingman
And/or Custodian of Records
Tire Technology, Ltd.
744 Menlo Park
Hartville, Ohio  44632

Plaintiff's tire expert, including but not limited to, his opinion as to the proximate cause of the accident and resulting fatality related to tire defectiveness.

Unidentified Personnel
And/or Custodian of Records
Valley Towing

May have knowledge of relevant facts, including but not limited to, the proximate cause of the accident made the basis of this lawsuit and/or the issue damages.

Unidentified Personnel
National Transportation and Safety Board (NTSB)

May have knowledge of relevant facts, including but not limited to, the proximate cause of the incident made the basis of this lawsuit as it relates to tire defectiveness.

INTERROGATORY NO. 47:  Please identify, by name, by business and residence addresses, and by business and residence telephone numbers, all potential parties to the above-styled and numbered cause and for each individual or entity identified, please relate generally the reasons you feel that they are potential parties to the above-styled and numbered cause.

RESPONSE:

At this time, Firestone does not know the names of any potential parties.

INTERROGATORY NO. 48:  Have any investigations been conducted (either by or at the direction of the federal government, any state government, any federal or state agency any foreign government or foreign governmental agency, or internal investigations by or the [sic] direction of BRIDGESTONE/FIRESTONE) regarding allegations including, but not limited to, tire separation from 1978 to the present?

If "yes," then please identify the entity conducting each such investigation, identify the date of each such investigation, and give any file number, docket number or other identifying information regarding each investigation.

28

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone states that it is not aware of any investigation by any government agency regarding "the subject tire" or any LR78-15 Firestone 721 tires.

INTERROGATORY NO. 49: Please state the name and addresses of each insurance company, organization, or individual, and the policy number of each insurance policy, bond agreement, or memorandum of insurance, pursuant to which defendant may be insured against liability to satisfy all or any or all part of judgment or settlement which may result from this lawsuit, which provides for defense of this suit in any manner, or which provides for indemnity or reimbursement of any obligation or expense incurred, directly or indirectly, in connection with this suit, or to safety or to satisfy, reimburse, compensate or identify against any judgment, obligation or expense in connection with this suit, and please state the terms, the effective dates and all the limits of liability and obligation for each such policy, bond, agreement or memorandum. (Note: This interrogatory also inquires about "excess" coverage or "umbrella" policies of insurance which may provide additional coverage above and beyond "first tier" policies, bonds, agreements or memoranda of insurance, or any self insurance which must be depleted prior to the triggering of such "excess" or "umbrella" policy.)

RESPONSE:

Firestone objects to this interrogatory the grounds that it seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone will provide counsel for plaintiff a copy of its Certificate of Insurance applicable to this claim.

INTERROGATORY NO. 50: Please state the net worth, as reflected in the most recent financial statement of the Defendant and any parent corporation or companies of defendant.

RESPONSE:

Firestone objects to this interrogatory the grounds that it is overly broad and seeks

information which is irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence.

REQUEST FOR PRODUCTION NO. 51:   All reports, physical models, compilations
of data and other materials, including factual observations and opinions, prepared by or
for all experts defendant or its attorneys anticipate calling as witnesses upon a trial in the
above-styled and numbered cause. (Note: If discoverable factual observations, tests,
supporting data, calculations, photographs or opinions of an expert who will be called as
a witness have not been recorded and reduced to tangible form, the trial judge may order
that these matters be reduced to tangible form and produced within a reasonable time
before the date of trial.)

RESPONSE:

Firestone has not decided which experts, if any, it will use at trial.   Firestone

reserves the right to supplement this response when appropriate.

REQUEST FOR PRODUCTION NO. 52:   All reports, physical models, compilations
of data and other materials, including factual observations and opinions, prepared by or
for all experts used by defendant or its attorneys for consultation purposes, and who are
not expected to be called as witnesses at trial, if such information, documentation and
other materials form or will form a basis, either in whole or in part of the mental
impressions and opinions of experts who may he called by defendant or its attorneys as
witnesses in the above styled and numbered cause, or if such consulting expert's opinions
or impressions have been reviewed by experts who may be called by defendant or its
attorneys as witnesses in the above-styled and numbered cause.

RESPONSE:

Firestone objects to this request on the grounds that it exceeds the scope of

permissible expert discovery.   Without waiving its objection, Firestone states that it has

not decided which experts, if any, it will use at trial.

REQUEST FOR PRODUCTION NO. 53:   Copies of the pertinent portions of each
published learned treatise, periodical or pamphlet or other written data upon which each
expert defendant or its attorneys anticipate calling as a witness upon a trial of the above-
styled and numbered cause relies upon for his opinions, factual observations or

30

impressions, and which is of a type reasonably relied upon by experts in the particular field of such witnesses' field of expertise.

RESPONSE:

    <u>See</u> response to Request No. 51 above.

REQUEST FOR PRODUCTION NO. 54:   Copies of the pertinent portions of each published learned treatise, periodical or pamphlet or other written data upon which each expert used by defendant and its attorneys for consultation purposes, and who is not expected to be called as a witness at trial, relies upon for his opinions, factual observations and impressions, and which is of the type reasonably relied upon by experts in the particular field of such witness' field of expertise, if such materials form or will form a basis, either in whole or in part, of the mental impressions and opinions of experts who may be called by defendant or its attorneys as witnesses in the above-styled and numbered cause, or if such consulting expert's opinions or impressions have been reviewed by experts who may be called by defendant or its attorneys as witnesses in the above-styled and numbered cause.

RESPONSE:

    <u>See</u> objection and response to Request No. 52 above.

REQUEST FOR PRODUCTION NO. 55:   The current curriculum vitae of each expert defendant or its attorneys anticipate calling as a witness upon a trial in the above-styled and numbered cause.

RESPONSE:

    <u>See</u> response to Request No. 51 above.

REQUEST FOR PRODUCTION NO. 56:   The most recent listing which exists of all professional publications of each expert defendant or its attorneys anticipate calling as a witness upon trial in the above-styled and numbered cause.

RESPONSE:

    <u>See</u> response to Request No. 51 above.

REQUEST FOR PRODUCTION NO. 57:   The current curriculum vitae of each expert used by defendant or its attorneys for consultation purposes, and who is not expected to be called as a witness at trial, if such consulting experts' reports, physical models, compilations of data and other materials, including factual observations and opinions, forms or will form a basis, either in whole or in part, of the mental impressions and opinions of experts who may be called by defendant or its attorneys as witnesses in the above-styled and numbered cause, or if such consulting experts' opinions or impressions

have been reviewed by experts who may be called by defendant or its attorneys as witnesses in the above -styled and numbered cause.

RESPONSE:

    See objection and response to Request No. 52 above.

REQUEST FOR PRODUCTION NO. 58:   The most recent listing which exists of all professional publications of each expert used b defendant or its attorneys for consultation purposes, and who is not expected to be called as witness at trial, if such consulting experts reports, physical models, compilations of data and other materials, including factual observations and opinions, forms or will form a basis, either in whole or in part, of the mental impressions and opinions of experts who may be called by defendant or its attorneys as witnesses in the above-styled and numbered cause, or if such consulting experts' opinions or impressions have been reviewed by experts who may be called by defendant or its attorneys as witnesses in the above-styled and numbered cause.

RESPONSE:

    See objection and response to Request No. 52 above.

REQUEST FOR PRODUCTION NO. 59:   The most recent financial statement, and documents of any kind relating to or reflecting the net worth of defendant and any parent corporations or companies owning an interest in defendant.

RESPONSE:

    Firestone objects to this interrogatory the grounds that it is overly broad and seeks

information which is irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence.  Firestone further objects to this request on the grounds that it is

repetitious.  See Interrogatory No. 50 above.

REQUEST FOR PRODUCTION NO. 60:   Copies   of   all   written   advertisements, television commercials, magazine advertisements, dealer bulletins, dealer advertisement materials, sales brochures, promotional literature, and advertising materials of any type regarding "the subject tire" from 1978 to present.

RESPONSE:

    In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad and seeks information that is remote in time,

irrelevant and *not reasonably calculated to lead to the discovery of admissible evidence.*

Firestone further objects to this request on the grounds that it is repetitious. See response

to Request No. 14 above.

REQUEST FOR PRODUCTION NO. 61: Copies of each written settlement agreement, compromise agreement, contract of indemnification, agreement to defend, understanding, etc., entered into between Defendant BRIDGESTONE/FIRESTONE and any other party or entity regarding the incident which forms the basis of the above-styled and numbered cause.

RESPONSE:

    Firestone has no documents responsive to this request.

REQUEST FOR PRODUCTION NO. 62: Copies of all shop manuals and service manuals regarding "the subject tire" from 1978 to present.

RESPONSE:

    Firestone objects to this request on the grounds that it seeks information which is

remote in time, irrelevant, and not reasonably calculated to lead to the discovery of

admissible evidence. Without waiving its objections, Firestone states that "the subject

tire" was designed and manufactured to be reasonably safe for its intended and

foreseeable use. Firestone instructs and warns about the proper care, service and

maintenance of its tires in various ways. By way of example, warnings and information

related to the proper use and inflation are molded onto the sidewall of the tire and

contained in a label affixed to the tread of the tire. Additional safety and servicing

information is also contained in the Firestone Tire Maintenance Warranty and Safety

Manual, which would have been provided in the vehicle's glove compartment if the

vehicle was originally equipped with Firestone tires and/or available at the point of

purchase if the tires were purchased from a Firestone store or an independent dealer.

Firestone states that the Tire Maintenance Warranty and Safety Manual for "the subject

33

tire" no longer exists.  In addition, Firestone, as a member of the Rubber Manufacturer's Association and the Tire Industry Safety Council ("TISC"), has also disseminated to the public various tire care and service materials.  Firestone will provide counsel for plaintiff sample copies of the RMA and TISC booklets.  Furthermore, information regarding proper tire size and inflation is also contained in a placard placed on the subject vehicle by the vehicle manufacturer.  Information about the proper use and maintenance of a vehicle's tire also is provided by the vehicle manufacturer in the vehicle owner's manual. Firestone has no "shop manuals" or "service manuals" for its tires.

REQUEST FOR PRODUCTION NO. 63:   All blueprints, design drawings, "body in white" drawings, diagrams, templates, schematic sketches, and equivalent documents regarding "the subject tire" from 1978 to present.

RESPONSE:

Firestone objects to this request on the grounds that it seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving its objections, Firestone states that it will provide counsel for plaintiff with the mold drawings for "the subject tire."  Since these drawings contain information which is considered to be proprietary and confidential, they will be produced subject to the entry of a suitable protective order.

REQUEST FOR PRODUCTION NO. 64:   All documents in the possession, care, custody, or control of BRIDGESTONE/FIRESTONE regarding (or mentioning) "the subject tire" including, but not limited to, any documentation regarding road tests or field testing of "the subject tire", and any manufacturing logs, production records, repair logs, "build" sheets, and shipping records relating to "the subject tire".

RESPONSE:

Firestone objects to this request on the ground that it is overly broad, unduly burdensome, and seeks information which is irrelevant and not reasonably calculated to

34

lead to the discovery of admissible evidence. Without waiving its objections, Firestone

states that testing or manufacturing records relating to "the subject tire," which was

manufactured 23 years ago, no longer exist.

REQUEST FOR PRODUCTION NO. 65:   All   written   complaints,   correspondence,
warranty repair claims, incident reports, statistical analyses, and equivalent documents
regarding incidents of alleged tire or tread separation in "the subject tire" from 1978 to
present.

RESPONSE:

Firestone objects to this request on the grounds that it is overly broad, and seeks

information which is irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence. Plaintiff, for instance has not limited this request to the

circumstances of plaintiff's accident. Without waiving these objections, Firestone states

that from time to time it receives unverified claims and lawsuits regarding its products.

After Firestone has completed its inspection of "the subject tire," it will provide counsel

for plaintiff a list of personal injury claims and a list of personal injury lawsuits, if any,

received by Firestone before May 30, 1999, the date of plaintiff's accident, allegedly

involving tread/belt separations of LR78-15 Firestone 721 steel belted radial passenger

tires manufactured to the same specification as "the subject tire."  This list of lawsuits

will include the name of the claimant, the claimant's attorney, and the court and docket

number.  The list of claims will include the name of the claimant, the name of the

claimant's attorney, if any, the state of incident, and the date received by Firestone.  In

order to protect the privacy interests of the claimants, these lists will be provided subject

to the entry of a suitable protective order.  In producing this information, Firestone does

not agree that the information reflects claims or incidents that are substantially or

reasonably similar to the subject accident.  See also response to Request No. 18 above.

35

CibPDF - www.fenia.com

REQUEST FOR PRODUCTION NO. 66:   All recall notices, dealer service bulletins, correspondence, memoranda, and equivalent documents regarding "the subject tire" (including, but not limited to incidents of alleged tire or tread separation) of "the subject tire" from 1978 to present.

RESPONSE:

Firestone objects to this request on the grounds that it is overly broad and seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Firestone further objects to this request on the grounds that it is vague. Firestone states that there has never been a recall of any LR78-15 Firestone 721 tires.  Without waiving its objections, Firestone states that any technical bulletins relating to Firestone 721 tires no longer exist.  See also response to Request No. 62 above.

REQUEST FOR PRODUCTION NO. 67:   All recall notices, dealer service bulletins, correspondence, memoranda and equivalent document regarding "the subject tire" from 1978 to present (including, but not limited to incidents of allege tire or tread separation.)

RESPONSE:

Firestone objects to this request on the grounds that it is repetitious.  See Request No. 66 above.

REQUEST FOR PRODUCTION NO. 68:   All correspondence, memoranda, reports, data compilations, statistical compilations and equivalent documents regarding all investigations conducted by or at the direction of BRIDGESTONE/FIRESTONE; the federal government or any state government; any state or federal governmental agency; or any foreign government or foreign governmental agency regarding allegations of alleged tire or tread separation regarding "the subject tire" from 1978 to present.

RESPONSE:

Firestone objects to this interrogatory on the grounds that it is overly broad, and seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Firestone further objects to this request on the

36

grounds that it is repetitious. Without waiving its objections, <u>see</u> response to Interrogatory No. 48 above.

<u>REQUEST FOR PRODUCTION NO. 69</u>: All correspondence, memoranda, reports, data compilations, statistical compilations, and equivalent documents regarding all investigations conducted by or at the direction of BRIDGESTONE/FIRESTONE; the federal government or any state government; any state or federal governmental agency; or any foreign government or foreign governmental agency regarding allegations of tire or tread separation regarding "the subject tire" from 1978 to present.

<u>RESPONSE</u>:

Firestone objects to this request on the grounds that it is repetitious. <u>See</u> Request No. 68 above.

<u>REQUEST FOR PRODUCTION NO. 70</u>: All texts, treatises, memoranda, papers and equivalent documentary materials (whether published or not) prepared by or at the direction of BRIDGESTONE/FIRESTONE, or its engineers and employees, regarding allegations of tire or tread separation regarding "the subject tire" from 1978 to present.

<u>RESPONSE</u>:

Firestone objects to this request on the grounds that it is overly broad and seeks information that is remote in time, irrelevant and not reasonable calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone is not aware of any documents responsive to this request regarding "the subject tire." <u>See also</u> the documents described in response to Interrogatory No. 7 of Sara Martinez Perales's First Set of Discovery.

<u>REQUEST FOR PRODUCTION NO. 71</u>: Copies of all patents, foreign or domestic, and patent applications, patent files, and correspondence regarding patents which relate to "the subject tire".

<u>RESPONSE</u>:

Without waiving its prefatory objections, Firestone states that tires as a whole are generally not patented. Firestone is not aware of any patents for Firestone 721 tires.

37

REQUEST FOR PRODUCTION NO. 72:   Copies of all depositions given by technical expert witnesses (non-medical) hired by or on behalf of Defendant BRIDGESTONE/FIRESTONE, and all depositions given by BRIDGESTONE/FIRESTONE Corporation representatives, in all lawsuits brought against BRIDGESTONE/FIRESTONE for personal injuries or deaths involving allegations of tire or tread separation.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, unduly burdensome and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  For instance, the request is not limited to the tire and vehicle in question, nor to the circumstances of plaintiff's accident.  Without waiving these objections, Firestone states that it is not aware of any depositions responsive to this request in litigation involving a LR78-15 Firestone 721 steel belted radial passenger tire.

REQUEST FOR PRODUCTION NO. 73:   Copies of all final trial court pleadings (or the live trial court pleadings in pending litigation) of the plaintiffs and of Defendant BRIDGESTONE/FIRESTONE; copies of all written discovery
of BRIDGESTONE/FIRESTONE; and copies of all affidavits filed by or by on behalf o BRIDGESTONE/FIRESTONE in all lawsuits brought against BRIDGESTONE/FIRESTONE for personal injuries or death where it is alleged that tire or tread separation occurred.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, unduly burdensome and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  For instance, the request is not limited to the tire and vehicle in question, nor to the circumstances of plaintiff's accident.  Without waiving its objections, Firestone refers plaintiff to the documents offered in response to Request No. 65 above.

38

REQUEST FOR PRODUCTION NO. 74:   Copies of all depositions given by technical expert witnesses (non-medical) hired by or on behalf of Defendant BRIDGESTONE/FIRESTONE, and all depositions given by BRIDGESTONE/FIRESTONE representatives, in all lawsuits brought against BRIDGESTONE/FIRESTONE for personal injuries or death where it is alleged that tire or tread separation occurred.

RESPONSE:

Firestone objects to this request on the grounds that it is repetitious.  See Request

No. 72 above.

REQUEST FOR PRODUCTION NO. 75:   All field investigation notes or road accident records made by or on behalf of BRIDGESTONE/FIRESTONE of all known incidents where it is alleged that tire or tread separation occurred.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, unduly burdensome and seeks information which is

remote in time, irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence.  For instance, the request is not limited to the tire and vehicle in

question, nor to the circumstances of plaintiff's accident.  Without waiving its objections,

Firestone refers plaintiff to the documents offered in response to Request No. 65 above.

REQUEST FOR PRODUCTION NO. 76:   Copies of all statements given by the plaintiffs regarding the incident which are in your possession, care, custody, or control.

RESPONSE:

Firestone has no documents responsive to this request at this time.

REQUEST FOR PRODUCTION NO. 77:   Copies of all statements by witnesses or persons with knowledge of relevant facts regarding the incident which are in your possession, care, custody, or control.

RESPONSE:

Firestone objects to the extent this request seeks information protected by the, work product doctrine   Without waiving its objections, Firestone has no documents responsive to this request at this time.

REQUEST FOR PRODUCTION NO. 78:   All documents in your possession, care, custody or control which relate to the incident.

RESPONSE:

Firestone objects to this request on the grounds that it is vague and overly broad. Firestone further objects to the extent this request seeks information protected by the attorney-client privilege, work product doctrine, and consulting expert privilege.   Without waiving its objections, Firestone has no documents in its possession in addition to what it is providing in response to this discovery.   See also Firestone's responses to Sara Martinez Perales' First Set of Discovery.

Respectfully submitted,

VINSON & ELKINS L.L.P.

By:_____
KNOX NUNNALLY
State Bar No. 15141000
DON C. GRIFFIN
State Bar No. 08456975
CARRIE GUEST
State Bar No. 16859900
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760
Telephone:  (713) 758-2416
Facsimile:   (713) 615-0220
**ATTORNEYS FOR DEFENDANT**
**BRIDGESTONE/FIRESTONE, INC.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record by hand-delivery and/or certified mail, return receipt requested this 19th day of April, 2001.

_____
CARRIE GUEST

STATE OF OHIO

COUNTY OF SUMMIT

## VERIFICATION

ROSE HOUSLEY being duly sworn, deposes and says that she is ASSISTANT

SECRETARY of BRIDGESTONE/FIRESTONE, INC. (FORMERLY THE FIRESTONE

TIRE & RUBBER COMPANY), a defendant in the above-entitled case, and that she

verifies the foregoing DEFENDANT BRIDGESTONE/FIRESTONE, INC.'S

RESPONSES TO PLAINTIFF BLANCA PERALES, INDIVIDUALLY'S FIRST SET OF

DISCOVERY on behalf of that defendant and is duly authorized to do so; that the

matters stated in the foregoing document are not within her personal knowledge and

that she is informed that there is no officer or employee of

BRIDGESTONE/FIRESTONE, INC. who has personal knowledge of all such matters;

and that the facts in the foregoing document have been assembled by authorized

counsel of defendant and she is informed that the facts stated in the foregoing

document are true and correct.

_____
Rose Housley

Subscribed and sworn to
before me this _16th_ day of
_April_____, 2001.

_____
Notary Public

My Commission Expires:

AMELIA S. BRECKENRIDGE
Notary Public
Residence - Portage County
State Wide Jurisdiction, Ohio
My Commission Expires December 3, 2001

CitaPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BLANCA PERALES, Individually and | § | |
| As Next Friend of ANN DELIA | § | |
| PERALES, a minor, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. B-00-131 |
| | § | |
| BRIDGESTONE/FIRESTONE, INC., | § | |
| | § | |
| Defendant. | § | |

DEFENDANT BRIDGESTONE/FIRESTONE, INC.'S RESPONSES TO
PLAINTIFF SARA MARTINEZ PERALES'S FIRST SET OF DISCOVERY

Defendant Bridgestone/Firestone, Inc. ("Firestone") responds to Plaintiff Sara Martinez Perales's First Set of Discovery as follows:

INTRODUCTORY STATEMENT AND PREFATORY OBJECTIONS

1.     Firestone generally objects to plaintiff's discovery on the grounds that it is overly broad, and not limited to the tire in question, its particular specifications, and the manufacturing facility and period at issue. As a result, this discovery seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Although Firestone has not completed its examination of the subject tire, it has been identified as a LR78-15 Firestone 721 tire bearing Department of Transportation ("DOT") Serial No. W2V41BU508. That serial number indicates that the subject tire was manufactured at Firestone's facility in Wilson, North Carolina during the 50th week of 1978. Information regarding other tires manufactured to other specifications and at other facilities during other time periods is not "relevant to the subject matter" of this action.

EXHIBIT "B"

2.      The subject tire was built to a proprietary specification which establishes the exact manner in which the numerous design and construction variables are combined to produce that particular product. The specification prescribes the tire size and overall type of construction, the number and type of components, the dimensions, gauges and relevant placement of each component; the manner and sequence of component assembly; and the curing process and equipment used in fashioning the tire. Moreover, the specifications of individual tires change over time to reflect developments in radial tire technology and evolving vehicle requirements.

3.      Trade names such as "Firestone 721" cover tires made to different specifications at different plants over the years. Therefore, the only way to identify an individual tire is by reference to the particular specification to which it is built. Where indicated in its responses, Firestone will provide information regarding the subject tire as defined by its specification. Information regarding other, different tires is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

4.      In making these responses, Firestone is not waiving: (a) the right to object on the grounds of privilege, materiality, hearsay or any other proper ground, to the use of any information provided in these responses in any subsequent proceeding in this action or any other action; and (b) the right to object on any and all grounds to any other discovery procedures involving or relating to the subject matter of these requests.

5.      For the sake of brevity, the above objections are incorporated into Firestone's responses and are referenced to by paragraph where applicable.

## RESPONSES

REQUEST FOR ADMISSION NO. 1:      Admit      that      Defendant
BRIDGESTONE/FIRESTONE designed "the subject tire."

2

RESPONSE:

   Firestone admits that it designed "the subject tire."

REQUEST FOR ADMISSION NO. 2:     Admit        that        Defendant
BRIDGESTONE/FIRESTONE manufactured "the subject tire."

RESPONSE:

   Firestone admits that it manufactured "the subject tire."

REQUEST FOR ADMISSION NO. 3:     Admit        that        Defendant
BRIDGESTONE/FIRESTONE initially sold "the subject tire."

RESPONSE:

   Firestone states that all tires of the same type manufactured at the same plant

during the same week of production will have the same DOT serial number.  Therefore, it

is virtually impossible trace the distribution of any given tire.  At this point, Firestone has

no direct information about the sale of "the subject tire."  However, Firestone can admit

that it sold tires with the Firestone 721 brand name.

REQUEST FOR ADMISSION NO. 4:     Admit that no other tire manufacturer has
manufactured "the subject tire" or "model tires" for BRIDGESTONE/FIRESTONE.

RESPONSE:

   Firestone objects to this request on the grounds that it is vague. Firestone is not

apprised of plaintiff's definition of "model tires." Without waiving its objections,

Firestone admits that although it purchases various materials from outside vendors, it was

responsible for the assembly and manufacture of "the subject tire."

REQUEST FOR ADMISSION NO. 5:     Admit that "the subject tire" failed due to a
separation or detreading of the outer "belt" and "tread" from the tire.

3

RESPONSE:

Firestone admits that it designed "the subject tire."

REQUEST FOR ADMISSION NO. 2:    Admit    that    Defendant
BRIDGESTONE/FIRESTONE manufactured "the subject tire."

RESPONSE:

Firestone admits that it manufactured "the subject tire."

REQUEST FOR ADMISSION NO. 3:    Admit    that    Defendant
BRIDGESTONE/FIRESTONE initially sold "the subject tire."

RESPONSE:

Firestone states that all tires of the same type manufactured at the same plant

during the same week of production will have the same DOT serial number. Therefore, it

is virtually impossible trace the distribution of any given tire. At this point, Firestone has

no direct information about the sale of "the subject tire." However, Firestone can admit

that it sold tires with the Firestone 721 brand name.

REQUEST FOR ADMISSION NO. 4:    Admit that no other tire manufacturer has
manufactured "the subject tire" or "model tires" for BRIDGESTONE/FIRESTONE.

RESPONSE:

Firestone objects to this request on the grounds that it is vague. Firestone is not

apprised of plaintiff's definition of "model tires." Without waiving its objections,

Firestone admits that although it purchases various materials from outside vendors, it was

responsible for the assembly and manufacture of "the subject tire."

REQUEST FOR ADMISSION NO. 5:    Admit that "the subject tire" failed due to a
separation or detreading of the outer "belt" and "tread" from the tire.

RESPONSE:

Firestone objects to the use of the term "detreading" on the grounds that it is vague. "Detreading" is not a term used by Firestone or, to Firestone's knowledge, in the tire industry in general. Without waiving its objections, Firestone states that it has not completed its forensic examination of "the subject tire." Therefore, after reasonable inquiry, the information known or easily obtainable is insufficient to enable Firestone to admit or deny this request.

REQUEST FOR ADMISSION NO. 6:    Admit that tire "tread" or "belt" separation can cause vehicle handling and stability problems which may lead to driver loss of control.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the ground that it lacks sufficient facts. As a result, Firestone is unable to admit or deny this request without additional information. Without waiving its objections, the request is admitted in part and denied in part. Firestone denies that a tread/belt separation normally adversely affects vehicle dynamics so as to cause loss of control. Firestone admits, however, that under certain extreme and unusual circumstances a tread/belt separation and detachment may lead to loss of driver control.

IDENTIFICATION INTERROGATORY NO. 7:    If "you" have answered the previous Request for Admission any other than "Admitted," then "identify" all "studies", "testing" or other "documentation" which "you" have accumulated in the ordinary course of business which shows that tire "tread" or "belt" separation cannot cause vehicle handling and stability problems leading to a loss of driver control.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is vague, overly broad and seeks information which is

4

remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff, for instance, has not limited this interrogatory to the tire and vehicle in question, nor to the circumstances of the subject accident. Without waiving its objections, Firestone states that it extensively tests its tires as part of the development and qualification processes. This testing includes on-vehicle testing under a variety of operating conditions. Additionally, vehicle manufacturers typically test tire/vehicle fitments to comply with FMVSS 110.

Firestone also attempts to stay abreast of studies and analysis in this area. For example, James D. Gardner, Firestone's former Director of Product Analysis, has conducted testing of tread/belt separations and vehicle dynamics. Firestone will provide counsel for plaintiff copies of Mr. Gardner's paper entitled, "The Role of Tread/Belt Detachment in Accident Causation," as well as an earlier paper authored by Mr. Gardner and Christopher Shapley entitled, "The Role of Blowouts in Accident Causation." The following additional copyrighted articles are also available from the Society of Automotive Engineers, Inc.: "Drag and Steering Affects from Tire Tread Belt Separation and Loss;" and "Anatomy of Accidents Following Tire Disablement," authored by Ernest Klein and Thomas Black (SAE Technical Paper Series No. 1999-01-0446).

REQUEST FOR PRODUCTION NO. 8:    Please produce all "documents" "identified" in response to the previous Identification Interrogatory.

RESPONSE:

See objections and response to Interrogatory No. 7 above.

INTERROGATORY NO. 9: "Identify" each incident in which a "tread" or "belt" separation has occurred (or is alleged to have occurred) in a tire such as "the subject tire" by stating the date of the incident; the city, county (or parish) and state where the incident occurred; the tire position on the vehicle where the tread separation occurred, and the plant, year and week of manufacture of the tire which failed; whether or not the vehicle

5

lost control, was involved in a collision or rolled over; whether any one was injured and, if so, a basic description of the injuries sustained by each person as a result of the incident; the date when BRIDGESTONE/FIRESTONE first received notice that such incident had occurred; whether or not a claim was made or a lawsuit was filed, and if so, the name, address and phone number of the Claimant(s)' attorneys, the style, (case number) cause number, and court jurisdiction where the suit was filed; and the status of the claim.

Include in your answer, all such incidents known to "you," including those which occurred during "testing" by "you" or by any other entity, as well as those which have occurred after a tire was released into the commerce.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome and seeks information which is remote in time, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Firestone further objects to this interrogatory on the grounds that it is not limited to the facts and circumstances of the subject accident. Without waiving its objections, Firestone states that after it has completed its inspection of "the subject tire," it will provide counsel for plaintiff adjustment data, if any, related to tread/belt conditions for LR78-15 Firestone 721 steel belted radial passenger tires manufactured during the same specification period as "the subject tire" and returned for adjustments from January 1, 1993 through May 1999. Firestone further states that adjustment data prior to January 1993 no longer exists on its system. Because the adjustment data being provided contains information that is considered to be proprietary and confidential, that data will be produced subject to the entry of a suitable protective order.

In addition, Firestone states that from time to time it receives unverified claims and lawsuits regarding its products. After Firestone has completed its inspection of "the

CUisPDF – www.fasdo.com

subject tire," it will provide counsel for plaintiff a list of claims and a list of lawsuits, if any, involving personal injury, and allegedly arising from a tread/belt separation of a tire made to the same specification as "the subject tire," and received by Firestone before May 30, 1999, the date of the subject accident.   In order to protect the privacy interest of claimants, the lists will be produced subject to the entry of a suitable protective order. Each list will include the date of incident, the incident location, the name of the claimant, the claimant's attorney, if any, the court and docket number, if any, the DOT tire serial number, and the date received by Firestone.  By producing this information, Firestone is not admitting that any of these lawsuits and claims involve facts and circumstances substantially similar to the subject accident. See also response to Request No. 23 below.

REQUEST FOR PRODUCTION NO. 10:    Produce the following types of "documents" related to every incident listed in response to the previous Interrogatory:

  (a)   The first "document" by which BRIDGESTONE/FIRESTONE received notice of such incident;
  (b)   The first court petition or complaint by which a lawsuit was made against BRIDGESTONE/FIRESTONE arising out of such incident;
  (c)   The last amended petition or complaint by which a legal claim was made against BRIDGESTONE/FIRESTONE arising out of such incident;
  (d)   Any and all "documents" in which such incident was identified or discussed in either internal BRIDGESTONE/FIRESTONE "documents" or memoranda or in correspondence between you and some other entity. (However, "you" are not requested to identify communications between "yourself" and trial counsel regarding litigation, when such communication occurred after the date "you" were served with a lawsuit or if such communication was in anticipation of the defense of a potential lawsuit arising out of the specific incident);

  Include in "your" answer, all such incidents known to you, including those which occurred during "testing" by you or by any other entity, as well as those which have occurred after a tire was sold into the stream of commerce.

7

RESPONSE:

   In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, unduly burdensome, and seeks information which

is not limited to "the subject tire," vehicle, and circumstances of the subject accident.

Therefore, the information sought is irrelevant and not reasonably calculated to lead to

the discovery of admissible evidence.  Firestone further objects to subparagraph (d) of

this request on the grounds that it calls for information and materials subject to the

attorney-client privilege and the work product doctrine and because the phrase "any and

all documents" as used in this subparagraph is overly broad, even if limited to non-

privileged or work product communications.   Without waiving its objections, see

response to Interrogatory No. 9 above.

REQUEST FOR PRODUCTION NO. 11:   Produce all "documents" in the possession
of or subject to the control of BRIDGESTONE/FIRESTONE, no matter wherever in the
world they are located, containing loss adjustment data for tires substantially similar in
design to "the subject tire."

[By the term "loss adjustment data" is [sic] means summary compilations of individual
claim adjustment records, field performance data and/or customer concession adjustment
records, rainbow charts, awareness charts, tire failure records, failure data compilations
or other statistical, quantitative or numerical records regarding tire failures, tire defects
and tires returned for warranty adjustments.]

RESPONSE:

   In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, unduly burdensome and seeks information from

other non-party entities which is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.  Firestone further objects to the definition of "loss

adjustment data" contained in this request on the grounds that that definition is vague.

Firestone is not apprised of plaintiff's definition of such terms as "rainbow charts," or

8

"awareness charts" as those terms are not used by Firestone or, to Firestone's knowledge, in the tire industry in general.   In addition, Firestone is not apprised of plaintiff's definition of "substantially similar."   Finally, Firestone objects to this request on the grounds that it is not limited to the failure mode of "the subject tire," or the time period during which the specification for "the subject tire" was in effect. Without waiving its objections and assuming that plaintiff is seeking information regarding adjustment data, see response to Interrogatory No. 9 above.

INTERROGATORY NO. 12:  List all radial tire models or radial tire lines manufactured by BRIDGESTONE/FIRESTONE anywhere in the world for the period 1978 until the present by stating the brand name and other model or line identifying designation for each tire line, as well as the country in which each such line is manufactured and the country(s) in which each such line is sold.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information over a 23-year period which is irrelevant, remote in time, and not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSION NO. 13:    Admit that BRIDGESTONE/FIRESTONE maintains loss adjustment data for all tire lines it manufactured.  If necessary, answer separately with regard to each tire line.

[By the term "loss adjustment data" is [sic] means summary compilations of individual claim adjustment records, field performance data and/or customer concession adjustment records, rainbow charts, awareness charts, tire failure records, failure data compilations or other statistical, quantitative or numerical records regarding tire failures, tire defects and tires returned for warranty adjustments.]

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information which is irrelevant and not

9

reasonably calculated to lead to the discovery of admissible evidence.  Firestone further

objects to the definition of "loss adjustment data" contained in this request on the grounds

that that definition is vague.  Firestone is not apprised of plaintiff's definition of such

terms as "rainbow charts," or "awareness charts" as those terms are not used by Firestone

or, to Firestone's knowledge, in the tire industry in general.   Without waiving its

objections and assuming that this request refers to adjustment data, Firestone denies this

request. However, Firestone admits that it does maintain adjustment data, if any exists,

for Firestone 721 tires.

REQUEST FOR PRODUCTION NO. 14:   Produce    all    "documents"    or    data
compilations located anywhere in the world which contain loss adjustment data on any
tire lines manufactured by BRIDGESTONE/FIRESTONE, and with respect to each
"document" or group of "documents", identify its location and the entity (company,
office, department or person) who is the custodian of the same.

[By the term "loss adjustment data" is [sic] means summary compilations of individual
claim adjustment records, field performance data and/or customer concession adjustment
records, rainbow charts, awareness charts, tire failure records, failure data compilations
or other statistical, quantitative or numerical records regarding tire failures, tire defects
and tires returned for warranty adjustments.]

Please Note:  If such "documents" exist in electronic format, you may satisfy this request
by production of such "documents" in electronic format solely.

RESPONSE:

        In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, unduly burdensome, and not limited to "the subject

tire," the failure mode at issue, or to this defendant.   Therefore, this request seeks

information which is irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence.  Furthermore, Firestone objects to the definition of "loss adjustment

data" contained in the request on the grounds that it is vague.  Firestone is not apprised of

plaintiff's definition of such terms as "rainbow charts" or "awareness charts," as those

CIMPDF - www.fasisa.com

terms are not used by Firestone, nor, to Firestone's knowledge, within the tire industry in general. Without waiving its objections and assuming plaintiff is referring to adjustment data, Firestone states that information regarding warranty adjustments of its tires, including "the subject tire," is maintained in a computer system under the control of Firestone's Corporate Quality Assurance Department. During the relevant time period, this department was under the supervision of W. E. Moore, Manager of Quality Assurance. See also response to Interrogatory No. 9 above.

REQUEST FOR ADMISSION NO. 15:    Admit that BRIDGESTONE/FIRESTONE maintains "loss adjustment data" in electronic format.

RESPONSE:

        In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Firestone further objects to the definition of "loss adjustment data" contained in the previous request on the grounds that that definition is vague. Firestone is not apprised of plaintiff's definition of such terms as "rainbow charts," or "awareness charts" as those terms are not used by Firestone or, to Firestone's knowledge, in the tire industry in general. Without waiving its objections and assuming that this request refers to adjustment data, Firestone can admit that it does maintain adjustment data, if any exists, for Firestone 721 tires.

REQUEST FOR PRODUCTION NO. 16:    Produce all "documents" which contain BRIDGESTONE/FIRESTONE'S    internal    recommendations,    determinations    or guidelines as to the acceptable or unacceptable rate or frequency of loss adjustment, or any rate or frequency of loss adjustment which requires that action be taken or that notification be given by or to any internal BRIDGESTONE/FIRESTONE persons or organizations.

RESPONSE:

Without waiving its prefatory objections, ¶ 1 above, Firestone states that under its Limited Warranty Program, it adjusts tires for consumers on a pro-rated basis as further described in the limited warranty for the tire being adjusted. Tires are adjusted for conditions including such things as cosmetic complaints, ride and handling complaints, and a number of other non-safety related conditions. Furthermore, in order to promote brand name loyalty and consumer satisfaction, Firestone has historically maintained a liberal adjustment policy for its tires, and may provide an adjustment credit in order to avoid a possible dispute with an otherwise valuable customer. Tires are adjusted for a variety of conditions observed during a cursory inspection without attempting to determine the underlying cause of the condition found. Tires are adjusted by dealers and employees at over 1,500 Firestone stores across the country. As a result, the fact that a tire has been adjusted does not mean that the adjusted tire was defective, nor do adjustment rates indicate percentages of defective tires.

Given the nature and purposes of the adjustment process, Firestone does not have a set adjustment figure by which it evaluates adjustment data. Rather, each tire size and line is evaluated in light of its intended application and uses.

REQUEST FOR PRODUCTION NO. 17: Produce all government regulations which require the maintenance of loss adjustment data.

RESPONSE:

Firestone is not aware of any governmental regulations which require the maintenance of adjustment data by tire companies.

REQUEST FOR PRODUCTION NO. 18: Produce all books, manuals, newsletters, circular letters, publications, and mass mailing communications for the period 1985 to the present from BRIDGESTONE/FIRESTONE to tire dealers,

BRIDGESTONE/FIRESTONE employees or other persons specifying or describing the circumstances under which tire warranty adjustments will be paid by BRIDGESTONE/FIRESTONE.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information on tires other than "the subject tire" and over a broad period of time remote from the manufacture of that tire. Without waiving its objections, Firestone states that it lacks sufficient information regarding the sale of "the subject tire" in order to respond to this request. The Tire Maintenance, Warranty and Safety Manual applicable to "the subject tire" no longer exists. However, Firestone will provide counsel for plaintiff with a copy of Bridgestone/Firestone's Warranty Policy and Procedure Manual dated 4/99.

REQUEST FOR PRODUCTION NO. 19: Produce all "documents" containing or specifying the design of "the subject tire" and all "subject model tires," with respect to each of the following characteristics:

    (a)    The physical size, shape and characteristics of the finished tire;

    (b)    The specifications of the component parts which are assembled to constitute the finished tire;

    (c)    The green tire specifications applicable to "the subject tire", including the order of assembly, dimensions and compounds or construction, including specifications for skim stock, belt materials, belt construction, wire coatings and treatments, tread and undertread, cushions and/or edge strips, gum strips belt wedges, overlay belts and interliners;

    (d)    Cured tire specifications for "the subject tire", including any manufacturing directions, parameters or specifications for the size, placement and curing of components;

    (e)    Any other documents constituting or containing the design of "the subject tire" or "subject model tires".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information which is irrelevant and not

13

reasonably calculated to lead to the discovery of admissible evidence. Firestone further

objects to subparagraph (c) of this request to the extent that it seeks information which is

proprietary and trade secret. The formula, "recipe," or specification of any proprietary

compound used in Firestone's tires represents thousands of manhours and millions of

dollars in research and development, the disclosure of which would cause irreparable

harm to Firestone. Firestone also objects to this subparagraph and the use of the terms

such as "interliners," "cushions," "gum strips," etc. which are undefined and vague.

Firestone further objects to the catch-all request in subparagraph (e) of this request on the

grounds that it is vague and overly broad. Without waiving its objections, Firestone

states after it has completed its inspection of "the subject tire," it will provide counsel for

plaintiff the specification for that tire. Since this specification contains information which

is considered to be confidential and proprietary, it will be produced after the entry of a

suitable protective order.

REQUEST FOR PRODUCTION NO. 20: Produce all "documents" by which the
design characteristics (including manufacturing methods or specifications) for "the
subject tire" has been changed for the period of time beginning January 1, 1978 through
the present.

RESPONSE:

See objections and response to Request No. 19 above.

REQUEST FOR PRODUCTION NO. 21: Produce all internal
BRIDGESTONE/FIRESTONE tire design manuals, guidelines or other internal
"documents" setting forth guidelines or recommendations for tire design.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, contains no time frame, and seeks information

which is irrelevant and not reasonably calculated to lead to the discovery admissible

evidence. Firestone further objects to this request as seeking internal design information which is trade secret, and the disclosure of which would cause irreparable harm to Firestone. Without waiving its objections, Firestone states that "the subject tire" was designed to comply with FMVSS 109 and the guidelines issued by the Tire and Rim Association ("TRA"). The requirements for FMVSS 109 are contained in 49 C.F.R. § 570.109. After Firestone has completed its inspection of "the subject tire," it will provide counsel for plaintiff a copy of the Tire and Rim Association guidelines for that tire.

REQUEST FOR PRODUCTION NO. 22:   Produce all internal BRIDGESTONE/FIRESTONE "testing" manuals or "testing" requirements applicable to tires in general and "the subject tires" in particular.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is vague, overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone will provide counsel for plaintiff available FMVSS 109, testing for tires made to same specification as "the subject tire," if any. However, testing protocols and procedures for "the subject tire" no longer exist. Since the testing contains information which is considered to be confidential and proprietary, it will be provided subject to the entry of a suitable protective order.

REQUEST FOR PRODUCTION NO. 23:   Produce all "documents" which constitute or contain "information" regarding "testing" of "the subject tire" with respect to characteristics which affects its propensity (or lack thereof) to fail by "tread" or "belt" separation, segregating them separated by:

(a)   Design and development "documents";
(b)   Quality control "documents"; and
(c)   Other "documents".

15

RESPONSE:

Firestone objects to this request on the grounds that it is argumentative. Firestone is unaware of any "propensity" of "the subject tire" to fail by tread/belt separations. Rather, any steel belted radial passenger tire can sustain a tread/belt separation due to a variety of service conditions such as overloading, underinflation, unrepaired or improperly repaired punctures, high speed operation, impact damage, mounting damage, improper storage, and so forth. Firestone further objects to the catch-all request in subparagraph (c) of this request on the grounds that it is vague and overly broad. Without waiving its objections, Firestone states that records of testing for "the subject tire," which was manufactured 23 years ago, no longer exist.

REQUEST FOR PRODUCTION NO. 24:   Produce all "documents" which specify quality control "procedures" related to manufacturing processes or tire characteristics which affect the propensity (or lack thereof) for "the subject model tires" to fail by "tread" or "belt" separation.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Firestone further objects to this request on the grounds that it is argumentative. Firestone is unaware of any "propensity" of "the subject tire" to fail by tread/belt separations. Without waiving these objections, see response to Request No. 21 above.

REQUEST FOR PRODUCTION NO. 25:   Produce all "documents" which contain, constitute or document "studies" , "reports", "testing" or research to determine the cause of tire "belt" or "Tread" separation with respect to:

    (a)    tires in general;
    (b)    "the subject tire"; and
    (c)    "the subject model tires".

16

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad and is not limited to "the subject tire." Firestone further objects to this request as unduly burdensome and requiring a file by file search of each employee to see what texts or treatises that employee may have. Without waiving its objections, Firestone states that tread/belt separations may be produced by certain forces, stresses and material constraints affecting any steel belted radial passenger tire. The effects of these forces and stresses require a fundamental understanding of mechanical and tire engineering. Furthermore, the knowledge of tread/belt separations has been evolving since pneumatic tires were first introduced in this country over 100 year ago. Over that time, this knowledge has resulted in tens of thousands of papers and publications on tires and tire technology, and Firestone has employed thousands of tire engineers. This continuing knowledge has resulted in a variety of Firestone and industry publications on the maintenance and care of steel belted radial tires to prevent tread/belt separations. Examples of these publications include the Tire Maintenance, Warranty and Safety Manual, which no longer exists for "the subject tire," "Care and Service of Passenger and Light Truck Tires" published by the Rubber Manufacturers' Association ("RMA"), and the "Consumer Tire Guide" by the Tire Industry Safety Council ("TISC"). Firestone will provide counsel for plaintiff sample copies of the RMA and TISC booklets.

REQUEST FOR PRODUCTION NO. 26:   Produce   all   research   papers,   reports, publications,   "documents",   treatises   or   memoranda   distributed   internally   at BRIDGESTONE/FIRESTONE relating to the subject of "tread", "ply", "belt" or "cord" separation from steel belted radial tires.

CVisPDF - www.texis.com

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad and is not limited to "the subject tire" nor the alleged failure mode of that tire.  Firestone further objects to this request as unduly burdensome and requiring a file by file search of employees to see what "publications" and/or "treatises" that employee may maintain.  Without waiving its objections, and assuming that plaintiff is referring to the causes and potential results of tread/belt separations, see responses to Interrogatory No. 7 and Request No. 25 above.

REQUEST FOR PRODUCTION NO. 27:  Produce copies of any and all research papers, reports, treatises or other publications published outside BRIDGESTONE/FIRESTONE by BRIDGESTONE/FIRESTONE or its employees related to the subject of "tread", "ply", "belt" or "cord" separation from steel belted radial tires.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, unduly burdensome, and is not limited to "the subject tire" nor the alleged failure mode of that tire.  Firestone further objects to this request on the grounds that it contains no time frame, and would require Firestone to conduct a literature search and obtain documents "published outside Firestone," which would be a matter of public record and therefore equally available to plaintiff. See also response to Request No. 26 above.

REQUEST FOR PRODUCTION NO. 28:  Produce copies of any and all correspondence, written communications, or written memoranda of oral communications regarding the subject of "tread", "belt", or "tire" separations and steel belted radial tires in general, and in "the subject model tires" specifically, between:

(a)  BRIDGESTONE/FIRESTONE and the U.S. Department of Transportation, or NHTSA;

18

(b)     BRIDGESTONE/FIRESTONE and any other foreign or domestic governmental entity;

(c)     BRIDGESTONE/FIRESTONE and any automobile manufacturer;

(d)     BRIDGESTONE/FIRESTONE and any other corporate entity not listed above.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, unduly burdensome and seeks information regarding dissimilar tires which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, Firestone objects to the catch-all request of subparagraph (d) of this request on the grounds that it is vague and overly broad. Without waiving these objections, Firestone states that documents responsive to this request, if any, relating to "the subject tire," which was manufactured 23 years ago, no longer exist.

REQUEST FOR PRODUCTION NO. 29:   Produce all warnings and instructions issued by BRIDGESTONE/FIRESTONE to anyone regarding precautions to be taken to avoid "tread", "cord", "ply" and/or "belt" separation in radial tires in general, and in "the subject model tires" specifically.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, unduly burdensome and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Firestone further objects to this request on the grounds that it seeks information on failure modes other than the failure mode at issue.   Therefore, this request seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.   Without waiving its objections, Firestone states that information concerning proper loading and inflation pressure is molded on the sidewall of "the subject tire."

19

Additional information is contained in the Tire Maintenance, Warranty and Safety Manual which is described in Firestone's response to Request No. 18 above. Additionally, vehicle manufacturers provide information regarding proper tire fitment and inflation pressure on the placard of the door of their vehicles. Additional information regarding tire maintenance usually is contained in the vehicle owner's manual. Furthermore, as a member of the RMA and TISC, Firestone participates in the distribution of additional warnings and maintenance instructions to consumers. See e.g., the RMA and TISC literature described in Firestone's response to Request No. 25 above.

INTERROGATORY NO. 30: With regard to "the subject tire", please state the tire's speed rating and the maximum, minimum and recommended psi tire pressure recommended by BRIDGESTONE/FIRESTONE for the tire under normal vehicle load conditions.

RESPONSE:

Firestone states that "the subject tire" was not speed rated. Firestone designed "the subject tire" to comply with TRA guidelines which specify the maximum load at the maximum cold inflation pressure for each type and size tire. The "subject tire," for example, was designed for a maximum load of 2100 pounds at 36 psi. This maximum cold inflation pressure is molded on the sidewall of the tire.

REQUEST FOR PRODUCTION NO. 31:   Produce all "documents" reflecting:

(a)     BRIDGESTONE/FIRESTONE internal determination of the speed rating, maximum, minimum and recommended tire pressure for "the subject model tires" from 1978 until the present; and

(b)     BRIDGESTONE/FIRESTONE communication of the speed rating, maximum, minimum and recommended tire pressure for "the subject model tires" to any auto manufacturer from 1978 to the present.

20

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, and seeks information which is irrelevant and not

reasonably calculated to lead to the discovery of admissible evidence. Firestone further

objects to this request to the extent it seeks information from "1978 until the present,"

which is remote in time.  Without waiving its objections, Firestone states:

(a)     The "subject tire" was not speed rated.  The cold inflation pressure of 36

psi at maximum load prescribed by the TRA was tested in accordance with FMVSS 109.

(b)     Firestone states that the cold inflation pressure at maximum load for

LR78-15 Firestone 721 tires is molded onto the sidewall of that tire.

INTERROGATORY NO. 32: If BRIDGESTONE/FIRESTONE has ever changed the
speed rating or the maximum, minimum or recommended tire pressures since it began
selling "the subject model tires", please state what the different tire ratings and
maximum, minimum and recommended tire pressure have been for each model tire,
stating the date when the values were in effect and the reasons for the changes.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, and seeks information which is remote in time,

irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving these objections, see response to Interrogatory No. 30 above.

REQUEST FOR PRODUCTION NO. 33:   Produce all documents explaining how the
tire speed rating or the maximum, minimum and recommended tire pressure of "the
subject model tires" was decided.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, and seeks information which is irrelevant and not

21

reasonably calculated to lead to the discovery of admissible evidence. Without waiving

these objections, Firestone states that it designs tires to comply with the guidelines of the

Tire and Rim Association ("TRA").   Among other things, the TRA specifies the

maximum load at the cold inflation pressure for each type and size tire.   This cold

inflation pressure is molded on the sidewall of the tire.  See also response to Interrogatory

No. 30 above.

REQUEST FOR ADMISSION NO. 34:    Admit that BRIDGESTONE/FIRESTONE
has determined the average tire mileage life expected from (a) tires such as "the subject
tire" and/or (b) "the subject model tires".

RESPONSE:

     Without waiving its prefatory objections, ¶ 1 above, Firestone denies this request.

INTERROGATORY NO. 35: If you have admitted the subparts (a) and/or (b) of the
preceding interrogatory [sic], then state what the average is for each of the tires to which
such admission applies and how the value was determined.

RESPONSE:

     Not applicable.

REQUEST FOR PRODUCTION NO. 36:   Produce   all   "documents"   showing   how
BRIDGESTONE/FIRESTONE calculated or determined the average tire mileage life to
be expected from "the subject model tires".

RESPONSE:

     Not applicable.

REQUEST FOR PRODUCTION NO. 37:    Produce one or more catalogues or similar
"documents" sufficient to identify all tire lines or models manufactured and/or sold by
BRIDGESTONE/FIRESTONE in the United States from 1978 until the present.

RESPONSE:

     In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, unduly burdensome, and seeks information over a

22

23-year period that is irrelevant, remote in time, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone states that the Firestone Tire Data Book applicable to "the subject tire" is no longer available.

INTERROGATORY NO. 38: If a gum strip, belt wedge, or any rubber materials is used between the edges of the steel "belts" of any of "the subject model tires", please identify the specific materials used for each model tire.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Firestone further objects to this interrogatory on the grounds that it is vague. Firestone is not apprised of plaintiff's definition of the terms "gum strip," or "any rubber materials" as used in the context of this interrogatory. In addition, Firestone objects to this interrogatory to the extent it seeks the formula or "recipe" of the compounds used in "the subject tire." This information is trade secret, the disclosure of which would cause Firestone irreparable harm. Without waiving its objections, Firestone states that, according to the specification for "the subject tire," described in response to Request No. 19 above, no gum strip, belt wedge, or other rubber material was used between the edges of the belts in "the subject tire."

INTERROGATORY NO. 39: Was a gum strip, belt wedge or other rubber materials used between the edges of the steel belts of "the subject tire"?

RESPONSE:

Firestone objects to this interrogatory on the grounds that it is vague. Firestone is not apprised of plaintiff's definition of the terms "gum strip," or "any rubber materials" as used in the context of this interrogatory. Without waiving its objections, Firestone states

23

that no gum strip, belt wedge, or other rubber material was used between the edges of the

belts in "the subject tire."

INTERROGATORY NO. 40:   If "you" answered "yes" to either of the previous two interrogatories, please indicate the nature of the material used, its dimensions and location, and stat whether there is a period of time during the manufacturing history of BRIDGESTONE/FIRESTONE's manufacturing of "the subject model tires" in which said material was not used, and if so, indicate the dates and the reason.

RESPONSE:

    Not applicable.

REQUEST FOR PRODUCTION NO. 41:   Copies of the Master Specifications for tires such as "the subject tire" from BRIDGESTONE/FIRESTONE's home office.

RESPONSE:

    In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request

on the grounds that it is overly broad, and seeks information which is irrelevant and not

reasonably calculated to lead to the discovery of admissible evidence. Without waiving

its objections, Firestone refers plaintiff to the specification described in response to

Request No. 19 above.

REQUEST FOR PRODUCTION NO. 42:   Copies of the master tire specifications used at the plant where "the subject tire" was manufactured, applicable to "the subject tire".

RESPONSE:

    Firestone objects to this request on the grounds that it is overly broad, and seeks

information which is irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence. Without waiving its objections, Firestone refers plaintiff to the

specification described in response to Request No. 19 above.

INTERROGATORY NO. 43: Describe each design or manufacturing process change made to "the subject model tires" during the period of their production, stating the date and all reasons for each such change.

24

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Firestone also objects to this interrogatory on grounds of undue burden as there would have been numerous continuous changes to the manufacturing processes, as well as evolutionary changes to the equipment and procedures, used by Firestone during the period the Firestone 721 brand name was used. Firestone further objects to this interrogatory on the ground that it seeks materials and information that is trade secret and the disclosure of which would cause irreparable harm to Firestone. Without waiving its objections, Firestone states that the specification described in response to Request No. 19 above includes the change history for the specification.

REQUEST FOR PRODUCTION NO. 44:   Please produce a copy of the organizational charts in effect at the tire manufacturing plant where "the subject tire" was built, both presently and during the week "the subject tire" was built.

RESPONSE:

Firestone objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information from 23 years ago which is irrelevant, remote in time, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone states that it will provide counsel for plaintiff a copy of organizational charts in effect in Wilson, North Carolina in 1978.

INTERROGATORY NO. 45:   "Identify" all plants at which "the subject model tires" have been made and the date ranges such tires were made at each plant.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone states that it is unable to respond to this interrogatory as it relates to "the subject tire" since the production records applicable to that tire, which was manufactured 23 years ago, no longer exist.

INTERROGATORY NO. 46: List the number of "the subject model tires" produced on a weekly or monthly basis at each plant, broken down by tire size and model.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone states that it is unable to respond to this interrogatory as it relates to "the subject tire" since the production records applicable to that tire, which was manufactured 23 years ago, no longer exist.

REQUEST FOR PRODUCTION NO. 47: Produce the tire fitment guides for "the subject model tires".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone states that the tire fitment guides applicable to "the subject tire" no longer exist.

26

REQUEST FOR PRODUCTION NO. 48:   Please produce any and all "documents" that relate to or discuss a lack of tack or loss of tack with respect to green tires (or components thereof) assembled or produced at the manufacturing facility that built "the subject tire" between 1990 and the end of 1993.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is overly broad, and seeks information which is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  The "subject tire" was manufactured in 1978, and any documents responsive to this request from that production period no longer exist.

REQUEST FOR ADMISSION NO. 49:   Admit that   "the   subject   tire"   was manufactured in the twenty-third week of 1978 at the BRIDGESTONE/FIRESTONE plant in Wilson, North Carolina.

RESPONSE:

Firestone denies this request.  Based on the DOT serial number for "the subject tire," Firestone states that the tire was manufactured during the 50th week of 1978 at Firestone's manufacturing plant in Wilson, North Carolina.

INTERROGATORY NO. 50: If "you" have answered the preceding Request for Admission in any way other than "Admitted," then state when "the subject tire" (including its component parts) was manufactured, where "the subject tire" (including its component parts) was manufactured, and the owner and operator of the tire manufacturing plant at which "the subject tire" (including its component parts) was manufactured.

RESPONSE:

See Response to Request No. 49 above.

REQUEST FOR PRODUCTION NO. 51:   Please produce all "documents" pertaining to the use of vulcanization accelerators, antiozonants, protective waxes and other materials (including but not limited to solvents) affecting the tackiness of rubber components used at BRIDGESTONE/FIRESTONE plant during the period of time from 1978 through the present.

27

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is seeks information that is remote in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Firestone further objects to this request on the grounds that it seeks information which is proprietary and trade secret.  The formula, "recipe," a specification of any proprietary compound used in Firestone's tires represents thousands of manhours and millions of dollars in research and development, the disclosure of which would cause Firestone irreparable harm.  In addition, Firestone objects to this request on the grounds that it is overly broad in that it seeks information about all rubber compounds used at the Wilson plant.  Plaintiff has not identified any component of "the subject tire" she alleges to be defective, much less every rubber component in the plant.

REQUEST FOR PRODUCTION NO. 52:  Please produce copies of any and all correspondence between BRIDGESTONE/FIRESTONE and either the U.S. Department of Transportation or NHTSA regarding the subject of "tread", "ply", "belt", and/or "cord" separation.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving its objections, Firestone states that it no longer has in its possession correspondence or communications, if any exists, between Firestone and the Department of Transportation, NHTSA, or any other government entity regarding "the subject tire" or any LR78-15 Firestone 721 tires.

REQUEST FOR PRODUCTION NO. 53:   Please produce copies of any and all docket submissions to the NHTSA or the U.S. Department of Transportation regarding the subject of "tread", "ply", "belt", and/or "cord" separation.

RESPONSE:

See objections and response to Request No. 53 above.

REQUEST FOR PRODUCTION NO. 54:   With respect to any U.S. Department of Transportation or NHTSA investigation or inquiry (by whatever name called) into the subject of "tread", "ply", "belt", or "cord" separation in BRIDGESTONE/FIRESTONE tires, produce the following:

(a)   All related internal "documents", business records, memoranda, or meeting minutes;

(b)   All correspondence between BRIDGESTONE/FIRESTONE and the U.S. Department of Transportation or NHTSA: and

(c)   Any and all statistical or engineering "studies" or analysis performed with respect to such investigation.

RESPONSE:

See objections and response to Request No. 53 above.

REQUEST FOR PRODUCTION NO. 55:   Please produce all "documents" relating to or discussing the risks or hazards of a vehicle's tire detreading.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad and not limited to "the subject tire," subject vehicle, nor the alleged failure mode of "the subject tire." Firestone further objects to the use of the term "detreading" on the grounds that it is vague. "Detreading" is not a term used by Firestone or, to Firestone's knowledge, in the tire industry in general. Without waiving these objections, Firestone refers plaintiff to the documents offered in response to Interrogatory No. 7 above.

REQUEST FOR PRODUCTION NO. 56:   Please produce all "documents" relating to or discussing the statistics on how often accidents occur, and/or persons are injured or killed in incidents when a tire detreads.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad and is not limited to "the subject tire," subject vehicle, nor the alleged failure mode of "the subject tire." Firestone further objects to the use of the term "detreads" on the grounds that it is vague. "Detreads" is not a term used by Firestone or, to Firestone's knowledge, in the tire industry in general. Without waiving its objections, Firestone states that it does not compile such statistics. However, Firestone attempts to stay abreast of the general literature in this area and is aware of such studies as that conducted by Stannard Baker which shows that there is approximately one accident in every 4,000 tire disablements. Firestone also refers plaintiffs to the documents described in response to Interrogatory No. 7 above which show that a tread/belt separation does not adversely affect vehicle dynamics so as to result in a loss of control.

REQUEST FOR PRODUCTION NO. 57: Please produce all "documents" that depict the BRIDGESTONE/FIRESTONE plant layout in Wilson, NC where "the subject tire" was manufactured (i.e., a blueprint or engineering drawing or similar "document" showing the relative location and distances between the various parts of the plant) at the time "the subject tire" was built.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is vague, overly broad, unduly burdensome, not reasonably limited in scope as to time, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Firestone further objects to this request to the extent that it seeks information which is proprietary and trade secret to Firestone.

30

REQUEST FOR PRODUCTION NO. 58: Please produce all industry standards, specifications or regulations, whether voluntary or mandatory, which were in effect and applicable to the manufacture of "the subject tire" (including its component parts), including the methods by which the components of "the subject tire" were purchased, prepared for assembly, stored, assembled, cured or tested.

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this request on the grounds that it is overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, in that this request is not limited to the components of "the subject tire" allegedly at issue. For example, this request is broad enough to seek information on Environmental Protection Agency ("EPA") and Occupational Safety and Health Administration ("OSHA") regulations. Without waiving its objections, Firestone is not aware of  "industry standards, specifications or regulations" as defined in this request, specifically applicable to the tire manufacturing process.

INTERROGATORY NO. 59: Please identify, by stating the business and residence addresses, and business and residence telephone numbers, the BRIDGESTONE/FIRESTONE employee (or ex-employee) who is most knowledgeable about the design, development and production of "the subject tire".

RESPONSE:

In addition to its prefatory objections, ¶ 1 above, Firestone objects to this interrogatory on the grounds that it is vague, overly broad, and seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Firestone states that James D. Gardner, Firestone's former Director of Product Analysis, generally is knowledgeable regarding the design, development and production in LR78-15 Firestone 721 tires.

31

Respectfully submitted,

VINSON & ELKINS L.L.P.

By: _____
    KNOX NUNNALLY
    State Bar No. 15141000
    DON C. GRIFFIN
    State Bar No. 08456975
    CARRIE GUEST
    State Bar No. 16859900
    2300 First City Tower
    1001 Fannin Street
    Houston, Texas 77002-6760
    Telephone:  (713) 758-2416
    Facsimile:   (713) 615-0220
**ATTORNEYS FOR DEFENDANT
BRIDGESTONE/FIRESTONE, INC.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record by hand-delivery and/or certified mail, return receipt requested this 19th day of April, 2001.

_____
CARRIE GUEST

32

STATE OF OHIO

COUNTY OF SUMMIT

<u>VERIFICATION</u>

ROSE HOUSLEY being duly sworn, deposes and says that she is ASSISTANT

SECRETARY of BRIDGESTONE/FIRESTONE, INC. (FORMERLY THE FIRESTONE

TIRE & RUBBER COMPANY), a defendant in the above-entitled case, and that she

verifies the foregoing DEFENDANT BRIDGESTONE/FIRESTONE, INC.'S

RESPONSES TO PLAINTIFF SARA MARTINEZ PERALES'S FIRST SET OF

DISCOVERY on behalf of that defendant and is duly authorized to do so; that the

matters stated in the foregoing document are not within her personal knowledge and

that she is informed that there is no officer or employee of

BRIDGESTONE/FIRESTONE, INC. who has personal knowledge of all such matters;

and that the facts in the foregoing document have been assembled by authorized

counsel of defendant and she is informed that the facts stated in the foregoing

document are true and correct.

_____
Rose Housley

Subscribed and sworn to
before me this _16th_ day of
_April_, 2001.

_____
Notary Public

My Commission Expires:

AMELIA S. BRECKENRIDGE
Notary Public
Residence - Portage County
State Wide Jurisdiction, Ohio
My Commission Expires December 3, 2001

CitiPDF - www.fastio.com

# LAW OFFICES OF R. BRUCE THARPE
Professional Plaza
715 East Frontage, Suite D
Alamo, Texas 78516
(956) 782-9946
(956) 782-9945 – Fax

August 8, 2001

**BY FACSIMILE TRANSMISSION:**          **(713) 758-2346**

Mr. Louis E. McCarter
VINSON & ELKINS, L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760

> **RE:**   *Civil Action No. B-00-131; Blanca Perales, et al v. Bridgestone / Firestone, Inc.; In the U.S. District Court for the Southern District of Texas – Brownsville Division;*

Dear Mr. McCarter:

Pursuant to our recent telephone conversation regarding our concerns about the discovery responses filed in behalf of Firestone, please find our Motion to Compel that we have prepared. This letter and its attachments are presented in an effort to resolve these issues without the need for court intervention.

At your earliest convenience, please review same and in view of the length of the motion and number of issues, request is hereby made that you respond in writing with regard to each of the discovery requests addressed in our motion. Accordingly, we will review the position of your client with regard to our discovery concerns in order to determine which issues, if any, need to be addressed by the Court.

In view of our rapidly approaching trial date, and the necessity to commence depositions, I have calendared Monday, August 20, 2001 for filing our motion with the Court. I trust this will give you enough time to respond to our concerns. In the meantime, we look forward to your response.

Cordially,

R. Bruce Tharpe
Attorney at Law

EXHIBIT "C"

cc:    Mr. Joe Valle
Attorney at Law
1120 East 10th Street
Brownsville, Texas 78520

Mr. Joseph A. (Tony) Rodriguez
RODRIGUEZ, COLVIN & CHANEY
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522

Mr. Tom Woodrow
Attorney at Law
55 West Monroe, Suite 800
Chicago, Illinois 60603

CVisPDF - www.fastio.com

# Vinson&Elkins

ATTORNEYS AT LAW

VINSON & ELKINS L.L.P.
2300 FIRST CITY TOWER
1001 FANNIN STREET
**HOUSTON, TEXAS 77002-6760**
TELEPHONE (713) 758-2222
FAX (713) 758-2346

Writer's Phone  713-758-2530
Writer's Fax  713-758-2346

E-mail  lmccarter@velaw.com
Web  www.velaw.com

August 22, 2001

*via Fax No. 956-687-3438*

Mr. R. Bruce Tharpe
725 E. Esperanza, Suite B
McAllen, Texas 78501

     Re:    **Civil Action No. B-00-131;** *Blanca Perales, et al v. Bridgestone/*
              *Firestone, Inc.,* **In the U.S. District Court for the Southern District of**
              **Texas – Brownsville Division**

Dear Bruce:

     We thank you for your letter of August 8, 2001 and the opportunity to review the accompanying draft motion to compel. Firestone has considered your objections to its discovery responses, and agrees that, in some instances, additional information should be provided. Firestone, therefore, offers the following information and documents in supplementation of its original responses.

     Please bear in mind, however, that, as indicated in Firestone's original response, many of your discovery requests seek information that is proprietary and confidential business information entitled to protection pursuant to Fed. R. Civ. Proc. 26(c). Firestone stands ready to produce all such documents upon entry of a suitable protective order, and I will be forwarding to you under separate cover a proposed Protective Order and some of the documents referenced herein.

General

     Firestone is providing herewith copies of the current document retention policies applicable to those types of documents identified in its original responses that no longer exist. The document retention policies in effect in 1978 when the subject tire was manufactured no longer exist.

# EXHIBIT "D"

HOUSTON    AUSTIN    BEIJING    DALLAS    LONDON    MOSCOW    NEW YORK    SINGAPORE    WASHINGTON, D.C.

Mr. R. Bruce Tharpe
August 22, 2001
Page 2

Blanca Perales' 1st Set of Discovery

     **Request for Production No. 3**: Firestone states that any documents responsive to this request relating to the subject tire no longer exist.

     **Interrogatory No. 4**: Firestone will provide its expert's conclusions with its expert disclosure as required by the Federal Rules of Civil Procedure and the scheduling order in this case.

     **Interrogatory No. 5**: Firestone will provide its expert's conclusions with its expert disclosure as required by the Federal Rules of Civil Procedure and the scheduling order in this case.

     **Request for Admission No. 6**: Firestone denies this request.

     **Request for Admission No. 9**: Firestone denies this request.

     **Interrogatory No. 10**: Not applicable.

     **Request for Production No. 11**: Firestone is providing herewith a copy of the Tire and Rim Association guidelines for the subject tire and a copy of a chart which describes the process used for the manufacture of the subject tire.

     **Request for Production No. 16**: Firestone is providing herewith copies of Mr. Gardner's paper entitled, "The Role of Tread/Belt Detachment in Accident Causation," as well as an earlier paper authored by Mr. Gardner and Christopher Shapley entitled, "The Role of Blowouts in Accident Causation."

     **Request for Production No. 17**: Firestone is providing herewith a representative sample of literature available on how to react to a tire disablement.

     **Request for Production No. 18**: Adjustment data related to the subject tire constitutes proprietary and confidential business information. Firestone will provide counsel for plaintiffs with the adjustment data described in its original response upon entry of a suitable protective order.

     In addition, Firestone will provide counsel for plaintiffs the list of personal injury claims described in its original response upon entry of a suitable protective order. As noted in its original response, in producing this information, Firestone does not agree that the claims or incidents reflected therein are substantially or reasonably similar to the subject accident. Firestone states that it has received no other personal injury lawsuits received before May 30, 1999, the date of plaintiffs' accident, allegedly involving tread/belt separations of LR78-15 Firestone 721

Mr. R. Bruce Tharpe
August 22, 2001
Page 3

steel belted radial passenger tires manufactured to the same specification as the
subject tire.

Request for Production No. 20:  Firestone is providing herewith a copy of the Tire
and Rim Association guidelines for the subject tire.

Request for Production No. 21:  Firestone is providing herewith a copy of James
D. Gardner's recently published results of his testing of vehicle response to the
loss of a tire tread at speeds, including high speeds.  In its original response,
Firestone preserved its objection to the production of any testing that would
constitute work product.  However, to date, Firestone has not conducted any
testing in this matter for which it intends to assert work product protection.

Request for Production No. 22:  Firestone is providing herewith a copy of a
quality control chart which generally describes the inspections and tests
conducted by Firestone throughout the development and manufacturing process.

Furthermore, as noted in its response to Interrogatory No. 33, Firestone conducts
extensive testing throughout the manufacturing process.  Although, the protocols
and procedures utilized in testing the subject tire are no longer available,
Firestone will provide counsel for plaintiff copies of FMVSS 109 testing for tires
made to the same specification as the subject tire upon entry of a suitable
protective order.

Request for Production No. 25:  Firestone's use of the term "innumerable" in
reference to the continuous changes that Firestone has made to the manufacturing
process over the past 23 years was deliberate and accurate.  Manufacturing
equipment, factory controls, and other capital equipment have been replaced
repeatedly as technology has advanced and equipment has aged.  Certain areas of
the factory have been reorganized and reequipped.  To detail each and every
change that Firestone has made over more than two decades, most if not all of
which would have no relevance whatsoever to this lawsuit, would be unduly
burdensome.

Request for Production No. 27:  Firestone states that, in order to determine which
tires were manufactured with the same skim stock as the subject tire, it would
have to review by hand thousands of microfiches containing outdated
specifications.  Such an effort would literally take an engineer weeks of dedicated
effort.  Furthermore, skim stock is only one of many components in a tire.  An
individual steel belted radial passenger tire may have as many as two dozen
separate components comprised of a dozen or more rubber compounds, as well as
different types of fabrics and other components.  Thus, tires made with the same
skim stock are not necessarily substantially similar.

Mr. R. Bruce Tharpe
August 22, 2001
Page 4

Interrogatory No. 29: The specification for the subject tire contains information
that constitutes proprietary and confidential business information. Firestone will
provide counsel for plaintiffs a copy of the specification subject to an appropriate
protective order.

Interrogatory No. 33: As noted above, the protocols and procedures utilized in
testing the subject tire no longer exist. However, Firestone will provide counsel
for plaintiffs copies of the FMVSS 109 testing for tires made to the same
specification as the subject tire upon entry of a suitable protective order.

Request for Production No. 36: The referenced notes concerning testing that
shows the use of a cap ply does not prevent the detachment of the tread and outer
belt in a tire where a separation is developing contain proprietary and confidential
business information, and will be provided upon entry of a suitable protective
order.

Interrogatory No. 41: Firestone states that it uses and has used cap plies and/or
belt edge strips ("cap strips") in certain of its steel belted radial passenger and
light truck tires in the United States to meet high-speed qualification
requirements. Cap plies and strips reduce the effects of centrifugal force or
"standing waves" in the tire at higher operating speeds. Whether cap plies and/or
strips are necessary in any given tire for high-speed qualification depends on the
specific design of that tire. For example, certain tires with heavier lug designs,
including some high flotation light truck tires, may require cap plies or strips to
meet high speed requirements, while differently designed tires can meet those
requirements without cap plies or strips. Furthermore, if a customer specifies a
speed rating for its tires requiring a cap ply or strips, any common green tire
would also have those features even if not speed rated.

    In addition, Firestone occasionally designs tires with cap plies or cap strips
to reduce road noise, affect the tire's foot print shape, increase penetration
resistance or for processing reasons.

    Firestone first used cap plies in steel belted radial tires in the United States
in approximately 1985 or 1986. Firestone began using belt edge strips shortly
thereafter.

    As stated in its original response, Firestone will, upon entry of a suitable
protective order, provide counsel for plaintiffs with a list of tires manufactured at
the Wilson plant that incorporate cap plies and/or belt edge strips based on
information that it reasonably accessible. However, in order to determine the
reason such technology was incorporated into any particular tire, Firestone would
have to review each and every tire specification, and possibly search the
individual files of the engineers involved in the design, if such files are still
available. As is apparent from the length of the list, such a search would be
unreasonably burdensome.

Mr. R. Bruce Tharpe
August 22, 2001
Page 5

Request for Production No. 42: Firestone will provide counsel for plaintiffs copies of the FMVSS 109 testing for tires made to the same specification as the subject tire upon entry of a suitable protective order.

Interrogatory No. 49: Firestone is self-insured for claims after November 1, 2000 due to the fact that settlements, judgments, fees, etc., far exceed the policy limits in effect during the applicable time period.

Interrogatory No. 50: Firestone is a privately held corporation and does not make its financial statements available to the public. Firestone will, however, provide counsel for plaintiffs a copy of its most recent audited financial statements upon entry of a suitable protective order.

Request for Production No. 55: Firestone will disclose its experts in accordance with the Federal Rules of Civil Procedure and the scheduling order entered in this case.

Request for Production No. 56: Firestone will disclose its experts in accordance with the Federal Rules of Civil Procedure and the scheduling order entered in this case.

Request for Production No. 62: Firestone is providing herewith sample copies of RMA and TISC booklets.

Request for Production No. 63: Firestone will provide counsel for plaintiffs copies of the mold drawings for the subject tire upon entry of a suitable protective order.

Request for Production No. 65: Adjustment data related to the subject tire constitutes proprietary and confidential business information. Firestone will provide counsel for plaintiffs with the adjustment data described in its original response upon entry of a suitable protective order.

In addition, Firestone will provide counsel for plaintiffs the list of personal injury claims described in its original response upon entry of a suitable protective order. As noted in its original response, in producing this information, Firestone does not agree that the claims or incidents reflected therein are substantially or reasonably similar to the subject accident. Firestone states that it has received no other personal injury lawsuits received before May 30, 1999, the date of plaintiffs' accident, allegedly involving tread/belt separations of LR78-15 Firestone 721 steel belted radial passenger tires manufactured to the same specification as the subject tire.

Mr. R. Bruce Tharpe
August 22, 2001
Page 6

Sara Martinez Perales' 1st Set of Discovery

>    Request for Admission No. 3:  Firestone admits that it sold the subject tire.

>    Request for Admission No. 5:  Firestone admits that the subject tire experienced a
>    tread/belt separation, the cause of which will be provided in Firestone's expert
>    disclosures in accordance with the current scheduling order.

>    Identification Interrogatory No. 7:  Firestone is providing herewith copies of Mr.
>    Gardner's paper entitled, "The Role of Tread/Belt Detachment in Accident
>    Causation," as well as an earlier paper authored by Mr. Gardner and Christopher
>    Shapley entitled, "The Role of Blowouts in Accident Causation."

>    Interrogatory No. 9:  Adjustment data related to the subject tire constitutes
>    proprietary and confidential business information.  Firestone will provide counsel
>    for plaintiffs with the adjustment data described in its original response upon
>    entry of a suitable protective order.

In addition, Firestone will provide counsel for plaintiffs the list of personal injury
claims described in its original response upon entry of a suitable protective order.
As noted in its original response, in producing this information, Firestone does not
agree that the claims or incidents reflected therein are substantially or reasonably
similar to the subject accident.  Firestone states that it has received no other
personal injury lawsuits received before May 30, 1999, the date of plaintiffs'
accident, allegedly involving tread/belt separations of LR78-15 Firestone 721
steel belted radial passenger tires manufactured to the same specification as the
subject tire.

Request for Production No. 18:  Firestone is providing herewith a copy of
Bridgestone/Firestone's Warranty Policy and Procedure Manual dated 4/99 as
well as its current Tire Maintenance, Warranty and Safety Manual.

Request for Production No. 19:  The specification for the subject tire contains
information that constitutes proprietary and confidential business information.
Firestone will provide counsel for plaintiffs a copy of the specification subject to
an appropriate protective order.  Firestone will also provide counsel for plaintiffs
copies of the mold drawings for the subject tire upon entry of a suitable protective
order.

Request for Production No. 21:  Firestone is providing herewith a copy of the Tire
and Rim Association guidelines for the subject tire and a copy of a chart which
describes the process used for the manufacture of the subject tire.

Mr. R. Bruce Tharpe
August 22, 2001
Page 7

Request for Production No. 22:  As noted above, the protocols and procedures
utilized in testing the subject tire no longer exist.  However, Firestone will
provide counsel for plaintiffs copies of the FMVSS 109 testing for tires made to
the same specification as the subject tire upon entry of a suitable protective order.

Request for Production No. 25:  Firestone is providing herewith sample copies of
the RMA and TISC booklets.

Request for Production No. 31:  Firestone states that it does not specify a
recommended inflation pressure for tires on any particular vehicle.  The
recommended inflation pressure is determined by the vehicle manufacturer.
However, Firestone states that it designs its tires, including LR78-15 Firestone
721 tires, to comply with the guidelines of the Tire & Rim Association ("TRA").
Among other things, the TRA specifies the maximum load at the cold inflation
pressure for each type and size tire.  This cold inflation pressure is molded on the
sidewall of the tire and also appears in the specification proffered above.
However, documents related the initial determination of the inflation pressure for
the subject tire no longer exist.

Interrogatory No. 32:  Firestone has never changed the maximum cold inflation
pressure for the subject tire.

Request for Production No. 33:  Firestone states that it is providing herewith
copies of the TRA guidelines applicable to the subject tire.

Request for Production No. 37:  Firestone is providing herewith a copy of the
current Firestone Passenger and Light Truck Tire Data Book.

Request for Production No. 41:  The specification for the subject tire contains
information that constitutes proprietary and confidential business information.
Firestone will provide counsel for plaintiffs a copy of the specification subject to
an appropriate protective order.

Request for Production No. 42:  The specification proffered in response to
Request for Production No. 41 above is the specification used in the plant in
which the subject tire was manufactured.

Interrogatory No. 43:  As noted in Firestone's original response, the specification
proffered in response to Request No. 41 above includes the modifications to that
specification, the dates of those modifications, and the reason for each
modification.

Request for Production No. 44:  Firestone is providing herewith a copy of
organizational charts in effect in Wilson, North Carolina in 1978.

Mr. R. Bruce Tharpe
August 22, 2001
Page 8

      <u>Request for Production No. 57</u>:  Documents reflecting the layout of the Wilson plant in 1978 no longer exist.

      Firestone considers the remainder of your objections to be without merit, and stands by its original responses.  We would be happy, however, to discuss with you personally any specific response with which you have concerns.

                      Very truly yours,

                      VINSON & ELKINS, LLP

                      Louis E. McCarter

636443_1 DOC

CVduPDF – www.fastio.com

You are Here: Bridgestone/Firestone Home > News > Corporate News



# News
## CORPORATE NEWS

### Statement by Christine Karbowiak
### Vice President, Public Affairs, Bridgestone/Firestone
### August 14, 2000

Firestone is committed to producing the safest and highest quality tires on the road today and stands by its products.

Regarding today's press conference by SafetyForum.com, ANYONE or any group can make unsubstantiated allegations. But the data released late last week clearly shows that the Wilderness AT tires, other than the P235/75R15 size produced at Decatur, Ill., are good, quality tires with an excellent record of safety. And even the P235/75R15 size tires have a low incident rate.

We have taken an unprecedented step to voluntarily recall the P235/75 R15 Radial ATX and Radial ATX II tires made in North America and the P235/75 R15 Wilderness AT tires made in Decatur, Ill., with the safety and confidence of our consumers as our number one priority.

We did this because the data and the abundance of public concern clearly indicate the need for this action. Specifically the data shows:

1. The number of reported incidents with the P235/75 R15 Radial ATX and the ATX II is higher than the other sizes in the line.
2. The Decatur, Illinois plant is over-represented in accident claims and in reports when compared with other plants.
3. The 16-inch Wilderness AT and Radial ATX and ATX II tires have excellent records with very low adjustment rates.

We continue to strongly encourage consumers to keep any tire maintained and properly inflated. No tire is immune to the hazards of the road, or to misuse.

EXHIBIT "E"

Back to Voluntary Recall Information Center